# EXHIBIT A

NYSCEF DOC. NO. 1                                                    RECEIVED NYSCEF: 11/27/2018

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF KINGS**

---

WALTER CHOW, as Administrator of the Estate of
LEROY CHOW, individually and on behalf of all
others similarly situated,

                         Plaintiff,

v.                                                   Index No. _____

SHOREFRONT OPERATING LLC d/b/a SEAGATE          Summons Filed:
REHABILITATION AND NURSING CENTER;              November 27, 2018
SHAINDY BERKO; ROCHEL DAVID; LEAH
FRIEDMAN; DEENA LANDA; ESTHER                    **SUMMONS**
FARKOVITZ; AVI PHILIPSON; BERISH
RUBINSTEIN; DAVID RUBINSTEIN; BRUSCHA
SINGER; JOEL ZUPNICK; SHOREFRONT REALTY
LLC; SENTOSACARE, LLC; and DOES 1-25,

                         Defendants.

---

**To the above-named Defendants:**

You are hereby summoned and required to answer the attached complaint of the Plaintiff
in this action and to serve a copy of your answer upon the attorneys for the Plaintiff at the address
stated below.

If this summons was personally delivered to you in the State of New York, you must serve
the answer within 20 days after such service, excluding the day of service. If this summons was
not personally delivered to you in the State of New York, you must serve the answer within 30
days after service of the summons is complete, as provided by law.

If you do not serve an answer to the attached complaint within the applicable time
limitation stated above, a judgment may be entered against you, by default, for the relief demanded
in the complaint.

Plaintiff designates Kings County as the place of trial.

The basis of venue is defendant SHOREFRONT OPERATING LLC's place of residence,
which is in the County of Kings: 3015 West 29th Street, Brooklyn, New York 11224.

Dated: White Plains, New York
       November 27, 2018

**FINKELSTEIN, BLANKINSHIP,
FREI-PEARSON & GARBER, LLP**

By: */s/Jeremiah Frei-Pearson*
Jeremiah Frei-Pearson
Todd S. Garber
John Sardesai-Grant
Ayana McGuire
445 Hamilton Avenue, Suite 605
White Plains, New York 10601
Tel: (914) 298-3281
Fax: (914) 824-1561
jfrei-pearson@fbfglaw.com
tgarber@fbfglaw.com
jsardesaigrant@fbfglaw.com
amcguire@fbfglaw.com

*Attorneys for Plaintiff and the Proposed Class*

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS

---

WALTER CHOW, as Administrator of the Estate of
LEROY CHOW, individually and on behalf of all
others similarly situated,

Plaintiff,

v.

SHOREFRONT OPERATING LLC d/b/a SEAGATE
REHABILITATION AND NURSING CENTER;
SHAINDY BERKO; ROCHEL DAVID; LEAH
FRIEDMAN; DEENA LANDA; ESTHER
FARKOVITZ; AVI PHILIPSON; BERISH
RUBINSTEIN; DAVID RUBINSTEIN; BRUSCHA
SINGER; JOEL ZUPNICK; SHOREFRONT REALTY
LLC; SENTOSACARE, LLC; and DOES 1-25,

Defendants.

Index No. _____

**CLASS ACTION COMPLAINT**

Date Index No. Purchased:
November 27, 2018

---

Plaintiff Walter Chow, as Administrator of the Estate of Leroy Chow, individually and on

behalf of all others similarly situated (also referred to as "Patients," "Residents," or the "Class"),

by and through his undersigned attorneys, Finkelstein, Blankinship, Frei-Pearson & Garber, LLP,

as and for his class action complaint, alleges, with personal knowledge as to his own actions and

based upon information and belief as to those of others, as follows:

**NATURE OF THE ACTION**

1.     Plaintiff brings this class action against Shore Front LLC d/b/a Seagate

Rehabilitation and Nursing Center; Shaindy Berko; Rochel David; Leah Friedman; Deena

Landa; Esther Farkovitz; Avi Philipson; Berish Rubinstein; David Rubinstein; Bruscha Singer;

Joel Zupnick; Shorefront Realty LLC; SentosaCare, LLC; and Does 1-25 (collectively,

"Defendants") -- the owners and operators of Seagate Rehabilitation and Nursing Center, a

nursing home located at 3015 W 29th Street, Brooklyn, New York (the "Facility") -- on behalf of

himself and a class of similarly situated nursing home patients who were victimized by unsafe and inadequate care in the Facility. Defendants' unlawful conduct violates Section 2801-d of New York's Public Health Law ("PHL").[1]

      2.      Defendants are entrusted to provide care to the elderly and infirm nursing home patients in their custody. Unfortunately, Defendants have betrayed and continue to betray that trust. For example, Defendants fail to sufficiently staff the Facility. Throughout their operation of the Facility, Defendants have failed to staff a sufficient number of nurses and aides, thereby depriving the Facility's residents of the level of care required under New York and federal law.[2] Among many other shocking failures, this understaffing caused Defendants to fail to provide the correct dosage of medications at the prescribed times, fail to regularly wash and change patients, serve patients inappropriate meals, force patients to clean the Facility walls with caustic chemicals causing severe skin peeling, put patients on heavy narcotics resulting in some patients suffering from brain metabolic injury, and refuse patients their clothing and medication upon discharge.

      3.      Unsurprisingly, the Nursing Home Compare website operated by the federal Centers for Medicare & Medicaid Services ("CMS") shows that the Facility currently receives a

---

[1] PHL § 2801-d provides a cause of action by residents against nursing homes that deprive them of "any right or benefit created or established for the well-being of the patient by the terms of any contract, by any state statute, code, rule or regulation or by any applicable federal statute, code, rule or regulation." *See* PHL 2801-d(1).

[2] *See* 10 N.Y.C.R.R. § 415.13 (mandating that a nursing facility "shall provide sufficient nursing staff to provide nursing and related services to attain or maintain the highest practicable physical, mental, and psychosocial well-being of each resident"); 42 U.S.C. § 1396r(b)(4)(C)(i)(I) (mandating that a nursing facility "must provide 24-hour licensed nursing services which are sufficient to meet the nursing needs of its residents"); 42 U.S.C. § 1395i-3(b)(4)(A)(i) (mandating that a nursing facility must provide "nursing services and specialized rehabilitative services to attain or maintain the highest practicable physical, mental, and psychosocial well-being of each resident").

2

rating of one star ("much below average") out of a five star scale in staffing, further evidencing the lack of adequate care and staffing at the Facility.[3]

4.     As the Facility has approximately 360 beds and is operating at a high occupancy rate (above 90%),[4] there are many other residents currently languishing in an unsafe and inadequate nursing home.

5.     Accordingly, Plaintiff, individually and on behalf of the Class, asserts claims against Defendants for violation of PHL § 2801-d and seek monetary damages in an amount to be determined at trial, statutory damages in accordance with PHL § 2801-d(2), and injunctive relief prohibiting further wrongful conduct, as well as any other available relief at law or in equity.

**PARTIES**

**Plaintiff**

6.     Plaintiff Walter Chow sues on behalf of the Estate of Leroy Chow, his brother, who was a resident of the Facility from approximately February 2015 until his release in August 2016.

7.     Leroy Chow passed away in December 2017.

8.     Walter Chow's application for letters of administration on behalf of Leroy Chow's estate is in process.

9.     Walter Chow is a citizen and resident of Kings County, New York.

---

[3] *See* Nursing Home Compare Profile for the Facility (available at https://www.medicare.gov/NursingHomeCompare/profile.html#profTab=-1&ID=335513) (accessed November 26, 2018) (copy annexed as Exhibit 1).

[4] *See* New York State Department of Health profile for the Facility (available at https://profiles.health.ny.gov/nursing_home/view/150691).

3

**Defendants**

10.     Defendant Shorefront Operating LLC d/b/a Seagate Rehabilitation and Nursing
Center is a New York limited liability company with its principal place of business in Kings
County, New York. Shorefront Operating LLC has been the operator of the Facility since at
least December 11, 2014. Shorefront Operating LLC provides an address for service by the New
York State Department of State of 20 Franklin Place, Woodmere, New York 11598.

11.     Defendants Shaindy Berko, Rochel David, Leah Friedman, Deena Landa, Esther
Farkovitz, Avi Philipson, Berish Rubinstein, David Rubinstein, Bruscha Singer, and Joel
Zupnick (the "Individual Defendants") each hold an ownership interests in Shorefront Operating
LLC. Shaindy Berko owns a 10% interest in Shorefront Operating LLC, Joel Zupnick a 25%
interest, Esther Farkovits a 10% interest, Rochel David a 10% interest, Leah Friedman a 10%
interest, Deena Landa a 10% interest, Avi Philipson a 10% interest, Berish Rubinstein a 2.5%
interest, David Rubinstein a 10% interest, and Bruscha Singer a 2.5% interest.[5] On information
and belief, the Individual Defendants are all residents of New York State.

12.     Defendant Shorefront Realty LLC owns the property occupied by the Facility and
receives rent payments from Shorefront Operator LLC for the use of the property. Shorefront
Realty LLC is owned by many of the same persons as Shorefront Operating LLC. Leah
Friedman has a 10.0% in Shorefront Realty LLC, Rochel David a 10.0% interest, David
Rubinstein a 10.0% interest, Benjamin Landa a 20.0% interest, Philipson Family, LLC a 10.0%
interest, Cheskel Berkowitz a 25.0% interest, the Schlesinger Family Trust a 10.0% interest,
Berish Rubinstein a 2.5% interest, and Brucha Singer a 2.5% interest. Shorefront Realty LLC

---

[5] *See*
https://www.health.ny.gov/facilities/public_health_and_health_planning_council/meetings/2014-01-30/docs/131092_e.pdf (accessed October 31, 2018).

provides an address for service by the New York State Department of State of 20 Franklin Place, Woodmere, New York 11598. Shorefront Realty LLC purchased the property in 2014.[6] Shorefront Realty LLC, as Shorefront Operating LLC's landlord and sharing almost entirely the same owners, has the ability to influence the operation and management of the Facility.

13.     Defendant SentosaCare, LLC is a New York limited liability company with its principal place of business in Nassau County, New York. SentosaCare, LLC provides administrative services to the Facility,[7] and thus has the ability to influence the operation and management of the Facility. Indeed, the "proposed operator" of the Facility when it was purchased was listed "Shorefront Operating LLC c/o SentosaCare, LLC" at 20 Franklin Place, Woodmere, New York 11598,[8] the same address that SentosaCare LLC provides as an address for service by the New York State Department of State.

14.     In addition to the defendants identified with particularity, Plaintiff alleges all claims against Does 1-25, with addresses and names unknown, who are other persons that have owned, operated, or controlled the Facility during the relevant period.

---

[6] *Id.*

[7] *See* State of New York Public Health and Health Planning Council Committee Day Agenda for January 28, 2016, at Project #152177-E Exhibit Page 10 (available at https://www.health.ny.gov/facilities/public_health_and_health_planning_council/meetings/2016-01-28/docs/exhibits.pdf) (last visited October 31, 2018) (disclosing that "Sentosa Care LLC contracts for administrative services with the following nursing homes . . . : Bay Park Center for Nursing and Rehabilitation; Eastchester Rehabilitation and Health Care Center; Nassau Extended Care Center; Park Avenue Extended Care Facility; Seagate Rehabilitation and Nursing Center").

[8] *See* Summary Information page for Project Number 131092 on the New York State Department of Health Certificate of Need system (available athttps://www.health.ny.gov/facilities/cons/nysecon/) (visited October 31, 2018) (copy annexed as Exhibit 2).

5

## JURISDICTION AND VENUE

15.     This Court has jurisdiction over all causes of action asserted herein. Defendants

are subject to the personal jurisdiction of this Court pursuant to CPLR 301.

16.     Defendants have conducted and do conduct business in the State of New York,

including through operation of the Facility.

17.     Venue is proper in this County pursuant to CPLR 503(d) because Defendant

Shorefront Operating LLC maintains its principal place of business in Kings County, New York.

18.     Venue is also proper in this County pursuant to CPLR 503(a) because Plaintiff

resides in Kings County, New York.

## FACTUAL BACKGROUND

I.     **The Nursing Home Crisis Leads To Legislation Granting Patients
A Right To Bring Class Actions Against Operators For Improper
Care And To Federal Databases Tracking Nursing Home Ratings.**

19.     In an effort to protect the vulnerable nursing home population, ensure that their

rights are enforced, and provide them with a form of legal recourse which would not otherwise

be economically feasible, the New York State Legislature enacted PHL §§ 2801-d and 2803-c.

20.     Predating the enactment of PHL §§ 2801-d and 2803-c, "the public's confidence

in the State's ability to protect its most defenseless citizens, the aged and infirm, had been

destroyed by a series of dramatic disclosures highlighting the abuses of nursing home care in

their State." *See* Governor's Memoranda, Nursing Home Operations, McKinney's 1975 Session

Laws of New York, p.1764. In Governor Carey's letter to the Legislature accompanying the

bills for PHL §§ 2801-d and 2803-c, he stated that these bills were "designed to deal directly

with the most serious immediate problems which have been uncovered with respect to the

6

nursing home industry."[9]  The Sponsor's Memorandum relating to PHL § 2803-c and the

transcripts of the Senate debates indicate that the purpose of the statute was to establish certain

minimum standards for the care of nursing home patients.  *See* Governor's Bill Jacket for

Chapter 648 of the Laws of 1975; Senate Debate Transcripts, 1975, Chapter 648 Transcripts,

pp.4521, 4525.  The term "residential health care facility" was intentionally used by the

Legislature in an effort to curb abuses in the nursing home industry.[10]

21.     The Commission's Summary Report specifically indicated that PHL § 2801-d

creates a cause of action for a patient of a facility which deprived the patient "of rights or

benefits created for his well-being by federal or state law or pursuant to contract" which resulted

in injury to the patient.  The Commission stated that this statute "introduce[s] a degree of

equality between nursing homes and their otherwise vulnerable and helpless patients and,

through private litigation brought by patients either in individual or class action lawsuit, provides

a supplemental mechanism for the enforcement of existing standards of care."

22.     The Legislative Memorandum "Nursing Home–Health Care Facilities–Actions by

Patients" relating to PHL § 2801-d observes that nursing home patients "are largely helpless and

isolated," that many are "without occasional visitors," and that "[m]ost cannot afford attorneys,"

and therefore the bill provides nursing home patients "with increased powers to enforce their

rights to adequate treatment and care by providing them with a private right of action to sue for

damages and other relief and enabling them to bring such suits as class actions."  *See*

McKinney's Session Laws of New York, 1975 pp.1685-86.  That memorandum states that the

---

[9] *Morisett v. Terence Cardinal Cooke Health Care Ctr.*, 8 Misc.3d 506, 509 (Sup. Ct. N.Y. Cnty. 2005).

[10] *See Town of Massen v. Whalen*, 72 A.D.2d 838 (3rd Dep't 1979).

7

proposed PHL § 2801-d "creates incentives which would encourage private non-governmental parties (*i.e.*, plaintiffs' attorneys) to help protect the rights of nursing home patients." *Id.*

23.     This statutory cause of action was created as an additional remedy, separate and distinct from other available traditional tort remedies.[11]

24.     In addition, in the wake of an emphasized focus on the adequacy of care provided by skilled nursing home facilities, in December of 2008, the Centers for Medicare & Medicaid Services ("CMS") enhanced its Nursing Home Compare public reporting site to include a set of quality ratings for each nursing home that participates in Medicare or Medicaid. The primary goal of this rating system is to provide residents and their families with an easy way to assess nursing home quality, in order to make meaningful distinctions between high and low performing nursing homes. The rating system features an overall five-star rating based on facility performance in three areas, each of which has its own five-star rating: (1) health inspections, which is measured based on outcomes from State health inspections; (2) staffing, which is a measure based on the nursing home's aggregate staffing demand (based ultimately on the residents' Minimum Data Set ("MDS") -- a set of metrics used to determine for each resident the amount of staffing needed) and staffing supply (based on payroll records for Registered Nurse ("RN"), Licensed Practitioner Nurse ("LPN"), and nurse aide hours per resident per day); and (3) quality measures.[12]

---

[11] *See Kash v. Jewish Home & Infirmary of Rochester, N.Y. Inc.*, 61 A.D.3d 146, 150 (4th Dep't 2009).

[12] *See* Centers for Medicare & Medicaid Services, "Design for Nursing Home Compare Five-Star Quality Rating System: Technical User's Guide" (July 2018 ed.) (the "CMS Technical Guide") (available at https://www.cms.gov/Medicare/Provider-Enrollment-and-Certification/CertificationandComplianc/Downloads/usersguide.pdf) (last visited August 28, 2018).

8

25.     This class action seeks to address the injustices that caused the Legislature to enact PHL § 2801-d. As alleged in more detail below, Defendants have violated and continue to violate their statutory obligations by failing to provide, among other things, adequate staffing, supervision, treatment, hygiene, and medical attention to the Class.

## II.     The Facility Is Unsafe And The Conditions To Which Its Patients Are Subjected Violate Numerous Statutes.

26.     Previously known as the Shorefront Jewish Geriatric Center and operated by the not-for-profit corporation Shorefront Jewish Geriatric Center, Inc., the Facility was sold in December 2014 to two entities -- owned almost entirely by the same parties -- in a deal worth $50,000,000.00. Defendant Shorefront Realty LLC purchased the Facility's real estate for $32,000,000.00, and defendant Shorefront Operating LLC purchased the Facility's operations for $18,000,000.00. Subsequent to the sale, Shorefront Operating LLC made lease payments to Shorefront Realty LLC for use of the Facility. Mortgage financing of $45,000,000.00 was provided by Greystone Funding Corporation. As part of the sale, the name under which the Facility operates was changed to Seagate Rehabilitation and Nursing Center. Also as part of the sale, Shorefront Operating, LLC contracted with SentosaCare, LLC to provide administrative services to the Facility.

27.     Conditions at the Facility have been and continue to be unsafe and violative of applicable laws, rules, and regulations, and the care provided to Leroy Chow and the Class has been and continues to be inadequate.

28.     Defendants failed and continue to fail to promote the care for the Facility's residents in a manner that maintains or enhances each resident's dignity and respect in full recognition of their individuality and in contravention of applicable federal and New York State laws, rules, and regulations.

9

29.     Among other failures, Defendants failed and continue to fail to provide sufficient nursing staff to provide the nursing and related services necessary to attain and maintain the highest practicable physical and psycho-social well-being of the Patients.  A resident's right to sufficient staffing is one of the most important rights protected by New York and federal statutes.[13]

30.     The Facility is administered by SentosaCare, LLC.  As early as October 2015, local news media reported that staffing levels among SentosaCare administrated nursing homes were egregiously low.[14]

31.     Indeed, the Facility currently receives a rating of one star ("much below average") out of a five star scale in staffing from the Nursing Home Compare website operated by CMS.[15] CMS's star ratings for staffing reflect the relationship of a facility's reported staffing levels to its expected staffing levels (determined by looking at the number of residents and their reported medical conditions).[16]  A one-star or two-star rating indicates that the Facility has actual staffing levels below the expected staffing levels, based on the needs of the residents.[17]  Defendants here have failed to adequately staff the Facility for years; during every quarter beginning in 2013 to

---

[13] *See* 10 N.Y.C.R.R. § 415.13; 42 U.S.C. § 1396r(b)(4)(C)(i)(I); 42 U.S.C. § 1395i-3(b)(4)(A)(i).

[14] *See* https://www.propublica.org/article/new-york-for-profit-nursing-home-group-flourishes-despite-patient-harm (accessed August 29, 2018).

[15] *See* Exhibit 1.

[16] *See* CMS Technical Guide at 1 ("The staffing measures are derived from data submitted each quarter through the Payroll-Based Journal System (PBJ), along with daily resident census derived from Minimum Data Set, Version 3.0 (MDS 3.0) assessments, and are case-mix adjusted based on the distribution of MDS 3.0 assessments by Resource Utilization Groups, version IV (RUG-IV group).") & 7-12.

[17] *Id.* at 9-12.

10

NYSCEF DOC. NO. 1

RECEIVED NYSCEF: 11/27/2018

the present, the Facility has received one and two star ratings for overall staffing and RN staffing.[18]

32.     Defendants' failure to properly staff the Facility is particularly egregious because understaffing is one of the primary causes of inadequate care and often unsafe conditions in nursing facilities. Numerous studies have shown a direct correlation between inadequate staffing and serious care problems including, but not limited to, a greater likelihood of falls, pressure sores, significant weight loss, incontinence, and premature death. Although the dangers caused by understaffing are common knowledge in the nursing home industry, Defendants nonetheless chose not to provide adequate staffing levels.

33.     In addition, Defendants failed and continue to fail to provide each patient with the appropriate food. For example, Leroy Chow, who was a diabetic, was often served inappropriate meals laden with sugars and heavy in carbohydrates.

34.     Defendants have subjected Leroy Chow and the Class to indignities and other harms that directly resulted and continue to result from inadequate nurse staffing levels at the Facility, including but not limited to: infrequent and inadequate turning and repositioning; no response or long response times to call lights; failure to provide adequate showers; lack of assistance with grooming and bathing; inadequate attention to toileting needs, resulting in Leroy Chow and the Class remaining in their own urine and fecal matter for extended periods of time; lack of assistance with eating; failure to provide fluids as needed; lack of assistance with dressing; and being confined to their beds without removal for long periods. Indeed, Plaintiff has found no nurses or doctors present on the floor for hours at a time or indeed for an entire evening.

---

[18] *See* Exhibit 3 (compiling historical CMS ratings for staffing for the Facility).

35.     For example, in October of 2015, Leroy Chow was forced by the staff at the Facility to clean the Facility walls himself using caustic chemicals, resulting in his suffering severe skin peeling.  Also while a resident at the Facility, Leroy Chow developed three huge pre-cancerous polyps that were left unattended for almost a year.  He was also discovered by family members to be sitting in a public area in urine soaked clothing, apparently having needed to have been changed for hours.  Because of the lack of sufficient staff, he was constantly given the incorrect dosage of medication.

36.     His meals were often inappropriate for a diabetic.  He was served meals containing high amounts of carbohydrates and sugar.  In August 2016, when he was due to be released from the Facility, he was placed on heavy narcotics in order to deter his discharge.  He suffered brain metabolic injury due to the heavy narcotics and was refused his clothing and medication upon release.

37.     Indeed, there were several instances where Leroy Chow or another resident would ask for help -- for example, with going to the bathroom -- while sitting out sitting out in open area, right in front of the nurses' station, but would receive no assistance for hours.  As a result, Leroy Chow and other residents were left to sit in their own waste, increasing their risk of developing a urinary tract infections ("UTI").

38.     As a result of Defendants' inadequate care, Leroy Chow sustained personal injuries and endured conscious pain and suffering.

39.     Upon information and belief, as a result of Defendants' inadequate care, the other members of the Class have sustained physical injuries and endured conscious pain and suffering.

40.     Defendants' inadequate care also injured Leroy Chow and the other members of the Class by placing them at an increased risk of harm.

12

41.     And Defendants' failure to satisfy its obligations pursuant to federal and New
York law -- particularly the obligation to provide sufficient staffing -- economically injured
Leroy Chow and the other members of the Class by depriving them of the benefit of the services
for which they paid Defendants -- namely, a nursing home with, at the least, staffing sufficient to
satisfy the requirements of New York and federal law

## CLASS ACTION ALLEGATIONS

42.     This action is brought on behalf of the Plaintiff identified above and all similarly
situated persons pursuant to Civil Practice Law and Rules 901, *et seq.*[19]  The Class is defined as:

> All persons who reside, or resided, at the Facility from November
> 27, 2015, to the present.

43.     Plaintiff reserves the right to amend the above definitions, or to propose other or
additional classes, in subsequent pleadings and/or motions for class certification.

44.     Plaintiff is a member of the Class.

45.     Excluded from the Class are: (i) Defendants; any entity in which Defendants have
a controlling interest; the officers, directors, and employees of Defendants; and the legal
representatives, heirs, successors, and assigns of Defendants; (ii) any judge assigned to hear this
case (or any spouse or family member of any assigned judge); (iii) any juror selected to hear this

---

[19] PHL § 2801-d explicitly provides for these statutory claims to be brought as a class action.
*See* PHL § 2801-d(4) (providing that "[a]ny damages recoverable pursuant to this section,
*including minimum damages as provided by subdivision two of this section,* may be recovered in
any action which a court may authorize to be brought as a class action" (emphasis added)).  PHL
§ 2801-d(2) provides that "compensatory damages shall be assessed in an amount sufficient to
compensate such patient for such injury, but in no event less than twenty-five percent of the daily
per-patient rate of payment established for the residential health care facility under section
twenty-eight hundred seven of this article or, in the case of a residential health care facility not
having such an established rate, the average daily total charges per patient for said facility, for
each day that such injury exists."

case; (iv) claims for personal injury and wrongful death; and (v) any and all legal representatives
of the parties and their employees.

46.     This action seeks to enjoin Defendants from understaffing, failing to disclose its
understaffing, and making misleading promises about staffing at the Facility. In addition, this
action seeks recovery -- including statutory minimum damages -- from the Defendants for their
injuries resulting from Defendants' failure to meet its contractual, statutory, and regulatory
obligations.

47.     Plaintiff and the Class satisfy the requirements for class certification as provided
by Civil Practice Law and Rules 901, *et seq.*, for the following reasons:

48.     **Numerosity of the Class.** Members of the Class are so numerous that their
individual joinder is impracticable. The Class consists of hundreds, if not thousands, of persons
and is therefore so numerous that joinder of all members, whether required or permitted, is
impracticable. The precise number of persons in the Class and their identities and addresses may
be ascertained from Defendants' records. If deemed necessary by the Court, members of the
Class may be notified of the pendency of this action.

49.     **Common Questions of Fact and Law.** Common questions of law and fact exist
as to all members of the Class. These common legal and factual questions include, without
limitation:

    a.  Whether Defendants violated or violate New York laws, including, but not limited
    to, PHL 2801-d, by depriving any patient of the Facility of any right or benefit
    created or established for the well-being of the patient by the terms of any
    contract, by any state statute, code, rule, or regulation, or by any applicable
    federal statute, code, rule, or regulation during the Class Period;

    b.  Whether Defendants violated or violate New York laws, including, but not limited
    to, PHL 2803-c, by failing to provide any patient of the Facility with adequate and
    appropriate medical care, failing to provide courteous, fair and respectful care and
    treatment, and failing to ensure every patient was free from mental and physical
    abuse during the Class Period;

14

c.  Whether Defendants failed or fail to employ an adequate number of qualified personnel to carry out all of the functions of its Facility in violation of PHL 2801-d and 2803-c;

d.  Whether Defendants' decision to understaff the Facility violated or violates any right(s) of residents as set forth in PHL 2801-d and 2803-c;

e.  Whether Defendants' decision to understaff its Facility and failure to provide adequate and appropriate medical care violated or violates any right(s) of residents as set forth in the Patients' Bill of Rights pursuant to PHL 2803-c;

f.  Whether Defendants' conduct violated or violates sections 31.19(a) and 16.19(a) of the New York Mental Hygiene Law;

g.  Whether Defendants' conduct violated or violates section 415 of the New York Code Rules and Regulations, including but not limited to subsections 415.3, 415.5, 415.12, 415.13, 415.14, 415.15, and 415.26; and

h.  Whether Defendants' conduct violated or violates the federal Nursing Home Reform Act, codified at 42 U.S.C. §§ 1395i-3(a)-(h) & 1396r(a)-(h) and at 42 C.F.R. §§ 483.15, 483.20, 483.25, 483.30, 483.40, 483.60, & 483.75.

50.    **Typicality.**  The claims of Plaintiff are typical of the claims of the proposed Class because Plaintiff's claims are based upon the same legal theories and same violations of New York State law.  Plaintiff's grievances, like the proposed Class members' grievances, all arise out of the same business practices and course of conduct by Defendants.  Further, Plaintiff's damages arise out of a pattern of uniform and repetitive business practices conducted by Defendants.

51.    **Adequacy.**  Plaintiff will fairly and adequately represent the Class on whose behalf this action is prosecuted.  His interests do not conflict with the interests of the Class.

52.    Plaintiff and his chosen attorneys, Finkelstein, Blankinship, Frei-Pearson & Garber, LLP ("FBFG"), are familiar with the subject matter of the lawsuit and have full knowledge of the allegations contained in this Complaint so as to be able to assist in its prosecution.  Indeed, FBFG has been appointed as lead counsel in several complex class actions across the country and has secured numerous favorable judgments in favor of its clients.  FBFG's

15

attorneys are competent in the relevant areas of the law and have sufficient experience to vigorously represent the Class members. Finally, FBFG possesses the financial resources necessary to ensure that the litigation will not be hampered by a lack of financial capacity and is willing to absorb the costs of the litigation.

53.     **Superiority.** A class action is superior to any other available methods for adjudicating this controversy. The proposed class action is the surest way to fairly and expeditiously compensate so large a number of injured persons, to keep the courts from becoming paralyzed by hundreds -- if not thousands -- of repetitive cases, and to reduce transaction costs so that the injured Class members can obtain the most compensation possible.

54.     Class treatment presents a superior mechanism for fairly resolving similar issues and claims without repetitious and wasteful litigation for many reasons, including the following:

a.   Absent a class action, Class members will suffer continuing, ever-increasing damages; violations of Class members' rights will continue without remedy; and the Facility will continue to remain understaffed, resulting in the mistreatment and improper care of its Patients.

b.   It would be a substantial hardship for most individual members of the Class if they were forced to prosecute individual actions. Many members of the Class are not in the position to incur the expense and hardship of retaining their own counsel to prosecute individual actions, which in any event might cause inconsistent results.

c.   When the liability of Defendants has been adjudicated, the Court will be able to determine the claims of all members of the Class. This will promote global relief and judicial efficiency in that the liability of Defendants to all Class members, in terms of money damages due and in terms of equitable relief, can be determined in this single proceeding rather than in multiple, individual proceedings where there will be a risk of inconsistent and varying results.

d.   A class action will permit an orderly and expeditious administration of the Class claims, foster economies of time, effort, and expense, and ensure uniformity of decisions. If Class members are forced to bring individual suits, the transactional costs, including those incurred by Defendants, will increase dramatically, and the courts of New York will be clogged with a multiplicity of lawsuits concerning the very same subject matter, with the identical fact patterns and the same legal

16

NYSCEF DOC. NO. 1

RECEIVED NYSCEF: 11/27/2018

issues. A class action will promote a global resolution, and will promote uniformity of relief as to the Class members and as to Defendants.

e. This lawsuit presents no difficulties that would impede its management by the Court as a class action. The class certification issues can be easily determined because the Class includes only the residents of the Facility, the legal and factual issues are narrow and easily defined, and the Class membership is limited. The Class does not contain so many persons that would make the Class notice procedures unworkable or overly expensive. The identity of the Class members can be identified from Defendants' records, such that direct notice to the Class members would be appropriate.

## FIRST CAUSE OF ACTION

## PUBLIC HEALTH LAW § 2801-d

55.     Plaintiff repeats, reiterates, and re-alleges each and every allegation contained above with the same force and effect as if the same were set forth at full length herein.

56.     At all relevant times, Defendants conducted business as a licensed nursing home as defined under PHL § 2801(2).

57.     At all relevant times, Defendants had possession and control of the Facility's building(s), the nursing home located at 3015 W 29th Street, Brooklyn, NY 11224.

58.     At all relevant times, Shaindy Berko, Rochel David, Leah Friedman, Deena Landa, Esther Farkovitz, Avi Philipson, Berish Rubinstein, David Rubinstein, Bruscha Singer, Joel Zupnick, Shorefront Realty LLC, SentosaCare, LLC, and Does 1-25 have each had the ability, acting either alone or in concert with others with ownership interests, to direct or cause the direction of the management or policies of the Facility, and are thus controlling persons of the Facility pursuant to PHL § 2808-a

59.     The Facility is a geriatric center, adult living facility, and/or a nursing home, which provides nursing care to sick, invalid, infirmed, disabled, or convalescent persons in addition to lodging and board or health related services pursuant to PHL § 2801(2).

60.     The Facility is a residential health care facility as defined in PHL § 2801(3).

17

RECEIVED NYSCEF: 11/27/2018

61.    Defendants are subject to the provisions of PHL §§ 2801-d and 2803-c, as well as the rules and regulations set forth in sections 31.19(a) and 16.19(a) of the New York Mental Hygiene Law, section 415 of the New York Code Rules and Regulations, and the federal Nursing Home Reform Act.  These rules and regulations impose various obligations on Defendants, including, among others, a duty to adequately staff the Facility.

62.    Leroy Chow and the Class entered the Facility for care, treatment, supervision, management, and/or rehabilitation.

63.    Leroy Chow and the Class were under the exclusive care, custody, control, treatment, rehabilitation, supervision, and management of Defendants.

64.    During the period of Leroy Chow and the Class's residency in the Facility, Defendants, through their officers, employees, agents, and staff, violated PHL § 2801-d by depriving Mr. Chow and the Class of rights or benefits created or established for their well-being by the terms of a contract(s) and/or by the terms of state and federal statutes, rules, and regulations.

65.    During Leroy Chow and the Class's residency, they sustained personal injuries and suffered mental anguish as a result of Defendants' failure to meet its contractual, statutory, and regulatory obligations, particularly the obligation to adequately staff the Facility.

66.    During Leroy Chow and the Class's residency at the Facility, they were and are subjected to indignities and other harms that directly resulted and result from inadequate staffing levels at the Facility, including but not limited to: infrequent and inadequate turning and repositioning; no response or long response times to a call light; failure to provide adequate showers; lack of assistance with grooming and bathing; inadequate attention to toileting needs requiring Leroy Chow and the Class to remain in their own urine and fecal matter for extended

18

Case 1:19-cv-03541-FB-JRC   Document 1-1   Filed 06/14/19   Page 22 of 43 PageID #: 28

periods of time; lack of assistance with eating; failure to provide fluids as needed; lack of assistance with dressing; and being confined to their bed without removal for long periods.

67.     Plaintiff and his family complained to the Facility's staff regarding the neglectful, improper, and/or inadequate care and treatment of Leroy Chow and the other members of the Class.

68.     As a result of the foregoing acts and/or omissions, Defendants deprived Mr. Chow and the Class of their rights in violation of PHL § 2801-d.

69.     Defendants' deprivation of Mr. Chow and the Class's rights in violation of PHL § 2801-d substantially contributed to, created, and/or caused Mr. Chow and the Class's injuries. These injuries include, but are not limited to: being subjected to an increase risk of harm; being forced to undergo unnecessary medical treatment; incurring medical expense; suffering disfigurement, disability, mental anguish, and pain; suffering loss of enjoyment of life; and suffering a loss of the benefit of the bargain for which they contracted with Defendants -- namely, a residency at a nursing home with, at the least, staffing sufficient to satisfy the requirements of New York and federal law.

70.     Defendants' responsibilities and obligations to Leroy Chow and the Class are non-delegable, and thus Defendants have direct and/or vicarious liability for violations, deprivations, and infringements of such responsibilities and obligations by any person or entity under Defendants' control, direct or indirect, including their employees, agents, consultants, and independent contractors, whether in-house or outside entities, individuals, agencies, or pools, or caused by Defendants' policies, whether written or unwritten, or its common practices.

71.     All acts and omissions committed by employees and agents of Defendants were pervasive, omnipresent events that occurred and continued throughout Leroy Chow and the other

members of the Class's residency at the Facility, and were such that supervisors, administrators, and managing agents of Defendants knew, or should have been aware, of them.

72.     Pursuant to PHL § 2801-d(2), Plaintiff and the Class seek compensatory damages in an amount sufficient to compensate each Patient for his or her injury, but in no event less than twenty-five percent of the daily per-patient rate of payment established for the Facility under PHL § 2807, or, in the event the Facility does not have an established rate, the average daily total charges per patient for the Facility, for each day that such injury existed.

73.     In addition to damages suffered by Leroy Chow and the Class as the result of Defendants' deprivation of their rights as nursing home residents, justice requires that Plaintiff and the Class recover attorney's fees pursuant to PHL § 2801-d(6), punitive damages pursuant to PHL § 2801-d(2), and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and the Class, respectfully requests that the Court grant relief against Defendants as follows:

a.  For a Court Order certifying that the action may be maintained as a class action;

b.  For injunctive relief prohibiting Defendants' violations of PHL §§ 2801-d and 2801-c in the future;

c.  On the First Cause of Action for violation of PHL § 2801-d, damages in an amount to be determined at trial and punitive damages, together with costs, disbursements, and attorney's fees in this action;

d.  For restitution and any other monetary relief permitted by law;

e.  For attorney's fees and costs; and

f.  For such other and further relief as the Court may deem just and proper.

20

## DEMAND FOR TRIAL BY JURY

Plaintiff, individually and on behalf of the Class, demands a trial by jury as to all issues

triable of right.

Dated: White Plains, New York
      November 27, 2018

                        Respectfully Submitted,

                        **FINKELSTEIN, BLANKINSHIP,**
                        **FREI-PEARSON & GARBER, LLP**

                        By: */s/Jeremiah Frei-Pearson*
                        Jeremiah Frei-Pearson
                        Todd S. Garber
                        John Sardesai-Grant
                        Ayana McGuire
                        445 Hamilton Avenue, Suite 605
                        White Plains, New York 10601
                        Tel: (914) 298-3281
                        Fax: (914) 824-1561
                        jfrei-pearson@fbfglaw.com
                        tgarber@fbfglaw.com
                        jsardesaigrant@fbfglaw.com
                        amcguire@fbfglaw.com

                        *Attorneys for Plaintiff and the Proposed Class*

21

NYSCEF DOC. NO. 1                                                    RECEIVED NYSCEF: 11/27/2018

## VERIFICATION

STATE OF NEW YORK            )
                            ) ss:
COUNTY OF WESTCHESTER        )

I, the undersigned, am an attorney admitted to practice in the Courts of the State of New

York and say that:

I am the attorney of record for the Plaintiff and proposed Class.  I have read the annexed

Summons and Class Action Complaint and know the contents thereof, and the same are true to

my knowledge, except those matters therein which are based on information and belief, and as to

those matters I believe them to be true.  My belief, as to those matters therein not stated upon

knowledge, is based on the contents of the file.  The reason I make this affirmation instead of

Plaintiff is because Plaintiff resides outside the county in which I have my office.

Dated:  White Plains, New York
        November 27, 2018

                        */s/Jeremiah Frei-Pearson*
                        Jeremiah Frei-Pearson
                        **FINKELSTEIN, BLANKINSHIP,**
                        **FREI-PEARSON & GARBER, LLP**
                        445 Hamilton Avenue, Suite 605
                        White Plains, New York 10601
                        Tel: (914) 298-3281
                        Fax: (914) 824-1561
                        jfrei-pearson@fbfglaw.com

# Exhibit 1

FILED: KINGS COUNTY CLERK 11/27/2018 10:21 AM          INDEX NO. 523769/2018
NYSCEF DOC. NO. 2                                       RECEIVED NYSCEF: 11/27/2018

Medicare Nursing Home Profile

# Medicare.gov | Nursing Home Compare

The Official U.S. Government Site for Medicare

## General information

### SEAGATE REHABILITATION AND NURSING CENTER

**Overall rating** 🛈 : 3 out of 5 stars
Average

Learn more about the overall star ratings

3015 W 29 ST
BROOKLYN, NY 11224
(718) 266-5700



© Mapbox © OpenStreetMap

### Nursing Home information

360 certified beds 🛈

Participates in 🛈 : Medicare and Medicaid

Automatic sprinkler systems in all required areas 🛈 :Yes

Not in a Continuing Care Retirement Community (CCRC) 🛈

Not in a hospital 🛈

No Resident or Family Council 🛈

Learn why these characteristics and services are important

### Ownership information

Ownership 🛈 : For profit - Corporation

Legal business name: SHOREFRONT OPERATING LLC

Get more ownership information

### Star rating categories

Health inspection rating 🛈          3 out of 5 stars
**Average**

Staffing rating 🛈                   1 out of 5 stars
**Much Below Average**

Quality measures rating 🛈           5 out of 5 stars
**Much Above Average**

## Health inspections

FILED: KINGS COUNTY CLERK 11/27/2018 10:12 AM
NYSCEF DOC. NO. 2

Case 1:19-cv-... 1-1    Filed 06/14/19    Page 28 of 43 PageID #:
314
Medicare Nursing Home Profile

INDEX NO. 523769/2018
RECEIVED NYSCEF: 11/27/2018

# SEAGATE REHABILITATION AND NURSING CENTER

**Overall rating** ❶: 3 out of 5 stars
Average

## Health inspections

Information about a nursing home's health inspections, complaints filed, and any resulting citations. Nursing homes that are certified by Medicare and Medicaid are inspected each year. Health care professionals inspect each nursing home and look for any health and safety citations. Learn more.

The health inspection star rating is based off of 2 years of inspections occurring before November 28, 2017.

| | SEAGATE REHABILITATION AND NURSING CENTER |
|---|---|
| **Health Inspection rating** ❶ | 3 out of 5 stars<br>Average |
| **Recent health inspection** ❶ | 02/16/2018<br>View full report |
| ➢ **Number of citations** | 3 |
| ➢ **Level of harm** ❶ | 2 = Minimal harm or potential for actual harm |
| ➢ **Residents affected** ❶ | Many |
| **Previous standard health inspection** ❶ | 09/30/2016<br>View full report |
| ➢ **Total number of health citations** | 3 |
| **Average number of health citations in New York** ❶ | 4.2 |
| **Average number of health citations in the U.S.** ❶ | 5.8 |

FILED: KINGS COUNTY CLERK 11/27/2018 10:21 AM
NYSCEF DOC. NO. 2
Medicare Nursing Home Profile
INDEX NO. 528769/2018
RECEIVED NYSCEF: 11/27/2018

|  | SEAGATE REHABILITATION AND NURSING CENTER |
|---|---|
| **Date(s) of complaint inspection(s) between 10/1/2017 - 9/30/2018** | No Complaint Inspections |
| **Number of complaints in the past 3 years that resulted in a citation** ⓘ | 0 |
| **Number of times in the past 3 years a facility-reported issue resulted in a citation** ⓘ | 0 |
| **View all health inspection details** | View all health inspection, complaint, and facility-reported issue details |

## Fire safety inspections

### SEAGATE REHABILITATION AND NURSING CENTER

**Overall rating** ⓘ : 3 out of 5 stars
Average

Learn more about the overall star ratings

3015 W 29 ST
BROOKLYN, NY 11224
(718) 616-5200

### Fire safety inspections

Nursing homes that are certified by Medicare and/or Medicaid must meet standards set by the government to ensure residents are safe. Fire safety specialists inspect nursing homes to determine if a nursing home meets the Life Safety Code (LSC) requirements, a set of fire safety and emergency preparedness requirements set by the Centers for Medicare & Medicaid Services (CMS). These requirements are aimed at preventing fires, or protecting residents in the event of an emergency like a fire, hurricane, tornado, flood, power failure, or gas leak, etc.
Learn more about fire inspections.

|  | undefined |
|---|---|
| **Automatic Sprinkler Systems in All Required Areas** ⓘ | Yes |
| **Date of most recent standard fire safety inspection** | 02/27/2018 |
| **Total number of fire safety citations** ⓘ | 0 |
| **Average number of fire safety citations in NY** | 3.3 |

FILED: KINGS COUNTY CLERK 11/27/2018 10:21 AM
NYSCEF DOC. NO. 2
INDEX NO. 523769/2018
RECEIVED NYSCEF: 11/27/2018

Medicare Nursing Home Profile

| | undefined |
|---|---|
| **Average number of fire safety citations in the United States** | 3.0 |
| **See all fire safety inspection details** | View All Fire Safety Inspections |

## Staffing

### SEAGATE REHABILITATION AND NURSING CENTER

**Overall rating** ⓘ : 3 out of 5 stars
Average

Learn more about the overall star ratings

**Staffing**

Higher staffing levels in a nursing home may mean higher quality of care for residents. This section provides information about the different types of nursing home staff and the average amount of time per resident that they spend providing care.

Get more information about the staffing measures

Get more information about how to read the staffing chart

### Staffing

The information in this section includes registered nurses (RN), licensed practical/vocational nurses (LPN/LVN), nurse aides, and physical therapists (PT). Physical therapists are not included in the "all staffing" star rating.

The "staffing" star rating takes into account that some nursing homes have sicker residents and may therefore need more staff than other nursing homes whose residents are not as sick.

| | SEAGATE REHABILITATION AND NURSING CENTER | NEW YORK AVERAGE | NATIONAL AVERAGE |
|---|---|---|---|
| **Staffing rating** | 1 out of 5 stars Much Below Average | | |
| **Average number of residents per day** | 341.8 | 167.1 | 85.9 |

FILED: KINGS COUNTY CLERK 11/27/2018 10:21 AM
NYSCEF DOC. NO. 2

INDEX NO. 523769/2018
RECEIVED NYSCEF: 11/27/2018

Medicare Nursing Home Profile

|  | SEAGATE REHABILITATION AND NURSING CENTER | NEW YORK AVERAGE | NATIONAL AVERAGE |
|---|---|---|---|
| **Total number of licensed nurse staff hours per resident per day** | 57 minutes | 1 hour and 32 minutes | 1 hour and 34 minutes |
| **RN hours per resident per day** | 21 minutes | 42 minutes | 41 minutes |
| **LPN/LVN hours per resident per day** | 37 minutes | 49 minutes | 53 minutes |
| **Nurse aide hours per resident per day** ⓘ | 2 hours and 15 minutes | 2 hours and 15 minutes | 2 hours and 20 minutes |
| **Physical therapist staff hours per resident per day** ⓘ | 10 minutes | 8 minutes | 7 minutes |

**Registered Nurse (RN) staffing only**

Registered nurses (RNs) are licensed healthcare professionals who are responsible for the coordination, management and overall delivery of care to the residents. Some nursing home residents who are sicker than others may require a greater level of care, and nursing homes that have more RN staff may be better able to meet the needs of those residents.

| **Registered Nurse (RN) staffing rating** | 2 out of 5 stars Below Average | | |
|---|---|---|---|
| **Average number of residents per day** | 341.8 | 167.1 | 85.9 |
| **RN hours per resident per day** | 21 minutes | 42 minutes | 41 minutes |

How to read staffing charts | About staff roles

## Quality of resident care

### SEAGATE REHABILITATION AND NURSING CENTER

**Overall rating** ⓘ: 3 out of 5 stars
Average

Learn more about the overall star ratings

### Quality of resident care

Nursing homes that are certified by Medicare and Medicaid regularly report clinical information for each of their residents to the Centers for Medicare & Medicaid Services (CMS). For short-stay and long-stay resident quality measures, CMS assigns nursing homes a quality of resident care star rating based on their performance on 16 measures. These, and other measures reflect, on average, how well nursing homes care for their residents. Information is listed for 2 groups of residents:

Short-stay residents - those who spent 100 days or less in a nursing home or residents covered under the Medicare Part A Skilled Nursing Facility (SNF) benefit

FILED: KINGS COUNTY CLERK 11/27/2018 10:21 AM    INDEX NO. 523769/2018
NYSCEF DOC. NO. 2    RECEIVED NYSCEF: 11/27/2018

Medicare Nursing Home Profile

Long-stay residents - those who spent over 100
days in a nursing home

<u>Learn more about what quality of resident care
information can tell you about a nursing home</u>

---

**Quality of resident care** ❶

5 out of 5 stars
**Much Above Average**

---

▼ **Short-stay residents**

Learn why these short-stay measures are important

Current data collection period

| | SEAGATE REHABILITATION AND NURSING CENTER | NEW YORK AVERAGE | NATIONAL AVERAGE |
|---|---|---|---|
| **Quality measures used to calculate the star rating** | | | |
| **Percentage of short-stay residents who were re-hospitalized after a nursing home admission.** *Lower percentages are better.* | 21.8% | 20.3% | 22.4% |
| **Percentage of short-stay residents who have had an outpatient emergency department visit.** *Lower percentages are better.* | 11.2% | 9.9% | 12.3% |
| **Percentage of short-stay residents who got antipsychotic medication for the first time.** ❶ *Lower percentages are better.* | 0.7% | 1.6% | 1.9% |
| **Percentage of short-stay residents with pressure ulcers that are new or worsened.** ❶ *Lower percentages are better.* | 0.7% | 0.8% | 0.9% |

FILED: KINGS COUNTY CLERK 11/26/2018 11:11 AM
NYSCEF DOC. NO. 2

Medicare Nursing Home Profile

Page 33 of 43 PageID #: 39

RECEIVED NYSCEF: 11/27/2018

|  | SEAGATE REHABILITATION AND NURSING CENTER | NEW YORK AVERAGE | NATIONAL AVERAGE |
|---|---|---|---|
| **Quality measures used to calculate the star rating** | | | |
| **Percentage of short-stay residents who report moderate to severe pain.** *Lower* percentages are better. | 3.3% | 8.6% | 12.8% |
| **Rate of successful return to home and community from a short-stay.** *Higher* percentages are better. | 52.6% | 54.8% | 56.4% |
| **Percentage of short-stay residents who improved in their ability to move around on their own.** ⓘ *Higher* percentages are better. | 72.5% | 69.4% | 67.9% |
| **Flu and pneumonia prevention measures** | | | |
| **Percentage of short-stay residents who needed and got a flu shot for the current flu season.** *Higher* percentages are better. | 74.2% | 82.6% | 81.8% |
| **Percentage of short-stay residents who needed and got a vaccine to prevent pneumonia.** *Higher* percentages are better. | 74.7% | 80.4% | 83.3% |
| **Additional quality measures** ⓘ | | | |
| **Percentage of SNF residents with pressure ulcers that are new or worsened.** ⓘ *Lower* percentages are better. | 1.4% | Not Available[8] | 1.7% |
| **Percentage of SNF residents who experience one or more falls with major injury during their SNF stay.** *Lower* percentages are better. | 0.0% | Not Available[8] | 0.9% |

|  | SEAGATE REHABILITATION AND NURSING CENTER | NEW YORK AVERAGE | NATIONAL AVERAGE |
|---|---|---|---|
| **Quality measures used to calculate the star rating** | | | |
| **Percentage of SNF residents whose functional abilities were assessed and functional goals were included in their treatment plan.** ⓘ *Higher percentages are better.* | 99.0% | Not Available[8] | 95.9% |
| **Rate of successful return to home and community from a SNF.** *Higher rates are better.* | Better than the National Rate | Not Available[14,8] | 48.6% |
| **Rate of potentially preventable hospital readmissions 30 days after discharge from a SNF.** *Lower rates are better.* | Not Available[16] | Not Available[14,16,8] | Not Available[16] |
| **Medicare Spending Per Beneficiary (MSPB) for residents in SNFs.** ⓘ *Displayed as a ratio.* | 1.51 | Not Available[14,8] | 1.01 |

▼ **Long-stay residents**

Learn why these long-stay measures are important

Current data collection period

|  | SEAGATE REHABILITATION AND NURSING CENTER | NEW YORK AVERAGE | NATIONAL AVERAGE |
|---|---|---|---|
| **Quality measures used to calculate the star rating** | | | |
| **Percentage of long-stay residents who got an antipsychotic medication.** ⓘ *Lower percentages are better.* | 5.1% | 11.7% | 15.0% |

| | SEAGATE REHABILITATION AND NURSING CENTER | NEW YORK AVERAGE | NATIONAL AVERAGE |
|---|---|---|---|
| **Quality measures used to calculate the star rating** | | | |
| **Percentage of long-stay residents experiencing one or more falls with major injury.** *Lower percentages are better.* | 2.6% | 2.9% | 3.4% |
| **Percentage of long-stay high-risk residents with pressure ulcers.** 🛈 *Lower percentages are better.* | 6.7% | 6.8% | 5.6% |
| **Percentage of long-stay residents with a urinary tract infection.** *Lower percentages are better.* | 0.1% | 2.5% | 3.0% |
| **Percentage of long-stay residents who have or had a catheter inserted and left in their bladder.** 🛈 *Lower percentages are better.* | 1.7% | 1.3% | 1.8% |
| **Percentage of long-stay residents whose ability to move independently worsened.** *Lower percentages are better.* | 5.4% | 16.4% | 18.2% |
| **Percentage of long-stay residents whose need for help with daily activities has increased.** 🛈 *Lower percentages are better.* | 8.8% | 13.5% | 14.9% |
| **Percentage of long-stay residents who were physically restrained.** *Lower percentages are better.* | 0.0% | 0.5% | 0.3% |
| **Percentage of long-stay residents who report moderate to severe pain.** *Lower percentages are better.* | 0.4% | 3.4% | 5.8% |
| **Flu and pneumonia prevention measures** | | | |

|  | SEAGATE REHABILITATION AND NURSING CENTER | NEW YORK AVERAGE | NATIONAL AVERAGE |
|---|---|---|---|
| **Quality measures used to calculate the star rating** | | | |
| **Percentage of long-stay residents who needed and got a flu shot for the current flu season.** *Higher percentages are better.* | 94.3% | 96.8% | 95.2% |
| **Percentage of long-stay residents who needed and got a vaccine to prevent pneumonia.** *Higher percentages are better.* | 77.4% | 94.5% | 93.9% |
| **Additional quality measures** | | | |
| **Number of hospitalizations per 1,000 long-stay resident days.** *Lower numbers are better.* | 1.84 | 1.55 | 1.69 |
| **Percentage of long-stay low-risk residents who lose control of their bowels or bladder.** *Lower percentages are better.* | 46.7% | 53.1% | 48.2% |
| **Percentage of long-stay residents who lose too much weight.** *Lower percentages are better.* | 8.5% | 6.5% | 7.0% |
| **Percentage of long-stay residents who have symptoms of depression.** *Lower percentages are better.* | 4.0% | 6.3% | 4.6% |
| **Percentage of long-stay residents who got an antianxiety or hypnotic medication.** 🄐 *Lower percentages are better.* | 10.8% | 14.5% | 21.6% |

## Penalties

### SEAGATE REHABILITATION AND NURSING CENTER

**Penalties**

FILED: KINGS COUNTY CLERK 11/27/2018 10:21 AM    INDEX NO. 523769/2018
NYSCEF DOC. NO. 2                                                        RECEIVED NYSCEF: 11/27/2018

Medicare Nursing Home Profile

**Overall rating** ❶: 3 out of 5 stars
Average

Learn more about the overall star ratings

When a nursing home gets a serious citation or fails to correct a citation for a long period of time, this can result in a penalty. A penalty can be a fine against the nursing home or a denied payment from Medicare.

Search for penalties under state law.

Learn more about penalties.

| | |
|---|---|
| **Federal fines in the last 3 years** | 0 |
| **Amount(s) and date(s)** | This nursing home has not received any fines in the last 3 years.<br><br>States may also impose penalties under state law. To search state websites Click here. |
| **Payment denials by Medicare in the last 3 years** | 0 |
| **Date(s)** | This nursing home has not received any payment denials in the last 3 years.<br><br>States may also impose penalties under state law. To search state websites click here. |

# Exhibit 2

skip to main content

## Department of Health

Information for a Healthy New York

- Home
- Help
- Contact
- A-Z En español
- A-Z Index

Folder and Previous Folders ▼

## Certificate of Need (CON)

- CON Homepage
- NYSE-CON Homepage



Return To Results    Start Over      To go back, please use the "Return to Results" button or the "Start Over" button instead of your browser's back button.

| Current | Original | Revision 01/23/2014 |
|---------|----------|---------------------|

## Summary Information

**Project Number:** 131092

**Facility Name:** Shorefront Jewish Geriatric Center

**Project Description:** Establish Shorefront Operating, LLC as the new operator of Shorefront Jewish Geriatric Center and rename the facility Waterfront Rehabilitation and Health Care Center

| General | Executive Summary | Sites | Decision | Post Approval | Summary |
|---------|-------------------|-------|----------|---------------|---------|

## General Information

**Revision Reason:** Revised: January 23, 2014 - Removal of Bent Philipson as a proposed member

| | | | |
|---|---|---|---|
| **Status:** | Project Complete | **Submission Type:** | Application - Full Review - Establishment - New Facility or Agency Application - Full Review - Establishment - Change In Ownership |
| **Status Date:** | 12/29/2014 | | |
| **Review Level:** | Full | | |
| **County:** | KINGS | **Application Received Date:** | 02/19/2013 |
| **Region:** | New York City | **Initial Review Date:** | 02/25/2013 |
| **Total Project Cost:** | $0.00 | **Acknowledgement Date:** | 03/01/2013 |

## Sites

**Main Site Information**

| | |
|---|---|
| **Facility Name:** | Shorefront Jewish Geriatric Center |
| **Facility Type:** | Residential Health Care Facility |

| | | | |
|---|---|---|---|
| **Physical Address:** | 3015 W 29 St<br>Brooklyn, NY 11224 | **Facility ID:** | 1373 |
| | | **County:** | KINGS |
| **Current Operator:** | Shorefront Jewish Geriatric Center<br>6323 7th Avenue<br>Brooklyn, NY 11220 | | |
| **Operator County:** | | **Operating Certificate:** | 7001376N |
| **Proposed Operator:** | Shorefront Operating LLC<br>c/o Sentosa Care<br>20 Franklin Place<br>Woodmere, NY 11598 | **Proposed Operator County:** | NASSAU |

**Site Information**

| | |
|---|---|
| **Facility ID:** | 1373 |
| **Site Name:** | Shorefront Operating, LLC d/b/a Waterfront Rehabilitation and Health Care Center |
| **Physical Address:** | 3015 W 29 St, Brooklyn, NY 11224 |

| County: | KINGS |
| --- | --- |

## Decision

| Decision | Action | Date |
| --- | --- | --- |
| Establishment and Project Review Committee | Contingent Approval | 01/30/2014 |
| Public Health and Health Planning Council | Contingent Approval | 02/13/2014 |

| | | | |
| --- | --- | --- | --- |
| **Director Action:** | Contingent Approval | **Date:** | 02/24/2014 |
| **ACS Letter Sent:** | | | |
| **PHC Final Approval Letter Sent:** | 07/25/2014 | | |

## Post Approval

| | | |
| --- | --- | --- |
| **Assigned Start Date:** | **Actual Start Date:** | |
| **Assigned Completion Date:** | **Actual Completion Date:** | 12/11/2014 |

### Notice

Public access to NYSE-CON is intended solely to allow the public convenient and immediate access to public information. Much of the information contained within NYSE-CON is provided by applicants, and much of it is historic information that may no longer be accurate or complete. While all attempts are made to provide accurate, current, and reliable information, the Department of Health recognizes the possibility of human and/or mechanical error and that information captured at a point in time often becomes obsolete. Therefore, the Department of Health, its employees, officers and agents make no representation, warranty or guarantee as to the accuracy, completeness, currency, or suitability of the information provided here.

Questions or comments: cons@health.state.ny.us
Revised: November 2014

- Disclaimer
- Privacy Policy
- Accessibility

# Exhibit 3

**CMS Ratings for**
**SEAGATE REHABILITATION AND NURSING CENTER**
**(Fed. Prov. No. 335513)**

| Time Period | Overall Staffing Rating | RN Staffing Rating |
|---|---|---|
| 2013Q1 | 1 | 2 |
| 2013Q2 | 1 | 2 |
| 2013Q3 | 1 | 2 |
| 2013Q4 | 2 | 3 |
| 2014Q1 | 2 | 3 |
| 2014Q2 | 2 | 3 |
| 2014Q3 | 2 | 3 |
| 2014Q4 | 1 | 2 |
| 2015Q1 | 1 | 2 |
| 2015Q2 | 1 | 2 |
| 2015Q3 | 1 | 2 |
| 2015Q4 | 1 | 1 |
| 2016Q1 | 1 | 1 |
| 2016Q2 | 1 | 1 |
| 2016Q3 | 1 | 1 |
| 2016Q4 | 1 | 1 |
| 2017M1 | 1 | 1 |
| 2017M2 | 1 | 1 |
| 2017M3 | 1 | 1 |
| 2017M4 | 1 | 1 |
| 2017M5 | 1 | 1 |
| 2017M6 | 1 | 1 |
| 2017M7 | 1 | 1 |
| 2017M8 | 1 | 1 |
| 2017M9 | 1 | 1 |
| 2017M10 | 1 | 1 |
| 2017M11 | 1 | 1 |
| 2017M12 | 1 | 1 |
| 2018M1 | 1 | 1 |
| 2018M2 | 1 | 1 |
| 2018M3 | 1 | 1 |
| 2018M4 | 1 | 2 |
| 2018M5 | 1 | 2 |
| 2018M6 | 1 | 2 |
| 2018M7 | 1 | 1 |
| 2018M8 | 1 | 1 |
| 2018M9 | 1 | 1 |

Source: https://data.medicare.gov/data/archives/nursing-home-compare



