## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| WALTER CHOW, as Administrator of the Estate of LEROY CHOW, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>SHOREFRONT OPERATING LLC d/b/a SEAGATE REHABILITATION AND NURSING CENTER; SHAINDY BERKO; ROCHEL DAVID; LEAH FRIEDMAN; DEENA LANDA; ESTHER FARKOVITZ; AVI PHILIPSON; BERISH RUBINSTEIN; DAVID RUBINSTEIN; BRUSCHA SINGER; JOEL ZUPNICK; SHOREFRONT REALTY LLC; SENTOSACARE, LLC; and DOES 1-25,<br><br>Defendants. | Civil Action<br>No. 1:19-cv-03541-FB-SJB<br><br>**CLASS ACTION COMPLAINT**<br><br>Jury Trial Demanded |

Plaintiff Walter Chow, as Administrator of the Estate of Leroy Chow, individually and on behalf of all others similarly situated (also referred to as "Patients," "Residents," or the "Class"), by and through his undersigned attorneys, Finkelstein, Blankinship, Frei-Pearson & Garber, LLP, as and for his class action complaint, alleges, based on personal knowledge as to his own actions and upon information and belief and investigation of counsel as to those of others, as follows:

## NATURE OF THE ACTION

1.      Plaintiff brings this class action against Shore Front LLC d/b/a Seagate Rehabilitation and Nursing Center; Shaindy Berko; Rochel David; Leah Friedman; Deena Landa; Esther Farkovits; Avi Philipson; Berish Rubinstein; David Rubinstein; Bruscha Singer; Joel Zupnick; Shorefront Realty LLC; SentosaCare, LLC; and Does 1-25 (collectively, "Defendants") -- the owners and operators of Seagate Rehabilitation and Nursing Center, a nursing home located at 3015 W 29th Street, Brooklyn, New York (the "Facility") -- on behalf of

himself and a class of similarly situated nursing home patients who were victimized by unsafe and inadequate care in the Facility. Defendants' unlawful conduct violates Section 2801-d of New York's Public Health Law ("PHL").[1]

2. Defendants are entrusted to provide care to the elderly and infirm nursing home patients in their custody. Unfortunately, Defendants have betrayed and continue to betray that trust. For example, Defendants fail to sufficiently staff the Facility. Throughout their operation of the Facility, Defendants have failed to staff a sufficient number of nurses and aides, thereby depriving the Facility's residents of the level of care required under New York and federal law.[2] Among many other shocking failures, this understaffing caused Defendants to fail to provide the correct dosage of medications at the prescribed times, fail to regularly wash and change patients, serve patients inappropriate meals, force patients to clean the Facility walls with caustic chemicals causing severe skin peeling, put patients on heavy narcotics resulting in some patients suffering from brain metabolic injury, and refuse patients their clothing and medication upon discharge.

3. Unsurprisingly, the Nursing Home Compare website operated by the federal Centers for Medicare & Medicaid Services ("CMS") shows that the Facility currently receives a

---

[1] PHL § 2801-d provides a cause of action by residents against nursing homes that deprive them of "any right or benefit created or established for the well-being of the patient by the terms of any contract, by any state statute, code, rule or regulation or by any applicable federal statute, code, rule or regulation." *See* PHL 2801-d(1).

[2] *See* 10 N.Y.C.R.R. § 415.13 (mandating that a nursing facility "shall provide sufficient nursing staff to provide nursing and related services to attain or maintain the highest practicable physical, mental, and psychosocial well-being of each resident"); 42 U.S.C. § 1396r(b)(4)(C)(i)(I) (mandating that a nursing facility "must provide 24-hour licensed nursing services which are sufficient to meet the nursing needs of its residents"); 42 U.S.C. § 1395i-3(b)(4)(A)(i) (mandating that a nursing facility must provide "nursing services and specialized rehabilitative services to attain or maintain the highest practicable physical, mental, and psychosocial well-being of each resident").

rating of one star ("much below average") out of a five star scale in staffing, further evidencing the lack of adequate care and staffing at the Facility.[3]

4.      As the Facility has approximately 360 beds and is operating at a high occupancy rate (above 95%),[4] there are many other residents currently languishing in an unsafe and inadequate nursing home.

5.      Accordingly, Plaintiff, individually and on behalf of the Class, asserts claims against Defendants for violation of PHL § 2801-d and seek monetary damages in an amount to be determined at trial, statutory damages in accordance with PHL § 2801-d(2), and injunctive relief prohibiting further wrongful conduct, as well as any other available relief at law or in equity.

## PARTIES

**Plaintiff**

6.      Plaintiff Walter Chow sues on behalf of the Estate of Leroy Chow, his brother, who was a resident of the Facility from approximately February 2015 until his release in August 2016.

7.      Leroy Chow passed away on December 27, 2017.

8.      On May 13, 2019, the Kings County Surrogate's Court issued Letters of Temporary Administration appointing Walter Chow administrator of Leroy Chow's estate (copy annexed as Exhibit 3).

---

[3] *See* Nursing Home Compare Profile for the Facility (available at https://www.medicare.gov/NursingHomeCompare/profile.html#profTab=-1&ID=335513) (accessed July 5, 2019) (copy annexed as Exhibit 1).

[4] *See* New York State Department of Health profile for the Facility (available at https://profiles.health.ny.gov/nursing_home/view/150691) (accessed July 5, 2019) (copy annexed as Exhibit 2).

9.      Walter Chow is a citizen and resident of Kings County, New York.

**Defendants**

10.      Defendant Shorefront Operating LLC d/b/a Seagate Rehabilitation and Nursing

Center ("Shorefront Operating") is a New York limited liability company with its principal place

of business in Kings County, New York.  At all relevant times, Shorefront Operating has been

the licensed operator of the Facility.  Shorefront Operating provides an address for service by the

New York State Department of State of 20 Franklin Place, Woodmere, New York 11598.

11.      Defendants Shaindy Berko, Rochel David, Leah Friedman, Deena Landa, Esther

Farkovits (a/k/a Esther Farkovitz a/k/a Esther Landa), Avi Philipson, Berish Rubinstein, David

Rubinstein, Bruscha Singer, and Joel Zupnick (the "Individual Defendants") are controlling

persons of the Facility pursuant to PHL § 2808-a(2).[5]  The Individual Defendants each hold

membership interests in Shorefront Operating LLC.[6]  At all relevant times, the Individual

Defendants each had a direct ownership interest in the Facility as well as the ability, acting either

alone or in concert with others with ownership interests in the operation of the Facility, to direct

or cause the direction of the management or policies of the Facility.

12.      Shaindy Berko, Rochel David, Leah Friedman, Deena Landa, Avi Philipson,

Berish Rubinstein, David Rubinstein, Bruscha Singer, and Joel Zupnick are citizens and

residents of New York State.  Esther Farkovits is a citizen and resident of the nation of Israel.

---

[5] PHL § 2808-a provides that "a 'controlling person' of a residential health care facility shall be deemed to mean any person who by reason of a direct or indirect ownership interest (whether of record or beneficial) has the ability, acting either alone or in concert with others with ownership interests, to direct or cause the direction of the management or policies of said facility."

[6] *See* https://www.health.ny.gov/facilities/public_health_and_health_planning_council/meetings/2014-01-30/docs/131092_e.pdf (accessed July 5, 2019) (copy annexed as Exhibit 4).

13.     Defendant Shorefront Realty LLC ("Shorefront Realty") is a New York limited liability company with its principal place of business in Kings County, New York.  Shorefront Realty is a controlling person of the Facility pursuant to PHL § 2808-a.  Shorefront Realty owns the property occupied by the Facility and receives rent payments from Shorefront Operating LLC for the use of the property.[7]  Moreover, there is a significant overlap in the ownership of Shorefront Realty and Shorefront Operating.[8]  Indeed, Shorefront Realty provides an address for service by the New York State Department of State of 20 Franklin Place, Woodmere, New York 11598, the same address as Shorefront Operating.  At all relevant times, Shorefront Realty has had at least an indirect and/or beneficial ownership interest in the operation of the Facility as well as the ability, acting either alone or in concert with others with ownership interests in the operation of the Facility, to direct or cause the direction of the management or policies of the Facility.

14.     Defendant SentosaCare, LLC ("SentosaCare") is a New York limited liability company with its principal place of business in Nassau County, New York.  SentosaCare is a controlling person of the Facility pursuant to PHL § 2808-a.  SentosaCare provides administrative services to the Facility.[9]  Moreover, there is a significant overlap in the ownership

---

[7] *See* Exhibit 4.

[8] Rochel David, Leah Friedman, Berish Rubinstein, Brucha Singer, David Rubinstein, Cheskel Berkowitz, Benjamin Landa, the Schlesinger Family Trust, and Philipson Family, LLC each hold membership interests in Shorefront Realty LLC.  *See* Exhibit 4.

[9] *See* State of New York Public Health and Health Planning Council Committee Day Agenda for January 28, 2016, Exhibit 6, Project #152177-E at p.10 (available at https://www.health.ny.gov/facilities/public_health_and_health_planning_council/meetings/2016-01-28/docs/exhibits.pdf) (disclosing that "Sentosa Care LLC contracts for administrative services with the following nursing homes . . . : Bay Park Center for Nursing and Rehabilitation; Eastchester Rehabilitation and Health Care Center; Nassau Extended Care Center; Park Avenue

of SentosaCare, Shorefront Realty, and Shorefront Operating.[10]  Indeed, the "proposed operator" of the Facility was initially "Shorefront Operating LLC c/o SentosaCare, LLC,"[11] and SentosaCare even provides an address for service by the New York State Department of State of 20 Franklin Place, Woodmere, New York 11598, the same address as Shorefront Operating and Shorefront Realty.  At all relevant times, SentosaCare has had at least an indirect and/or beneficial ownership interest in the operation of the Facility as well as the ability, acting either alone or in concert with others with ownership interests in the operation of the Facility, to direct or cause the direction of the management or policies of the Facility.

15.     In addition to the defendants identified with particularity, Plaintiff alleges all claims against Does 1-25, with addresses and names unknown, who are other persons that have owned, operated, or controlled the Facility during the relevant period.

## JURISDICTION AND VENUE

16.     This Court has original subject-matter jurisdiction over this proposed class action pursuant to 28 U.S.C. § 1332(d), which, under the provisions of the Class Action Fairness Act ("CAFA"), explicitly provides for the original jurisdiction of the federal courts in any class

---

Extended Care Facility; Seagate Rehabilitation and Nursing Center") (last visited July 5, 2019) (relevant portion of which is annexed as Exhibit 5).

[10] The principals of SentosaCare are Bent Philipson and Benjamin Landa.  On information and belief, Bent Philipson is related to Avi Philipson, an owner of Shorefront Operating, and Benjamin Landa is related to Deena Landa and Esther Farkovits (a/k/a Esther Landa), also owners of Shorefront Operating.  Moreover, Benjamin Landa is an owner of Shorefront Realty, which has an ownership interest in the Facility, and, on information and belief, Bent Philipson is a member of Philipson Family, LLC, which is also an owner of Shorefront Realty.

[11] *See* Summary Information page for Project Number 131092 on the New York State Department of Health Certificate of Need system (available athttps://www.health.ny.gov/facilities/cons/nysecon/) (visited October 31, 2018) (copy annexed as Exhibit 6).

action in which the proposed plaintiff class is comprised of at least 100 members, any member of

a class of plaintiffs is a citizen of a State and any defendant is a citizen or subject of a foreign

state, and the matter in controversy exceeds the sum of $5,000,000.00, exclusive of interest and

costs.  The total claims of individual members of the proposed Class (as defined herein) are well

in excess of $5,000,000.00 in the aggregate, exclusive of interest and costs.

17.     This Court has personal jurisdiction over the parties because Plaintiff and several

of the Defendants reside in the State of New York.  Additionally, Defendants have conducted

and do conduct substantial business in this State, including through operation of the Facility;

have had systematic and continuous contacts with this State, including through operation of the

Facility; and have agents and representatives that can be found in this State, including through

operation of the Facility.

18.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because Defendants'

contacts are sufficient to subject them to personal jurisdiction in this District and a substantial

part of the events and omissions giving rise to the claims occurred in this District.  Defendants

operated the Facility in this District.  Furthermore, Plaintiff and several of the Defendants reside

within this District.

## FACTUAL BACKGROUND

I.      **The Nursing Home Crisis Leads To Legislation Granting Patients
        A Right To Bring Class Actions Against Operators For Improper
        Care And To Federal Databases Tracking Nursing Home Ratings.**

19.     In an effort to protect the vulnerable nursing home population, ensure that their

rights are enforced, and provide them with a form of legal recourse which would not otherwise

be economically feasible, the New York State Legislature enacted PHL §§ 2801-d and 2803-c.

20.     Predating the enactment of PHL §§ 2801-d and 2803-c, "the public's confidence

in the State's ability to protect its most defenseless citizens, the aged and infirm, had been

destroyed by a series of dramatic disclosures highlighting the abuses of nursing home care in their State." *See* Governor's Memoranda, Nursing Home Operations, McKinney's 1975 Session Laws of New York, p.1764.  In Governor Carey's letter to the Legislature accompanying the bills for PHL §§ 2801-d and 2803-c, he stated that these bills were "designed to deal directly with the most serious immediate problems which have been uncovered with respect to the nursing home industry."[12]  The Sponsor's Memorandum relating to PHL § 2803-c and the transcripts of the Senate debates indicate that the purpose of the statute was to establish certain minimum standards for the care of nursing home patients.  *See* Governor's Bill Jacket for Chapter 648 of the Laws of 1975; Senate Debate Transcripts, 1975, Chapter 648 Transcripts, pp.4521, 4525.  The term "residential health care facility" was intentionally used by the Legislature in an effort to curb abuses in the nursing home industry.[13]

21.     The Commission's Summary Report specifically indicated that PHL § 2801-d creates a cause of action for a patient of a facility which deprived the patient "of rights or benefits created for his well-being by federal or state law or pursuant to contract" which resulted in injury to the patient.  The Commission stated that this statute "introduce[s] a degree of equality between nursing homes and their otherwise vulnerable and helpless patients and, through private litigation brought by patients either in individual or class action lawsuit, provides a supplemental mechanism for the enforcement of existing standards of care."

22.     The Legislative Memorandum "Nursing Home–Health Care Facilities–Actions by Patients" relating to PHL § 2801-d observes that nursing home patients "are largely helpless and

---

[12] *Morisett v. Terence Cardinal Cooke Health Care Ctr.*, 8 Misc.3d 506, 509 (Sup. Ct. N.Y. Cnty. 2005).

[13] *See Town of Massen v. Whalen*, 72 A.D.2d 838 (3rd Dep't 1979).

isolated," that many are "without occasional visitors," and that "[m]ost cannot afford attorneys," and therefore the bill provides nursing home patients "with increased powers to enforce their rights to adequate treatment and care by providing them with a private right of action to sue for damages and other relief and enabling them to bring such suits as class actions." *See* McKinney's Session Laws of New York, 1975 pp.1685-86.  That memorandum states that the proposed PHL § 2801-d "creates incentives which would encourage private non-governmental parties (*i.e.*, plaintiffs' attorneys) to help protect the rights of nursing home patients." *Id.*

23.     This statutory cause of action was created as an additional remedy, separate and distinct from other available traditional tort remedies.[14]

24.     In addition, in the wake of an emphasized focus on the adequacy of care provided by skilled nursing home facilities, in December of 2008, the Centers for Medicare & Medicaid Services ("CMS") enhanced its Nursing Home Compare public reporting site to include a set of quality ratings for each nursing home that participates in Medicare or Medicaid.  The primary goal of this rating system is to provide residents and their families with an easy way to assess nursing home quality, in order to make meaningful distinctions between high and low performing nursing homes.  The rating system features an overall five-star rating based on facility performance in three areas, each of which has its own five-star rating: (1) health inspections, which is measured based on outcomes from State health inspections; (2) staffing, which is a measure based on the nursing home's aggregate staffing demand (based ultimately on the residents' Minimum Data Set ("MDS") -- a set of metrics used to determine for each resident the amount of staffing needed) and staffing supply (based on payroll records for Registered

---

[14] *See Kash v. Jewish Home & Infirmary of Rochester, N.Y. Inc.*, 61 A.D.3d 146, 150 (4th Dep't 2009).

Nurse ("RN"), Licensed Practitioner Nurse ("LPN"), and nurse aide hours per resident per day); and (3) quality measures.[15]

25.     This class action seeks to address the injustices that caused the Legislature to enact PHL § 2801-d.  As alleged in more detail below, Defendants have violated and continue to violate their statutory obligations by failing to provide, among other things, adequate staffing, supervision, treatment, hygiene, and medical attention to the Class.

## II.     The Facility Is Unsafe And The Conditions To Which Its Patients Are Subjected Violate Numerous Statutes.

26.     Previously known as the Shorefront Jewish Geriatric Center and operated by the not-for-profit corporation Shorefront Jewish Geriatric Center, Inc., the Facility was sold in December 2014 to two entities -- owned almost entirely by the same parties -- in a deal worth $50,000,000.00.  Defendant Shorefront Realty LLC purchased the Facility's real estate for $32,000,000.00, and defendant Shorefront Operating LLC purchased the Facility's operations for $18,000,000.00.  Subsequent to the sale, Shorefront Operating LLC made lease payments to Shorefront Realty LLC for use of the Facility.  Mortgage financing of $45,000,000.00 was provided by Greystone Funding Corporation.  As part of the sale, the name under which the Facility operates was changed to Seagate Rehabilitation and Nursing Center.  Also as part of the sale, Shorefront Operating, LLC contracted with SentosaCare, LLC to provide administrative services to the Facility.

---

[15] *See* Centers for Medicare & Medicaid Services, "Design for Nursing Home Compare Five-Star Quality Rating System: Technical User's Guide" (July 2018 ed.) (the "CMS Technical Guide") (available at https://www.cms.gov/Medicare/Provider-Enrollment-and-Certification/CertificationandComplianc/Downloads/usersguide.pdf) (last visited August 28, 2018).

27.     Conditions at the Facility have been and continue to be unsafe and violative of applicable laws, rules, and regulations, and the care provided to Leroy Chow and the Class has been and continues to be inadequate.

28.     Defendants failed and continue to fail to promote the care for the Facility's residents in a manner that maintains or enhances each resident's dignity and respect in full recognition of their individuality and in contravention of applicable federal and New York State laws, rules, and regulations.

29.     Among other failures, Defendants failed and continue to fail to provide sufficient nursing staff to provide the nursing and related services necessary to attain and maintain the highest practicable physical and psycho-social well-being of the Patients.  A resident's right to sufficient staffing is one of the most important rights protected by New York and federal statutes.[16]

30.     The Facility is administered by SentosaCare, LLC.  As early as October 2015, local news media reported that staffing levels among SentosaCare administrated nursing homes were egregiously low.[17]

31.     Indeed, the Facility currently receives a rating of one star ("much below average") out of a five star scale in staffing from the Nursing Home Compare website operated by CMS.[18] CMS's star ratings for staffing reflect the relationship of a facility's reported staffing levels to its expected staffing levels (determined by looking at the number of residents and their reported

---

[16] *See* 10 N.Y.C.R.R. § 415.13; 42 U.S.C. § 1396r(b)(4)(C)(i)(I); 42 U.S.C. § 1395i-3(b)(4)(A)(i).

[17] *See* https://www.propublica.org/article/new-york-for-profit-nursing-home-group-flourishes-despite-patient-harm (accessed July 8, 2019) (copy annexed as Exhibit 7).

[18] *See* Exhibit 1.

medical conditions).[19]  A one-star or two-star rating indicates that the Facility has actual staffing

levels below the expected staffing levels, based on the needs of the residents.[20]  Defendants here

have failed to adequately staff the Facility for years; during every quarter beginning in 2013 to

the present, the Facility has received one and two star ratings for overall staffing and RN

staffing.[21]

32.     Defendants' failure to properly staff the Facility is particularly egregious because

understaffing is one of the primary causes of inadequate care and often unsafe conditions in

nursing facilities.  Numerous studies have shown a direct correlation between inadequate staffing

and serious care problems including, but not limited to, a greater likelihood of falls, pressure

sores, significant weight loss, incontinence, and premature death.  Although the dangers caused

by understaffing are common knowledge in the nursing home industry, Defendants nonetheless

chose not to provide adequate staffing levels.

33.     In addition, Defendants failed and continue to fail to provide each patient with the

appropriate food.  For example, Leroy Chow, who was a diabetic, was often served inappropriate

meals laden with sugars and heavy in carbohydrates.

34.     Defendants have subjected Leroy Chow and the Class to indignities and other

harms that directly resulted and continue to result from inadequate nurse staffing levels at the

Facility, including but not limited to: infrequent and inadequate turning and repositioning; no

---

[19] *See* CMS Technical Guide at 1 ("The staffing measures are derived from data submitted each quarter through the Payroll-Based Journal System (PBJ), along with daily resident census derived from Minimum Data Set, Version 3.0 (MDS 3.0) assessments, and are case-mix adjusted based on the distribution of MDS 3.0 assessments by Resource Utilization Groups, version IV (RUG-IV group).") & 7-12.

[20] *Id.* at 9-12.

[21] *See* Exhibit 8 (compiling historical CMS ratings for staffing for the Facility).

response or long response times to call lights; failure to provide adequate showers; lack of assistance with grooming and bathing; inadequate attention to toileting needs, resulting in Leroy Chow and the Class remaining in their own urine and fecal matter for extended periods of time; lack of assistance with eating; failure to provide fluids as needed; lack of assistance with dressing; and being confined to their beds without removal for long periods.  Indeed, Plaintiff has found no nurses or doctors present on the floor for hours at a time or indeed for an entire evening.

35.     For example, in October of 2015, Leroy Chow was forced by the staff at the Facility to clean the Facility walls himself using caustic chemicals, resulting in his suffering severe skin peeling.  Also while a resident at the Facility, Leroy Chow developed three huge pre-cancerous polyps that were left unattended for almost a year.  He was also discovered by family members to be sitting in a public area in urine soaked clothing, apparently having needed to have been changed for hours.  Because of the lack of sufficient staff, he was constantly given the incorrect dosage of medication.

36.     His meals were often inappropriate for a diabetic.  He was served meals containing high amounts of carbohydrates and sugar.  In August 2016, when he was due to be released from the Facility, he was placed on heavy narcotics in order to deter his discharge.  He suffered brain metabolic injury due to the heavy narcotics and was refused his clothing and medication upon release.

37.     Indeed, there were several instances where Leroy Chow or another resident would ask for help -- for example, with going to the bathroom -- while sitting out sitting out in open area, right in front of the nurses' station, but would receive no assistance for hours.  As a result,

Leroy Chow and other residents were left to sit in their own waste, increasing their risk of developing a urinary tract infections ("UTI").

38.      As a result of Defendants' inadequate care, Leroy Chow sustained personal injuries and endured conscious pain and suffering.

39.      Upon information and belief, as a result of Defendants' inadequate care, the other members of the Class have sustained physical injuries and endured conscious pain and suffering.

40.      Defendants' inadequate care also injured Leroy Chow and the other members of the Class by placing them at an increased risk of harm.

41.      And Defendants' failure to satisfy their obligations pursuant to federal and New York law -- particularly the obligation to provide sufficient staffing -- economically injured Leroy Chow and the other members of the Class by depriving them of the benefit of the services for which they paid Defendants -- namely, a nursing home with, at the least, staffing sufficient to satisfy the requirements of New York and federal law

## CLASS ACTION ALLEGATIONS

42.      Plaintiff brings this action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of himself and all other similarly situated.[22]   The Class is defined as:

> All persons who reside, or resided, at the Facility from November 27, 2015, to the present.

---

[22] PHL § 2801-d explicitly provides for these statutory claims to be brought as a class action. *See* PHL § 2801-d(4) (providing that "[a]ny damages recoverable pursuant to this section, *including minimum damages as provided by subdivision two of this section*, may be recovered in any action which a court may authorize to be brought as a class action" (emphasis added)).  PHL § 2801-d(2) provides that "compensatory damages shall be assessed in an amount sufficient to compensate such patient for such injury, but in no event less than twenty-five percent of the daily per-patient rate of payment established for the residential health care facility under section twenty-eight hundred seven of this article or, in the case of a residential health care facility not having such an established rate, the average daily total charges per patient for said facility, for each day that such injury exists."

43.     Plaintiff reserves the right to amend the above definitions, or to propose other or additional classes, in subsequent pleadings and/or motions for class certification.

44.     Plaintiff, as the representative of Leroy Chow's estate, is a member of the Class.

45.     Excluded from the Class are: (i) Defendants; any entity in which Defendants have a controlling interest; the officers, directors, and employees of Defendants; and the legal representatives, heirs, successors, and assigns of Defendants; (ii) any judge assigned to hear this case (or any spouse or family member of any assigned judge); (iii) any juror selected to hear this case; (iv) claims for personal injury and wrongful death; and (v) any and all legal representatives of the parties and their employees.

46.     This action seeks to enjoin Defendants from understaffing the Facility, failing to disclose understaffing at the Facility, and making misleading promises about staffing at the Facility.  In addition, this action seeks recovery -- including statutory minimum damages -- from the Defendants for injuries resulting from Defendants' failure to meet their contractual, statutory, and regulatory obligations.

47.     Plaintiff and the Class satisfy the requirements for class certification for the following reasons:

48.     **Numerosity of the Class.**  At this time, Plaintiff does not know the exact number of members of the Class, but the number is estimated to be in the hundreds, if not thousands. Therefore, the members of the Class are so numerous that their individual joinder is impracticable.  The precise number of persons in the Class and their identities and addresses may be ascertained from Defendants' records.  If deemed necessary by the Court, members of the Class may be notified of the pendency of this action.

49.     **Common Questions of Fact and Law.**  There are questions of law or fact common to the Class that predominate over any questions affecting only individual members, including:

      a.  Whether Defendants violated or violate New York laws, including, but not limited to, PHL 2801-d, by depriving any patient of the Facility of any right or benefit created or established for the well-being of the patient by the terms of any contract, by any state statute, code, rule, or regulation, or by any applicable federal statute, code, rule, or regulation during the Class Period;

      b.  Whether Defendants violated or violate New York laws, including, but not limited to, PHL 2803-c, by failing to provide any patient of the Facility with adequate and appropriate medical care, failing to provide courteous, fair and respectful care and treatment, and failing to ensure every patient was free from mental and physical abuse during the Class Period;

      c.  Whether Defendants failed or fail to employ an adequate number of qualified personnel to carry out all of the functions of the Facility in violation of PHL 2801-d and 2803-c;

      d.  Whether Defendants' decision to understaff the Facility violated or violates any right(s) of residents as set forth in PHL 2801-d and 2803-c;

      e.  Whether Defendants' decision to understaff the Facility and failure to provide adequate and appropriate medical care violated or violates any right(s) of residents as set forth in the Patients' Bill of Rights pursuant to PHL 2803-c;

      f.  Whether Defendants' conduct violated or violates sections 31.19(a) and 16.19(a) of the New York Mental Hygiene Law;

      g.  Whether Defendants' conduct violated or violates section 415 of the New York Code Rules and Regulations, including but not limited to subsections 415.3, 415.5, 415.12, 415.13, 415.14, 415.15, and 415.26; and

      h.  Whether Defendants' conduct violated or violates the federal Nursing Home Reform Act, codified at 42 U.S.C. §§ 1395i-3(a)-(h) & 1396r(a)-(h) and at 42 C.F.R. §§ 483.15, 483.20, 483.25, 483.30, 483.40, 483.60, & 483.75.

50.     **Typicality.**  The claims of Plaintiff are typical of the claims of the proposed Class because Plaintiff's claims are based upon the same legal theories and same violations of New York State law.  Plaintiff's grievances, like the proposed Class members' grievances, all arise out of the same business practices and course of conduct by Defendants.  Further, Plaintiff's

damages arise out of a pattern of uniform and repetitive business practices conducted by Defendants.

51.     **Adequacy.**  Plaintiff will fairly and adequately represent the Class on whose behalf this action is prosecuted.  His interests do not conflict with the interests of the Class.

52.     Plaintiff and his chosen attorneys, Finkelstein, Blankinship, Frei-Pearson & Garber, LLP ("FBFG"), are familiar with the subject matter of the lawsuit and have full knowledge of the allegations contained in this Complaint so as to be able to assist in its prosecution.  Indeed, FBFG has been appointed as lead counsel in several complex class actions across the country and has secured numerous favorable judgments in favor of its clients.  FBFG's attorneys are competent in the relevant areas of the law and have sufficient experience to vigorously represent the Class members.  Finally, FBFG possesses the financial resources necessary to ensure that the litigation will not be hampered by a lack of financial capacity and is willing to absorb the costs of the litigation.

53.     **Superiority.**  A class action is superior to any other available methods for adjudicating this controversy.  The proposed class action is the surest way to fairly and expeditiously compensate so large a number of injured persons, to keep the courts from becoming paralyzed by hundreds -- if not thousands -- of repetitive cases, and to reduce transaction costs so that the injured Class members can obtain the most compensation possible.

54.     Class treatment presents a superior mechanism for fairly resolving similar issues and claims without repetitious and wasteful litigation for many reasons, including the following:

    a.  Absent a class action, Class members will suffer continuing, ever-increasing damages; violations of Class members' rights will continue without remedy; and the Facility will continue to remain understaffed, resulting in the mistreatment and improper care of Patients at the Facility.

    b.  It would be a substantial hardship for most individual members of the Class if they were forced to prosecute individual actions.  Many members of the Class are

not in the position to incur the expense and hardship of retaining their own counsel to prosecute individual actions, which in any event might cause inconsistent results.

c.   When the liability of Defendants has been adjudicated, the Court will be able to determine the claims of all members of the Class.  This will promote global relief and judicial efficiency in that the liability of Defendants to all Class members, in terms of money damages due and in terms of equitable relief, can be determined in this single proceeding rather than in multiple, individual proceedings where there will be a risk of inconsistent and varying results.

d.   A class action will permit an orderly and expeditious administration of the Class claims, foster economies of time, effort, and expense, and ensure uniformity of decisions.  If Class members are forced to bring individual suits, the transactional costs, including those incurred by Defendants, will increase dramatically, and courts will be clogged with a multiplicity of lawsuits concerning the very same subject matter, with the identical fact patterns and the same legal issues.  A class action will promote a global resolution, and will promote uniformity of relief as to the Class members and as to Defendants.

e.   This lawsuit presents no difficulties that would impede its management by the Court as a class action.  The class certification issues can be easily determined because the Class includes only the residents of the Facility, the legal and factual issues are narrow and easily defined, and the Class membership is limited.  The Class does not contain so many persons that would make the Class notice procedures unworkable or overly expensive.  The identity of the Class members can be identified from Defendants' records, such that direct notice to the Class members would be appropriate.

55.   In addition, the prerequisites to maintaining a class action for injunctive or equitable relief are met as Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive or equitable relief with respect to the Class.

56.   The prosecution of separate actions by members of the Classs would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendants. For example, one court might enjoin Defendants from understaffing, whereas another might not. Additionally, individual actions could be dispositive of the interests of members of the Classes who are not parties to such actions.

## **FIRST CAUSE OF ACTION**

## **PUBLIC HEALTH LAW § 2801-d**

57.     Plaintiff incorporates by reference and realleges herein all paragraphs alleged above.

58.     At all relevant times, Shorefront Operating conducted business as the licensed operator of the Facility, located at 3015 W 29th Street, Brooklyn, NY 11224.

59.     At all relevant times, Shorefront Operating had possession and control of the Facility.

60.     At all relevant times, Shaindy Berko, Rochel David, Leah Friedman, Deena Landa, Esther Farkovits, Avi Philipson, Berish Rubinstein, David Rubinstein, Bruscha Singer, Joel Zupnick, Shorefront Realty LLC, SentosaCare, LLC, and Does 1-25 have each had an ownership interest in the operations of the Facility and the ability, acting either alone or in concert with others with ownership interests, to direct or cause the direction of the management or policies of the Facility, and are thus controlling persons of the Facility pursuant to PHL § 2808-a.

61.     At all relevant times, the Facility has operated as a residential health care facility as defined in PHL § 2801(3).  The Facility provides nursing care to sick, invalid, infirm, disabled or convalescent persons in addition to lodging and board or health-related service, and is thus a nursing home as defined in PHL § 2801(2).

62.     Accordingly, Defendants are subject to the provisions of PHL §§ 2801-d and 2803-c, as well as the rules and regulations set forth in sections 31.19(a) and 16.19(a) of the New York Mental Hygiene Law, section 415 of the New York Code Rules and Regulations, and the federal Nursing Home Reform Act.  These rules and regulations impose various obligations on Defendants, including, among others, a duty to adequately staff the Facility.

63.     Leroy Chow and the Class entered the Facility for care, treatment, supervision, management, and/or rehabilitation.

64.     Leroy Chow and the Class were under the exclusive care, custody, control, treatment, rehabilitation, supervision, and management of Defendants.

65.     During the period of Leroy Chow and the Class's residency in the Facility, Defendants, through their officers, employees, agents, and staff, violated PHL § 2801-d by depriving Mr. Chow and the Class of rights or benefits created or established for their well-being by the terms of a contract(s) and/or by the terms of state and federal statutes, rules, and regulations.

66.     During Leroy Chow and the Class's residency, they sustained personal injuries and suffered mental anguish as a result of Defendants' failure to meet their contractual, statutory, and regulatory obligations, particularly the obligation to adequately staff the Facility.

67.     During Leroy Chow and the Class's residency at the Facility, they were and are subjected to indignities and other harms that directly resulted and result from inadequate staffing levels at the Facility, including but not limited to: infrequent and inadequate turning and repositioning; no response or long response times to a call light; failure to provide adequate showers; lack of assistance with grooming and bathing; inadequate attention to toileting needs requiring Leroy Chow and the Class to remain in their own urine and fecal matter for extended periods of time; lack of assistance with eating; failure to provide fluids as needed; lack of assistance with dressing; and being confined to their bed without removal for long periods.

68.     Plaintiff and his family complained to the Facility's staff regarding the neglectful, improper, and/or inadequate care and treatment of Leroy Chow and the other members of the Class.

20

69.     As a result of the foregoing acts and/or omissions, Defendants deprived Mr. Chow and the Class of their rights in violation of PHL § 2801-d.

70.     Defendants' deprivation of Mr. Chow and the Class's rights in violation of PHL § 2801-d substantially contributed to, created, and/or caused Mr. Chow and the Class's injuries. These injuries include, but are not limited to: being subjected to an increase risk of harm; being forced to undergo unnecessary medical treatment; incurring medical expense; suffering disfigurement, disability, mental anguish, and pain; suffering loss of enjoyment of life; and suffering a loss of the benefit of the bargain for which they contracted with Defendants -- namely, a residency at a nursing home with, at the least, staffing sufficient to satisfy the requirements of New York and federal law.

71.     Defendants' responsibilities and obligations to Leroy Chow and the Class are non-delegable, and thus Defendants have direct and/or vicarious liability for violations, deprivations, and infringements of such responsibilities and obligations by any person or entity under Defendants' control, direct or indirect, including their employees, agents, consultants, and independent contractors, whether in-house or outside entities, individuals, agencies, or pools, or caused by Defendants' policies, whether written or unwritten, or their common practices.

72.     All acts and omissions committed by employees and agents of Defendants were pervasive, omnipresent events that occurred and continued throughout Leroy Chow and the other members of the Class's residency at the Facility, and were such that supervisors, administrators, and managing agents of Defendants knew, or should have been aware, of them.

73.     Pursuant to PHL § 2801-d(2), Plaintiff and the Class seek compensatory damages in an amount sufficient to compensate each Patient for his or her injury, but in no event less than twenty-five percent of the daily per-patient rate of payment established for the Facility under

PHL § 2807, or, in the event the Facility does not have an established rate, the average daily total charges per patient for the Facility, for each day that such injury existed.

74.     In addition to damages suffered by Leroy Chow and the Class as the result of the deprivation of their rights as nursing home residents, justice requires that Plaintiff and the Class recover attorney's fees pursuant to PHL § 2801-d(6), punitive damages pursuant to PHL § 2801-d(2), and costs.

75.     Moreover, pursuant to PHL § 2808-a(1), as controlling persons of the Facility, Shaindy Berko, Rochel David, Leah Friedman, Deena Landa, Esther Farkovits, Avi Philipson, Berish Rubinstein, David Rubinstein, Bruscha Singer, Joel Zupnick, Shorefront Realty LLC, SentosaCare, LLC, and Does 1-25 are liable, jointly and severally, with and to the same extent as Shorefront Operating, to the Plaintiff and the Class.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment on behalf of himself and the Class as follows:

a.  Certifying that the action may be maintained as a class action;

b.  Requiring that Defendants pay for notifying the members of the Class of the pendency of this suit;

c.  Awarding Plaintiff and the Class injunctive relief prohibiting Defendants' violations of PHL §§ 2801-d and 2801-c in the future;

d.  On the First Cause of Action for violation of PHL § 2801-d, awarding Plaintiff and the Class monetary damages in an amount to be determined at trial and punitive damages;

e.  For restitution and any other monetary relief permitted by law;

f.  For attorney's fees and costs; and

g.  For such other and further relief as the Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Federal Rule of Civil Procedure Rule 38, Plaintiff hereby demands a trial by

jury.

Dated:  White Plains, New York
       July 11, 2019

                    Respectfully Submitted,

                    **FINKELSTEIN, BLANKINSHIP,**
                    **FREI-PEARSON & GARBER, LLP**

                    By: */s/Jeremiah Frei-Pearson*
                    Jeremiah Frei-Pearson
                    Todd S. Garber
                    John Sardesai-Grant
                    Ayana McGuire
                    445 Hamilton Avenue, Suite 605
                    White Plains, New York 10601
                    Tel: (914) 298-3281
                    Fax: (914) 824-1561
                    jfrei-pearson@fbfglaw.com
                    tgarber@fbfglaw.com
                    jsardesaigrant@fbfglaw.com
                    amcguire@fbfglaw.com

                    *Attorneys for Plaintiff and the Proposed Class*