# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| WALTER CHOW, as Administrator of the Estate of LEROY CHOW, individually and on behalf of all others similarly situated, <br><br>                 Plaintiff, <br><br> v. <br><br> SHOREFRONT OPERATING LLC d/b/a SEAGATE REHABILITATION AND NURSING CENTER; SHAINDY BERKO; ROCHEL DAVID; LEAH FRIEDMAN; DEENA LANDA; ESTHER FARKOVITZ; AVI PHILIPSON; BERISH RUBINSTEIN; DAVID RUBINSTEIN; BRUSCHA SINGER; JOEL ZUPNICK; SHOREFRONT REALTY LLC; SENTOSACARE, LLC; and DOES 1-25, <br><br>                 Defendants. | Civil Action <br> No. 1:19-cv-03541-FB-SJB |

<br><br>

## PLAINTIFF'S MEMORANDUM OF LAW
## <u>IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS</u>

**<u>TABLE OF CONTENTS</u>**

Table of Authorities…………………………………………………………………………iii

Preliminary Statement………………………………....…………………………………....1

Argument…………………………………………………………………….…………5

    I.       Plaintiff Need Only Allege Sufficient
             Facts To Render His Claims Plausible…………………………………………5

    II.      The Controlling Person Defendants Are Properly Joined In This Action………..6

    III.     Plaintiff Plausibly Alleges That
             Shorefront Realty And  SentosaCare Are
             Controlling Persons Pursuant To PHL § 2808-a…………………………………11

           A.     Shorefront Realty Is Liable Under The Public Health Law……………..13

           B.     SentosaCare Is Liable Under The Public Health Law…………………...16

           C.     Defendants' Argument Is Inappropriate
                 For Resolution On A Motion to Dismiss………………………………...20

    IV.     Plaintiff Can Seek Injunctive Relief…………………………………………..21

Conclusion…………………………………………………………………………21

# **TABLE OF AUTHORITIES**

Page(s)

## **Cases**

*Anderson News, L.L.C. v. Am. Media, Inc.*,
  680 F.3d 162 (2d Cir. 2012) .................................................................... 5, 6

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ................................................................................ 5

*Barkley v. United Homes, LLC*,
  848 F. Supp. 2d 248 (E.D.N.Y. 2012) .................................................... 21

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007) ................................................................................ 5

*Blanchette v. Connecticut Gen. Ins. Corps.*,
  419 U.S. 102 (1974) ................................................................................ 6

*Breslaw v. Rightmire*,
  196 N.Y.S. 539 (N.Y. Sup. Ct. Aug. 7, 1922) ........................................ 7

*Britz Fertilizers, Inc. v. Nationwide Agribusiness Ins. Co.*,
  No. 10-2051, 2013 WL 5519605 (E.D. Cal. Oct. 3, 2013) ...................... 8

*Fanucci v. Allstate Ins. Co.*,
  638 F. Supp. 2d 1125 (N.D. Cal. 2009) .................................................. 8

*Fleming v. Barnwell Nursing Home & Health Facilities, Inc.*,
  309 A.D.2d 1132 (3d Dep't 2003) .......................................................... 3

*Gorton v. Fellner*,
  88 A.D.2d 742 (N.Y. App. Div. 1982) .................................................... 12, 19

*Healthcare Distribution All. v. Zucker*,
  353 F. Supp. 3d 235 (S.D.N.Y. 2018) .................................................... 6

*In re Daley*,
  222 B.R. 44 (Bankr. S.D.N.Y. 1998) ...................................................... 8, 15

*In re Fiesole Trading Corp.*,
  315 B.R. 198 (Bankr. D. Mass. 2004) .................................................... 8

*Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*,
  797 F.3d 160 (2d Cir. 2015) .................................................................... 21

*Nat'l Org. for Marriage, Inc. v. Walsh*,
  714 F.3d 682 (2d Cir. 2013) .................................................................... 6

*Neitzke v. Williams*,
  490 U.S. 319 (1989) ................................................................................ 5

*Niagara Mohawk Power Corp. v. Salerno*,
  797 N.Y.S.2d 663, 2005 WL 1378361 (N.Y. App. Div. 2005) ................................................ 9

*Ocean Side Institutional Indus., Inc. v. United Presbyterian Residence*,
  678 N.Y.S.2d 653 (N.Y. App. Div. 1998) ........................................................... 7, 12, 18

*Passucci v. Absolut Center for Nursing and Rehabilitation at Allegany, LLC*,
  No. 2010/6955, 2014 N.Y. Slip Op. 33459(U), 2014 WL 7912858 (N.Y. Sup. Ct. Jan. 10,
  2014) ........................................................................................................ 9

*Peck v. Hillside Children's Ctr.*,
  915 F. Supp. 2d 435 (W.D.N.Y. 2013) ................................................................. 6

*Peters v. Nesconset Center for Nursing and Rehabilitation*,
  No. 700845/12, 15 N.Y.S.3d 714, 2015 WL 1768991 (N.Y. Sup. Ct. Apr. 15, 2015) ............... 9

*Scheuer v. Rhodes*,
  416 U.S. 232 (1974) ..................................................................................... 5

*Sunrest Properties, LLC v. Sunrest Nursing Home*,
  No. 15240-04, 806 N.Y.S.2d 449, 2005 WL 1993485 (N.Y. Sup. Ct. Aug. 15, 2005) ............. 8

*Swierkiewicz v. Sorema N. A.*,
  534 U.S. 506 (2002) ..................................................................................... 5

*Thomas v. Union Carbide Agric. Prods. Co.*,
  473 U.S. 568 (1985) ..................................................................................... 6

*United States v. All Right, Title & Interest in Five Parcels of Real Prop. & Appurtances Thereto
  Known as 64 Lovers Lane*,
  830 F. Supp. 750 (S.D.N.Y. 1993) ................................................................... 20

*Walker v. Pacific Indem. Co.*,
  183 Cal. App. 2d 513 (Cal. Ct. App. 1960) .......................................................... 8

## Statutes

42 U.S.C. § 1395i-3(b)(4)(A)(i) ........................................................................ 1

42 U.S.C. § 1396r(b)(4)(C)(i)(I) ....................................................................... 1

New York's Public Health Law ("PHL") § 2801-d ..................................... 3, 4, 15, 16

New York's Public Health law Section 2808- ......................................... 12, 13, 15, 16

## Rules

Fed. R. Civ. P. 20(a)(2) .......................................................................... 4, 11

## Regulations

10 N.Y.C.R.R. § 415.13 ................................................................................ 1

iv

## <u>Other Authorities</u>

New York State Department of State: 20 ........................................................................ 16

## PRELIMINARY STATEMENT

Plaintiff Walter Chow, as the Administrator of the Estate of Leroy Chow, individually and on behalf of all others similarly situated (the "Class"), respectfully submits this memorandum of law in opposition to defendants Shorefront Operating LLC d/b/a Seagate Rehabilitation and Nursing Center ("Shorefront Operating"), Shaindy Berko, Rochel David, Leah Friedman, Deena Landa, Esther Farkovitz, Avi Philipson, Berish Rubinstein, David Rubinstein, Bruscha Singer, Joel Zupnick, Shorefront Realty LLC ("Shorefront Realty"), and SentosaCare, LLC's ("SentosaCare") (collectively, "Defendants") motion to dismiss Plaintiff's Class Action Complaint.

Defendants are the owners and operators of Seagate Rehabilitation and Nursing Center, a nursing home located at 3015 West 29th Street, Brooklyn, New York (the "Facility"). *See* Dkt. No. 12, Class Action Complaint ("Complaint" or "Compl.") ¶ 1. Defendants are entrusted to care for the elderly and infirm patients in their custody. *Id.* ¶ 2. Unfortunately, Defendants betray that trust and violate numerous laws designed to ensure proper care and to protect patient safety. *Id.* Throughout their operation of the Facility, Defendants have willfully failed to staff a sufficient number of nurses and aides, thereby depriving the Facility's residents of the level of care required under New York and federal law.[1] *Id.* Such understaffing has resulted in and continues to result in Defendants subjecting Leroy Chow and the Class to innumerous indignities and other harms, including, but not limited to: failing to provide the correct dosage of

---

[1] *See* 10 N.Y.C.R.R. § 415.13 (mandating that a nursing facility "shall provide sufficient nursing staff to provide nursing and related services to attain or maintain the highest practicable physical, mental, and psychosocial well-being of each resident"); 42 U.S.C. § 1396r(b)(4)(C)(i)(I) (mandating that a nursing facility "must provide 24-hour licensed nursing services which are sufficient to meet the nursing needs of its residents"); 42 U.S.C. § 1395i-3(b)(4)(A)(i) (mandating that a nursing facility must provide "nursing services and specialized rehabilitative services to attain or maintain the highest practicable physical, mental, and psychosocial wellbeing of each resident").

medications at the prescribed times, failing to regularly wash and change patients, serving patients inappropriate meals, forcing patients to clean the Facility, infrequently and inadequately turning and repositioning patients (resulting in injuries), failing to timely respond (if at all) to call lights, failing to provide adequate showers, failing to provide assistance with grooming and bathing, failing to provide adequate attention to toileting needs (resulting in Leroy Chow and the Class remaining in their own urine and fecal matter for extended periods of time), failing to provide assistance with eating, failing to provide fluids as needed, failing to provide assistance with dressing, and confining patients to beds without removal for long periods. *Id.* ¶¶ 2, 34. Indeed, Plaintiff has found no nurses or doctors present on the floor for hours at a time or indeed for an entire evening. *Id.* ¶ 34. The experiences of Leroy Chow are illustrative. In October of 2015, Leroy Chow was forced by the staff at the Facility to clean the Facility walls himself using caustic chemicals, resulting in his suffering severe skin peeling. *Id.* ¶ 35. In addition, while a resident at the Facility, Leroy Chow developed three huge precancerous polyps that were left unattended for almost a year. *Id.* He was also discovered by family members to be sitting in a public area in urine-soaked clothing, apparently needing to have been changed for hours. *Id.* And because of the lack of sufficient staff, he was constantly given the incorrect dosage of medication and poor food. *Id.*

As a result of Defendants' deprivation of his right to be free of such mistreatment, Leroy Chow suffered significant physical and emotional injury, an increased risk of harm, and economic injury. *Id.* ¶¶ 38-41. And other patients are currently languishing in Defendants' unsafe and inadequate nursing home. *Id.* ¶ 4. By this action, Plaintiff Walter Chow, on behalf of his brother's estate and a putative class of fellow nursing home residents, seeks damages and

injunctive relief pursuant to New York's Public Health Law ("PHL") § 2801-d to remedy

Defendants' unlawful practices and make the Facility safe for its residents. *Id.* ¶ 5.[2]

Defendants advance three bases for partial dismissal, all without merit. *First*, Defendants

argue that Plaintiff's claims against Shaindy Berko, Rochel David, Leah Friedman, Deena

Landa, Esther Farkovitz, Avi Philipson, Berish Rubinstein, David Rubinstein, Bruscha Singer,

Joel Zupnick, Shorefront Realty, and SentosaCare (the "Controlling Person Defendants") should

be dismissed because judgment has not yet been entered against Shorefront Operating, the

licensed operator of the Facility.  Defendants' argument that claims against the Controlling

Person Defendants are unripe is based on a tortured reading of PHL § 2808-a and its use of the

word "liable."  *See* Defendants' Memorandum in Support of Motion to Dismiss ("Def. Mtn.") at

2-3 & 6-10.  Neither the plain text of the statute, nor its legislative history, gives any support to

Defendants' reading of the statute or any indication that the New York State Legislature intended

for claims against "controlling persons" pursuant to PHL § 2808-a to proceed only after an

---

[2] Cases brought under PHL § 2801-d are especially appropriate for class treatment.  All class members' claims arise from Defendants' policy of understaffing and underfunding their Facility in violation of several rights and duties Defendants owed Plaintiff and the Class under state and federal law, and damages are based on a statutory formula.  Indeed, PHL§ 2801-d itself provides that "[a]ny damages recoverable pursuant to this section, including minimum damages as provided by subdivision two of this section, may be recovered in any action which a court may authorize to be brought as a class action . . . ."  PHL § 2801-d(4).  New York State courts have recently certified two contested classes naming plaintiffs represented by Plaintiffs' counsel here as the class representative.  *See Farruggio, et al. v. 918 James Receiver, LLC et al.*, Index No. 3831/2017 ("*Farruggio*") (Onondaga Cnty. Sup. Ct. Aug. 21, 2018), Dkt. No. 257, attached as Exhibit B to Blankinship Decl.; *Jenack et al. v. Goshen Operations, LLC d/b/a/ Sapphire Nursing and Rehab at Goshen et al.*, Ind. No. EF008129/2018 (Orange Cnty. Sup. Ct. Sept. 17, 2019), Dkt. No. 100, Decision and Order Granting Motion for Class Certification, attached as Exhibit D to Blankinship Decl.  Indeed, New York State's Appellate Division has held that it is an abuse of discretion to deny certification of claims brought under PHL § 2801-d.  *See Fleming v. Barnwell Nursing Home & Health Facilities, Inc.*, 309 A.D.2d 1132, 1134 (3d Dep't 2003) ("*Fleming*") (certifying a class of nursing home patients and holding that the trial court committed reversible error in denying certification).

adverse adjudication against the operator of the Facility.  Indeed, New York courts have denied motions to dismiss brought by controlling person defendants in similar putative class actions pursuant to PHL § 2801-d.  Accordingly, Plaintiff's claims against the Controlling Person Defendants are ripe for adjudication by this Court, and the Controlling Person Defendants are properly joined as defendants in this action pursuant to Fed. R. Civ. P. 20(a)(2).

*Second*, Defendants argue that Plaintiff's claims against defendants Shorefront Realty and SentosaCare should be dismissed because Plaintiff does not allege an "actual" ownership interest by them in the operations of the Facility.  *See* Def. Mtn. at 3 & 10-12.  The statute, however, imposes liability on indirect owners as well as direct "actual" owners.  *See* PHL § 2808-a(2).  Plaintiff alleges specific factual bases for finding that Shorefront Realty and SentosaCare have had -- at the least -- an indirect and/or beneficial ownership interest in the operation of the Facility.  In particular, Plaintiff alleges that both Shorefront Realty and SentosaCare, as the landlord and administrator of the Facility, make a profit off the operations of the Facility, have the ability to influence the operation and management of the Facility, and that the individual Defendants' ownership of SentosaCare, Shorefront Realty, and Shorefront Operating significantly overlap.  *See* Compl. ¶¶ 13-14.  Moreover, New York State courts have allowed claims to proceed against entities -- such as landlord and administrator entities -- that, like here, have overlapping ownership interests with the operator.

*Third*, Defendants argue that, because Leroy Chow is deceased, "he does not have standing to bring a claim for injunctive relief or seek injunctive relief."  Def. Mtn. at 3.  Not so.  So long as Plaintiff meets the statutory requirements for injunctive relief under PHL § 2801-d, this Court should enter an injunction.  Equitable relief is specifically authorized by the statute to address an issue that is current and ongoing -- dangerously low staffing that puts the elderly and

4

infirm nursing home patients at risk.  That Plaintiff is no longer a resident of the home is of no constitutional significance.

Defendants should not be allowed to evade providing adequate staffing and funding for the Facility.  Accordingly, Plaintiff respectfully requests that the Court deny Defendants' motion in all respects.

## ARGUMENT

### I.  Plaintiff Need Only Allege Sufficient Facts To Render His Claims Plausible.

The question a court must address when adjudicating a motion to dismiss is whether plaintiffs plead facts rendering their claims for relief plausible: "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' . . . The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557, 570 (2007).  Leaving aside mere legal conclusions, the court must assume "that all the allegations in the complaint are true (even if doubtful in fact)."  *Twombly*, 550 U.S. at 555 (*citing Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 508, n. 1 (2002)).  To that end, "Rule 12(b)(6) does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations." *Neitzke v. Williams*, 490 U.S. 319, 327 (1989) (cited with approval in *Twombly*).  Accordingly, a court should not interpose its judgment with respect to the persuasiveness of the facts alleged. *See Twombly*, 550 U.S. at 556 ("And, of course, a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." (*quoting Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974))).

Thus, the likelihood that Plaintiff's allegations of injury are true need not be "more likely than not."  *Anderson News, L.L.C. v. Am. Media, Inc.*, 680 F.3d 162, 184 (2d Cir. 2012)

(reversing grant of motion to dismiss).  As one district court cautioned, "[i]n evaluating a complaint, however, the Court must take care not to turn *Twombly*'s plausibility standard into a probability requirement.  The question is not whether the Court believes that plaintiffs' allegations are likely true, but whether, on their face, they state a plausible, rather than fanciful, claim."  *Peck v. Hillside Children's Ctr.*, 915 F. Supp. 2d 435, 439 (W.D.N.Y. 2013) (denying motion to dismiss and citing *Anderson News*, 680 F.3d at 184-85).

With respect to subject matter jurisdiction, "[a] claim is ripe if it is not contingent upon future events that may not occur as anticipated, or indeed may not occur at all."  *Nat'l Org. for Marriage, Inc. v. Walsh*, 714 F.3d 682, 687 (2d Cir. 2013) (*citing Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 580-81 (1985)).  "[R]ipeness is peculiarly a question of timing."  *Blanchette v. Connecticut Gen. Ins. Corps.*, 419 U.S. 102, 140 (1974).  As long as "the harm is already present and no longer imminent, . . . the challenge is ripe for review."  *Healthcare Distribution All. v. Zucker*, 353 F. Supp. 3d 235, 257 (S.D.N.Y. 2018).

## II.   The Controlling Person Defendants Are Properly Joined In This Action.

Defendants argue that Plaintiff's claims against the Controlling Person Defendants should be dismissed as unripe because a judgment finding the Facility liable under PHL § 2801-d has not been issued.  *See* Def. Mtn. at 6 ("Under the plain language of the statute, to properly name someone as a 'controlling person' defendant, the applicable facility must first *be found* 'liable' under Article 28 of the PHL to someone." (emphasis added)).  Defendants' argument is foreclosed by the plain text of PHL § 2808-a and its legislative history.  No court has ever construed PHL § 2808-a in the manner urged by Defendants.

PHL § 2808-a provides, in relevant part, that "[e]very person who is a controlling person of any residential health care facility *liable* under any provision of this article to any person or class of persons for damages . . . *shall also be liable*, jointly and severally, with and to the same

extent as such residential health care facility, to such person or class of persons for damages."

PHL § 2808-a(1) (emphasis added); *see also Ocean Side Institutional Indus., Inc. v. United*

*Presbyterian Residence*, 678 N.Y.S.2d 653, 654 (N.Y. App. Div. 1998) ("Pursuant to [PHL

§ 2808-a(1)], where a residential health care facility, such as a nursing home, is liable 'under any

provision of this article to any person or class of persons for damages,' the 'controlling person'

of the facility is also jointly and severally liable." (internal citations omitted)).

The plain language of the statute does not require a prior determination of liability on the

part of the operator of the facility in order to assert a claim against the operator's "controlling

persons."  The use of "liable" in the statement that "any residential health care facility liable

under any provision of this article" clearly includes prospective, rather than simply retrospective,

liability.  *See, e.g.*, *Black's Law Dictionary* (11th ed. 2019) (defining "liable" to mean

"[r]esponsible or *answerable* in law; legally obligated" (emphasis added)).  Indeed, in *Breslaw v.*

*Rightmire*, 196 N.Y.S. 539 (N.Y. Sup. Ct. Aug. 7, 1922), a case cited by Defendants, the court

provides a definition of "liable" (as opposed to the definition of "liability" quoted by Defendants

-- *see* Def. Mtn. at 6) that underscores the *prospective* nature of the word, which does not require

a finding of judgment, but merely that one is "'*[e]xposed*, as to damage, penalty, expense,

burden, or anything unpleasant or dangerous; justly or legally *responsible*; *answerable*.'"  196

N.Y.S. at 542 (*quoting* The Standard Dictionary) (emphasis added).

Accordingly, PHL § 2808-a plainly means that a "controlling person" of a nursing home

operator that is "responsible" (or "exposed" or "answerable") pursuant to PHL § 2801-d is

likewise "responsible" (or "exposed" or "answerable"), jointly and severally, with and to the

same extent as the operator of the home.  *See* PHL § 2808-a(1).  And, contrary to Defendants'

claim, "[t]o allow Plaintiff to prosecute this action against the [Controlling Person] Defendants,"

7

would not in any way "render the term 'liable' as superfluous and of no significance or effect." Def. Mtn. at 9.  Thus, as one New York court interpreting the statute noted, PHL § 2808-a "does not . . . create a separate or new cause of action," but rather "makes the controlling person personally liable for damages sustained by a person *asserting* a claim under one of the substantive provisions of Public Health Law Article 28."  *Sunrest Properties, LLC v. Sunrest Nursing Home*, No. 15240-04, 806 N.Y.S.2d 449, 2005 WL 1993485, at *5 (N.Y. Sup. Ct. Aug. 15, 2005) (emphasis added).

Defendants' argument for dismissal relies entirely on the novel claim that the definition of "liable" should be restricted solely to its meaning that a person has been "bound or obliged in law or equity."  *See* Def. Mtn. at 6-7, 10.[3]  However, the use of Defendant's restrictive definition of "liable" would graft a requirement into the statute, nowhere to be found in its plain text, that a person has been "*found* liable" and "*so adjudicated*."  *Id.* at 6 (emphasis added).  As Defendants note, the New York legislature "could have worded PHL § 2808-a differently. . . . It did not."  *Id.* at 10.

Indeed, the legislative history accompanying the passage of the statute indicates that claimants were expected to name "controlling person" defendants in the same action -- powerful evidence against Defendants' narrow, self-serving definition of the term "liable."

---

[3] The cases cited by Defendants in support of the application of this narrow definition of "liable" are inapposite.  Both *In re Daley*, 222 B.R. 44 (Bankr. S.D.N.Y. 1998) and *In re Fiesole Trading Corp.*, 315 B.R. 198 (Bankr. D. Mass. 2004) parsed the meaning of the term "liable *with*" in a bankruptcy code provision governing the subrogation of rights of a creditor.  And *Walker v. Pacific Indem. Co.*, 183 Cal. App. 2d 513, 516 (Cal. Ct. App. 1960), *Britz Fertilizers, Inc. v. Nationwide Agribusiness Ins. Co.*, No. 10-2051, 2013 WL 5519605, *14 (E.D. Cal. Oct. 3, 2013), and *Fanucci v. Allstate Ins. Co.*, 638 F. Supp. 2d 1125, 1135 (N.D. Cal. 2009), involved determinations of whether or not damages or injuries had actually been incurred such that an insurer or insurance broker's liability had arisen.  These cases are inapposite with respect to whether Defendants, who are jointly and severally liable by reason of their relationship to a primary defendant, can be named in the same action with the primary defendant.

> According to the legislative history of Public Health Law § 2808-a, that section was
> enacted in order to provide that "controlling persons *could be named as defendants
> in actions by patients* and would be liable for the fines and penalties as set forth in
> other [Moreland] Commission bills" (Senate Introducer Letter in Support, July 15,
> 1975, Bill Jacket, L. 1975, ch. 651).  Thus, as the legislative history makes clear,
> the liability of a controlling person was intended to be the same as that of the
> residential health care facility under Public Health Law article 28.

*Niagara Mohawk Power Corp. v. Salerno*, 797 N.Y.S.2d 663, 665, 2005 WL 1378361 (N.Y.

App. Div. 2005) (emphasis added).

Accordingly, claims pursuant to PHL § 2801-d brought in New York State courts are

maintained against both the operator and the controlling persons thereof as co-defendants in a

single action, rather than in serial actions.  *See, e.g.*, *Farruggio, et al. v. 918 James Receiver,

LLC et al.* (Onondaga Cnty. Sup. Ct. July 10, 2019), Dkt. No. 556, Proposed Order and

Transcript of Hearing and Bench Ruling Denying Motion to Dismiss, attached as Exhibit A to

Blankinship Decl. ("*Farruggio* Order" or "*Farruggio* Tr.") (denying a motion to dismiss brought

by controlling persons in a PHL § 2801-d class action)[4]; *Passucci v. Absolut Center for Nursing

and Rehabilitation at Allegany, LLC*, No. 2010/6955, 2014 N.Y. Slip Op. 33459(U), 2014 WL

7912858, *4, 27 (N.Y. Sup. Ct. Jan. 10, 2014), *aff'd*, 999 N.Y.S.2d 791 (N.Y. App. Div. 2015),

*lv. app. denied*, 6 N.Y.S.3d 527 (N.Y. App. Div. 2015) (certifying a PHL § 2801-d class action

against both the corporate entity that operated the home and the individual who owned that entity

and was a "controlling person"); *Peters v. Nesconset Center for Nursing and Rehabilitation*,

No. 700845/12, 15 N.Y.S.3d 714, 2015 WL 1768991, at *3 (N.Y. Sup. Ct. Apr. 15, 2015)

---

[4] In his bench ruling, Justice Paris directed the plaintiffs to write a proposed order, which the
plaintiffs submitted on July 26, 2019, *see Farruggio*, Dkt. No. 556, but which has not yet been
so-ordered or entered by the court.  The transcript of his bench order and the July 10, 2019
hearing on the defendants' motions is attached as Exhibit A to the Blankinship Declaration.  The
individuals, landlord entity, and administrator entity were added as codefendants when the court
granted the plaintiffs leave to file a third amended complaint.  *See Farruggio*, Dkt. No. 343,
Summons and Complaint (January 11, 2019).

(denying the defendants' motion for summary judgment dismissing plaintiff's claims against the controlling persons and noting that "claims under Article 28 of Public Health Law do not require a showing that the individual defendants participated in alleged wrongful conduct; rather, such 'controlling person[s]' need only possess the 'ability to direct or cause the direction of the management or policies of the facility,' and defendants have not proffered evidence showing that such statute is inapplicable" (internal citations and ellipses omitted)).

Indeed, New York State courts have recently allowed claims in similar class actions pursuant to PHL § 2801-d to proceed against "controlling persons" in the same action as against the operator of the facility.  For example, in *Farruggio*, the court granted the plaintiffs leave to file an amended complaint specifically to add defendants liable pursuant to PHL § 2808-a.  *See Farruggio*, Dkt. No. 261, Affirmation of Jeremiah Frei-Pearson in Support of Plaintiffs' Motion for Leave to File Third Amended Class Action Complaint at ¶ 1 (Feb. 26, 2019) (seeking leave to file amended complaint "adding as additional defendants entities and individuals who discovery has shown participated in and are jointly and severally liable for the misconduct alleged in this action") & Dkt. No. 341, Order (Jan. 9, 2019) (granting leave to file third amended complaint).  The *Farruggio* court then denied the *Farruggio* controlling persons' motions to dismiss.  *See Farruggio Order*.  Similarly, in *Jenack et al. v. Goshen Operations, LLC d/b/a/ Sapphire Nursing and Rehab at Goshen et al.*, Ind. No. EF008129/2018 (Orange Cnty. Sup. Ct.) ("*Jenack*"), another nursing home reform action pursuant to PHL § 2801-d, the court denied the defendants' motion to sever the action against the individual, non-facility defendants against whom the plaintiffs brought claims pursuant to PHL § 2808-a.  *See Jenack*, Dkt. No. 34, Decision and Order (Feb. 11, 2019), attached as Exhibit C to Blankinship Decl.

Defendants' argument is also foreclosed by Fed. R. Civ. P. 20(a)(2), which provides that defendants may be joined in one action if "any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences" and "any question of law or fact common to all defendants will arise in the action."  Here, PHL § 2808-a provides Plaintiff a right to relief against Shorefront Operating (the licensed operator of the Facility) and the Controlling Person Defendants, jointly and severally.  *See* PHL § 2808-a.  And the claims against Defendants arise out of same series of transactions and occurrences (the staffing and operation of the facility subsequent to the transfer of operational control of the facility to Shorefront Operating), and numerous questions of law or fact will arise in the litigation that are common to all Defendants (primarily whether the operator of the Facility failed to meet its obligations pursuant to New York and federal law during the class period).

Accordingly, the claims against the Controlling Person Defendants are ripe for adjudication by the Court pursuant to the plain language of the statute and the rules of this Court, and the Court should deny Defendants' motion to dismiss.

## III.   Plaintiff Plausibly Alleges That Shorefront Realty And SentosaCare Are Controlling Persons Pursuant To PHL § 2808-a.

Defendants argue that the Complaint fails to present sufficient facts to show that SentosaCare and Shorefront Realty have enough of an "actual" ownership interest to be controlling persons.  *See* Def. Mtn. at 11.[5]  Defendants' argument, however, ignores the plain text of the statute.  Defendants' references to "actual" ownership describe solely the type of

---

[5] *See also* Def. Mtn. at 3 ("Plaintiff does not allege specific factual allegations showing that either of these Defendants has an *actual* ownership interest in the Facility . . . , requiring dismissal." (emphasis added, internal citations omitted)) & 11 ("These allegations are devoid of *actual* ownership in the Facility." (emphasis added)).

direct, of record ownership interests held by defendants Shaindy Berko, Rochel David, Leah Friedman, Deena Landa, Esther Farkovitz, Avi Philipson, Berish Rubinstein, David Rubinstein, Bruscha Singer, and Joel Zupnick (the "Individual Defendants"), who are all members of Shorefront Operating, the limited liability corporation that operates the Facility.  Section 2808-a of New York's Public Health law, however, also imposes joint and several liability for claims pursuant to Section 2801-d on those persons who, by reason of a "direct *or indirect* ownership interest (*whether of record or beneficial*) has the ability, acting either alone *or in concert with others with ownership interests*, to direct or cause the direction of the management or policies of [the] facility."  PHL § 2808-a(2) (emphasis added); *see also Gorton v. Fellner*, 88 A.D.2d 742, 743 (N.Y. App. Div. 1982) (holding that the "indicia of a controlling person" are "an ownership interest or the power to direct the management or policies of the nursing home").

Although "ownership interest" is not defined in the statute, "[l]egislative history reveals that the requirement that an individual have an ownership interest in order to be deemed a 'controlling person' was imposed 'to insure [sic] that liability and responsibility follow the capability to make a profit.'"  *Ocean Side*, 254 A.D.2d at 337.  Here, Plaintiff alleges that both Shorefront Realty and SentosaCare, as the landlord and administrator, respectively, of the Facility, have the capability to make a profit off the operations of the Facility and the ability to influence the operation and management of the Facility.  *See* Compl. ¶¶ 13-14.  Moreover, Plaintiff alleges substantial overlap with the individual ownership of SentosaCare, Shorefront Realty, and Shorefront Operating, further supporting Plaintiff's allegations that SentosaCare and Shorefront Realty have "at least an indirect and/or beneficial ownership interest in the operation of the Facility."  *Id.*

In addition, Shorefront Realty, as the owner of the Facility itself, is liable pursuant to the plain text of Section 2801-d, which does not distinguish between the licensed operator of a residential nursing home and the owner of the nursing home itself.  *See* PHL § 2801-d(1) ("Any residential health care facility that deprives any patient of said facility of any right or benefit . . . shall be liable to said patient for injuries suffered as a result of said deprivation . . . ."); PHL § 2801(3) (defining "residential health care facility" to mean "a nursing home or a facility providing health-related service").

Finally, Defendants' argument calls for a fact-intensive determination improper for a resolution on a motion to dismiss.

A.   <u>**Shorefront Realty Is Liable Under The Public Health Law.**</u>

Plaintiff plausibly alleges that Shorefront Realty is both an owner of the Facility itself and a controlling person under PHL § 2808-a because of its indirect ownership interest in the operation of the Facility and its ability to control Facility operations.

*First*, Defendant is incorrect that Plaintiff has not alleged that Shorefront Realty is an actual owner of the Facility directly liable under PHL § 2801-d.  In December 2014, as part of the same $50,000,000.00 deal, Shorefront Realty purchased its interest in the Facility itself for $32,000,000.00, and, as part of the same deal, Shorefront Operating purchased the Facility's operating interest for $18,000,000.00.  *See* Compl. ¶ 26.  Under the plain language of PHL § 2801-d, Shorefront Reality is liable as the "residential nursing home" that has deprived Leroy Chow and the other members of the Class of their rights pursuant to Federal and New York law.

*Second*, Shorefront Realty is liable pursuant to PHL § 2808-a.  As the landlord, Shorefront Realty has been able to extract tremendous profit from its ownership of the Facility. Furthermore, through its overlapping individual ownership interests, Shorefront Realty has an indirect ownership interest and may, either alone or in concert with other owners, direct

13

management or policies at the Facility. *See* Compl. ¶ 13. Indeed, the lease between Shorefront Realty and Shorefront Operating, because of this overlap in ownership, cannot be characterized as market-based or arms-length, but is instead a mechanism for the extraction of profits and the protection of those profits from claims by aggrieved residents of the Facility.

Moreover, it is plausible that Shorefront Realty has the capability to control the operations of the Facility. As the leaseholder, Shorefront Realty controls the decision to lease the Facility to Shorefront Operating and to select Sentosa Care to administer the Facility, when it could easily have leased the Facility to more reputable nursing home operators. Shorefront Realty could also insist as a condition of the lease that Shorefront Operating and SentosaCare provide legally sufficient staffing to care for its residents and that it comply with all federal and state requirements designed to ensure proper care of residents. It chooses not to do so because such a requirement would limit profits.

In cases practically indistinguishable, New York courts have allowed PHL § 2801-d claims to proceed against landlords that, like Shorefront Realty, have overlapping ownership interests with the operators of nursing homes. In the *Farruggio* Order, Judge Paris denied motions to dismiss brought by the individual members of the LLC licensed to operate the facility, as well as by the landlord and administrator entities, which, like here, had overlapping ownership and self-dealt transactions with the operator of the facility and the individual defendants. *See Farruggio* Order. As in the instant case, the landlord, Liberty Senior Holdings, LLC argued, "Attached to the complaint as Exhibit F was the New York State Department of Health public health and health planning executive summary. Liberty Senior Holdings was neither the owner nor the operator of the nursing home at issue. That clearly refutes the allegations set forth in plaintiffs' complaint as a basis for liability under . . . Public Health Law

14

2801(d). . . . The executive summary laid out the fact that Liberty Senior Holdings is in fact a real estate holding company.  They purchased the property on which the nursing home operated and then they sent back [sic] to the nursing home." *Farruggio* Tr. 6:8-24.   Judge Paris rejected this argument, denying Liberty Senior Holdings, LLC's motion to dismiss and finding  that the plaintiffs plausibly pled that the record owner of the real estate interest in a nursing home may be liable under PHL §§ 2801-d and 2808-a.  *See id.* 47: 9-19.

Just as in *Farruggio*, Shorefront  ability to make a profit from the Facility plausibly establishes Shorefront Realty's Ownership Interest.  In addition to having "the ability, acting either alone or in concert with others with ownership interests, to direct or cause the direction of the management or policies of [the] facility," PHL § 2808-a(2), Plaintiff alleges that Shorefront Realty has the capability to make a profit off the operations of the Facility.  Compl.  ¶¶ 13-14. Specifically, Shorefront Realty was a party to the $50 million deal to purchase the Facility -- having purchased the real estate for $30 million -- and receives rent payments on the property. *See* Compl. ¶ 13 & New York Department of Health and Health Planning Council Executive Summary, Project # 131092 E: Shorefront Operating, LLC d/b/a/ Waterfront Rehabilitation and Healthcare Center, attached as Exhibit E to Blankinship Decl ("PHHPC Memo").

It is also plausible that Shorefront Realty has the ability to direct the management or policies at the Facility, which is established through its unique relationship with Shorefront Operating and SentosaCare.  The individual ownership of Shorefront Realty significantly overlaps with that of Shorefront Operating; indeed, they are essentially the same corporation. *See* Compl. ¶ 14.  In addition to sharing the same name, as the exhibits to the Complaint show, five of the seven people listed as owners of Shorefront Realty are also listed as owners of Shorefront Operating.  *See* PHHPC Memo.  They even share the same address for service with

15

the New York State Department of State: 20 Franklin Place, Woodmere, New York 11598.

Compl. ¶ 14.[6]

This overlapping ownership structure enables the Individual Defendants to select which corporations will hold the profits, while separately defining the scope of each corporation's ownership interests, and thus its liability.  The nature of this scheme constitutes the only plausible reason for Shorefront Realty's decision to continue to rent the Facility to Shorefront Operating, despite the Facility consistently earning abysmal ratings by the Centers for Medicare and Medicaid Services ("CMS")  -- one and two star ratings for overall staffing and Registered Nurse ("RN") staffing since Shorefront Operating began leasing the space.[7]  It is thus reasonable to infer that Shorefront Realty has the ability to direct the operations of the Facility, owing to its direct and indirect ownership interests.

It is therefore plausible that Shorefront Realty, which leases the physical nursing home to Shorefront Operating and shares five of Shorefront Operating's individual owners, maintains an ownership interest in the Facility and is thus liable under Public Health Law §§ 2801-d and 2808-a.

### B.   SentosaCare Is Liable Under The Public Health Law.

Another entity that plays a significant role in the operations of the Facility is SentoseCare, the state's largest nursing home network with at least 25 facilities and nearly 5,400

---

[6] Notably, Defendants do not contest that SentosaCare and Seagate Realty possessed the ability, "acting either alone or in concert with others with ownership interests, to direct or cause the direction of the management or policies of said facility," which may also satisfy the definition of controlling persons.  PHL § 2808-a(2).

[7] *See* CMS ratings for Seagate Rehabilitation and Nursing Center, dating from the first quarter of 2013 through May 2019, attached as Exhibit F to Blankinship Decl.

beds, known for its "record of repeat fines, violations and complaints for deficient care."[8] Defendants challenge SentosaCare's ownership interest in the Facility, arguing that it cannot be a controlling person because it does not possess an "actual ownership interest" in the Facility. Defendants are incorrect.  Plaintiff has sufficiently alleged that SentosaCare possesses the requisite ownership interest in the Facility to satisfy the controlling person status, because, like Shorefront Realty, SentosaCare makes a profit from the Facility, which qualifies as a beneficial ownership interest.  Moreover, SentosaCare possesses a controlling interest through its role as administrative services provider that accords with the plain language of the statute, and SentosaCare shares a significant overlap in ownership with Shorefront Operating and Shorefront Realty, as well as some Individual Defendants.

As with Shorefront Realty, the decision on the motion to dismiss in *Farruggio* militates toward a finding of controlling person liability.  In *Farruggio*, Justice Paris also resolved whether an administrator entity can be liable as a controlling person under the Public Health Law.  At the hearing on the motion to dismiss, counsel for the administrative services provider, Excelerate Healthcare Services, LLC, argued:

> Excelerate was a vendor to River Meadows.  There is a contract that we included with our papers that shows exactly that.  They are a contractor.  As a contractor, they don't even meet the criteria for the statute Public Health Law 2808. . . . They're not a health care facility.  They're a vendor.  There's nothing other than some rumor and innuendo in the response papers to indicate that they are anything other than a vendor.  As a vendor, they have no liability under Public Health Law because they cannot be established as a controlling person.

---

[8] *See* Compl., Exhibit 7, Allegra Abramo and Jennifer Lehman, *How N.Y.'s Biggest For-Profit Nursing Home Group Flourishes Despite a Record of Patient Harm*, ProPublica, Oct. 27, 2015 (*available at* https://www.propublica.org/article/new-york-for-profit-nursing-home-group-flourishes-despite-patient-harm), attached as Exhibit G to Blankinship Decl.

*Farruggio* Tr. 22:2-12.  Justice Paris rejected the contractor's argument and denied the motion to dismiss.  *Id.* 47:9-19.  Here, Defendants similarly argue that an entity that contracted to perform administrative services (which plausibly includes staffing) for the Facility cannot be liable as a controlling person.  *See* Def. Mtn. at 11 (*citing* Compl. ¶¶ 13-14).  However, because of the plain language of PHL § 2808-a, this Court should find SentosaCare liable, as the court did in *Farruggio*.

It is beyond plausible that SentosaCare has the ability to make a profit from the Facility, which constitutes a beneficial ownership interest.  As previously stated, the "[l]egislative history reveals that the requirement that an individual have an ownership interest in order to be deemed a 'controlling person' was imposed 'to insure [sic] that liability and responsibility follow the capability to make a profit.'"  *Ocean Side*, 254 A.D.2d at 337 (*quoting* Mem. of the State Exec. Dep't, 1976 McKinney's Session Laws of N.Y., at 2342).  Shorefront Operating and Shorefront Realty contracted with SentosaCare to serve as its administrative services provider.  Compl. ¶ 14. In exchange for providing administrative services to the Facility, SentosaCare makes a profit from the income of the Facility.  This ability to make a profit constitutes a beneficial ownership interest, and further supports a finding of controlling person liability.

It is also plausible that SentosaCare has the ability to, and does, control the operations of the Facility.  Indeed, it administrates the Facility, likely including decisions regarding staffing, food, and other matters directly impacting patient care.  Were this Court to follow Defendants' logic, only one corporation, Shorefront Operating, could be liable under PHL § 2808-a.  This does not reflect the law or the reality of nursing home ownership.  PHL § 2808-a acknowledges that a "controlling person" need not be the direct owner of record, and official records of ownership interests in the operation of nursing homes are not determinative of liability under

PHL § 2808-a.  The focus of the inquiry is on whether there was an ownership interest or the

power to direct the management or policies of the nursing home.  *See Gorton v. Fellner*, 88

A.D.2d 742, 743 (N.Y. App. Div. 1982) (holding that "the fact that the State Department of

Health records showed [the defendant]'s name as a partner [is not] conclusive that he was a

'controlling person' within the ambit of section 2808-a of the Public Health Law, rendering him

liable to plaintiff" and noting that the "indicia of a controlling person" are "an ownership interest

or the power to direct the management or policies of the nursing home").  Thus, the Public

Health Law explicitly exposes any entity to liability who has the ability to make a profit and/or

control some aspect of the Facility, even if that control is predicated on the authorization or the

involvement of another individual or entity.  *See* PHL § 2808-a(1).  Accordingly, to the extent

that SentosaCare maintained any operational control over the administrative services they were

contracted to provide the Facility, it is liable as a controlling person under PHL § 2808-a.

Adding to the plausibility that SentosaCare possessed an ownership interest in the

Facility is the level of overlap between the ownership interests of SentosaCare and Shorefront

Operating and Shorefront Realty.  The principals of SentosaCare are Bent Philipson and

Benjamin Landa.  Compl. ¶ 14 n.5; New York Department of Health and Health Planning

Council Executive Summary, Project # 152177-E, TCPRNC, LLC d/b/a The Plaza Rehab and

Nursing Center, attached as Exhibit E to Blankinship Decl.  Bent Philipson is related to Avi

Philipson, an owner of Shorefront Operating, and Benjamin Landa is related to Deena Landa and

Esther Farkovits (a/k/a Esther Landa), also owners of Shorefront Operating.  *Id.*[9]  "SentosaCare

---

[9] On information and belief, Bent Philipson is related to Avi Philipson, an owner of Shorefront
Operating, and Benjamin Landa is related to Deena Landa and Esther Farkovits (a/k/a Esther
Landa), also owners of Shorefront Operating.  *See* Compl. ¶ 14, n.10.  Moreover, Benjamin

even provides an address for service by the New York State Department of State of 20 Franklin Place, Woodmere, New York 11598, the same address as Shorefront Operating and Shorefront Realty." *Id.* at 14.[10]

Even though the Individual Defendants may use SentosaCare as a tool to funnel money away from Shorefront Operations, the only entity whose ownership interest Defendants do not challenge, SentosaCare's ability to make a profit and its operational control render it a controlling person under the Public Health Law, and it is liable for the injuries suffered by Mr. Chow and the Class as a result of Defendants' severe understaffing of the Facility.

    **C.**    **Defendants' Argument Is**
                    <u>**Inappropriate For Resolution On A Motion to Dismiss.**</u>

Finally, Defendants' argument is inappropriate for resolution on a motion to dismiss.  In their Motion, Defendants acknowledge the factual allegations in the Complaint, but state that "[t]he allegations of property ownership, receipt of rent payments, provision of administrative services, overlapping of owners, and listing of the same address for service are not factual allegations that establish a 'direct or indirect ownership interest' in the Facility as required by PHL § 2808-a(2)."  Def. Mtn. at 11.  This argument improperly relies on the sufficiency of the evidence that Plaintiffs will use to prove their case.  "[Courts] do not test the sufficiency of evidence on motions to dismiss.  Likewise, [courts] do not assess the admissibility or weight that should be afforded to evidence."  *United States v. All Right, Title & Interest in Five Parcels of Real Prop. & Appurtances Thereto Known as 64 Lovers Lane*, 830 F. Supp. 750, 756 (S.D.N.Y.

---

Landa is an owner of Shorefront Realty, and, on information and belief, Bent Philipson is a member of Philipson Family, LLC, which is also an owner of Shorefront Realty.  *Id.* ¶ 14.

[10] Notably, Defendants do not contest that SentosaCare and Shorefront Realty possessed the ability, "acting either alone or in concert with others with ownership interests, to direct or cause the direction of the management or policies of said facility."  PHL § 2808-a(2).

1993); *see also Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 186 (2d Cir. 2015) ("In general, the reasonableness of a plaintiff's reliance is a 'nettlesome' and 'fact-intensive' question, which we, like our Circuit's many district courts, will not lightly dispose of at the motion-to-dismiss stage." (internal citations omitted)).

Accordingly, Plaintiff adequately alleges a factual basis for concluding that Shorefront Realty and SentosaCare have the requisite ownership interests, as contemplated by the statute, to confer "controlling person" status on them pursuant to PHL § 2808-a, and the Court should deny Defendants' motion to dismiss.

## IV.   <u>Plaintiff Can Seek Injunctive Relief.</u>

Defendants argue that, because Leroy Chow is deceased, "he does not have standing to bring a claim for injunctive relief or seek injunctive relief" on behalf of the residents currently residing at the Facility.  Def. Mtn. at 3.  Not so.  "Where an injunctive is authorized by statute, it is enough if the statutory conditions are satisfied."  *Barkley v. United Homes, LLC*, 848 F. Supp. 2d 248, 274 (E.D.N.Y. 2012), *aff'd sub nom. Barkley v. Olympia Mortg. Co.*, 557 F. App'x 22 (2d Cir. 2014), *as amended* (Jan. 30, 2014).  Defendants do not dispute that Plaintiff plausibly alleges all of the elements of a PHL § 2801-c claim for injunctive relief.  Residents at the Facility, like Mr. Chow, are subject to current and ongoing abuse because of Defendants' choice to understaff and underfund the Facility, and this Court should enjoin their callous actions.

Accordingly, Plaintiff respectfully requests that the Court uphold his claims for injunctive relief, and, in the event that his claims are dismissed, allow injunctive relief to be available to the remaining class members.

## <u>CONCLUSION</u>

For the foregoing reasons, Defendants' motion to dismiss is without merit, and Plaintiff respectfully requests that the Court deny Defendants' motion in its entirety.

Dated:  White Plains, New York
        October 21, 2019

                                        Respectfully Submitted,

**FINKELSTEIN, BLANKINSHIP,
FREI-PEARSON & GARBER, LLP**

By: */s/D. Greg Blankinship*
D. Greg Blankinship
Jeremiah Frei-Pearson
John D. Sardesai-Grant
W. Scott Terrell III
445 Hamilton Avenue, Suite 605
White Plains, New York 10601
Tel: (914) 298-3281
Fax: (914) 824-1561
gblankinship@fbfglaw.com
jfrei-pearson@fbfglaw.com
jsardesaigrant@fbfglaw.com
sterrell@fbfglaw.com

*Attorneys for Plaintiff and the Putative Class*