

February 12, 2020

**David M. Ross**
202.626.7687 (direct)
David.Ross@wilsonelser.com

**VIA ECF**
Magistrate Judge Sanket J. Bulsara
U.S. District Court
Eastern District of New York

    Re:    *Chow v. SentosaCare, LLC, et al.*; Case No. 19-cv-03541-FB-SJB

Dear Judge Bulsara:

This law firm represents Defendants in the above-captioned matter. We reluctantly submit this letter-motion pursuant to Local Rule 37.3 and Your Honor's Individual Practice Rule IV(B) to address deficiencies in Plaintiff's Responses to Defendant Shorefront Operating LLC d/b/a Seagate Rehabilitation and Nursing Center's (the "Facility") First Requests for Production of Documents and Interrogatories. The Facility has undertaken good-faith efforts to resolve the issues addressed in this letter, however, Plaintiff's intractable position has made resolution impossible.

**I.**    **Relevant Factual and Procedural History**

By way of background, Plaintiff alleges that Leroy Chow resided at the Facility from February 2015 through August 2016. Leroy Chow died in December 2017. He is represented here by his brother, Walter Chow, as administrator of his estate.

Plaintiff alleges that Leroy Chow received deficient care at the Facility. Plaintiff brings one cause of action, under New York Public Health Law § 2801-d ("PHL § 2801-d"). Ex. 1. PHL § 2801-d establishes:

1.    Any residential health care facility that deprives any patient of said facility of any right or benefit . . . shall be liable to said patient for injuries suffered as a result of said deprivation . . . . For the purposes of this section, "injury" shall include, but not be limited to, physical harm to a patient; emotional harm to a patient; death of a patient; and financial loss to a patient.

2.    Upon a finding that a patient has been deprived of a right or benefit and that said patient has been injured as a result of said deprivation . . . compensatory damages shall be assessed in an amount sufficient to compensate such patient . . . for each day that such injury exists.

Plaintiff alleges that while Leroy Chow was a resident of the Facility, the Facility failed to meet its obligations under PHL § 2801-d involving various aspects of care for Mr. Chow, thereby causing or contributing to injuries of Mr. Chow. *Id.* Plaintiff alleges that these injuries include, but are not limited to: suffering disfigurement, disability, mental anguish, and pain; suffering loss of enjoyment of life; being subjected to increased risk of harm; and being forced to undergo unnecessary medical treatment. *Id.* In a

1500 K Street, NW, Suite 330 • Washington, DC 20005 • p 202.626.7660 • f 202.628.3606

Alabama • Albany • Atlanta • Austin • Baltimore • Beaumont • Boston • Chicago • Dallas • Denver • Edwardsville • Garden City • Hartford • Houston
Indiana • Kentucky • Las Vegas • London • Los Angeles • Miami • Michigan • Milwaukee • Missouri • Nashville • New Jersey • New Orleans
New York • Orlando • Philadelphia • Phoenix • San Diego • San Francisco • Sarasota • Stamford • Virginia • Washington, DC • Wellington • White Plains

wilsonelser.com

10517186v.1



P a g e | 2

local television news report/press release featuring Plaintiff and his counsel, which Plaintiff cited to this Court, the allegation is also raised that Leroy Chow's deficient care somehow lead to his death one year and four months after his release from the Facility.

Plaintiff seeks damages in an amount sufficient to compensate him for each day that these and other alleged injuries existed. *Id.* To evaluate Plaintiff's assertions, the Facility served interrogatories seeking identification of Leroy Chow's medical providers from prior to and during his Facility residency. Ex. 2. The Facility also sought identification of medical providers that treated Leroy Chow subsequent to his Facility discharge to assess Plaintiff's causation assertions and the extent and tenure of Mr. Chow's purported injuries. *Id.* Specifically, the Facility's Interrogatory No. 16 requested identification of:

- . . .[E]very specific date, location, and provider, and all facts and documents evidencing . . . medical care . . . from January 2014 until December 27, 2017, including the specific treatment, procedure and medication, the reason for the treatment, procedure and medication, and, as applicable, the length of time that Plaintiff was confined to (a) a bed, (b) a house, or (c) a hospital. *Id.*

Rather than provide substantive, responsive information to this Interrogatory, Plaintiff objected:

- . . . [T]hat this Interrogatory is at least 5 discrete interrogatories. Plaintiff objects that Facility Defendant has propounded more than 25 interrogatories when discrete subparts are included. Plaintiff objects that these are premature contention interrogatories, and that they seek information that will be disclosed in connection with expert reports in due course. Plaintiff also objects that these interrogatories seek information protected by Plaintiff's right to privacy, which prevents disclosure until the Court enters a protective order to protect Plaintiff's privacy and confidentiality interests. Ex. 3.

The Facility's First Requests for Production of Documents, Nos. 6 and 7, similarly asked that Plaintiff produce:

- Documents (a) identifying the names and addresses of all physicians or other medical or health care providers, hospital, clinic, or other health care facility who have consulted, examined, or treated Plaintiff from January 1, 2014 through December 27, 2017, including for each of the conditions allegedly caused or exacerbated by the incidents alleged . . . and the dates and description of the consultation, treatment, or examination; and (b) comprising copies of all medical reports or records . . . received from the providers, hospital, clinic or facility identified in response to (a). Ex. 4.

- . . . [W]ritten authorizations to allow Facility Defendant to obtain the complete office medical records relating to Plaintiff from each provider, hospital, clinic or facility identified in the preceding Request. *Id.*

Rather than provide the requested documents and authorizations, Plaintiff objected to Request Nos. 6 and 7:

Case 1:19-cv-03541-FB-JRC   Document 40   Filed 02/12/20   Page 3 of 6 PageID #: 1001



P a g e | 3

- Plaintiff objects to this Request insofar as "all physicians or other medical or health care providers, hospital, clinic, or other health care facility who have consulted, examined, or treated Plaintiff" and "copies of all medical reports or records relating to [sic] Plaintiff received from the providers, hospital, clinic or facility" is overbroad, unduly burdensome, and disproportionate to the needs of the case. Plaintiff was treated by numerous healthcare providers during the four-year period indicated by Facility Defendant, and, unlike Facility Defendant, does not maintain complete medical records of the treatment he received. In contrast, Facility Defendant likely maintains detailed health records, including the names of treating health care providers and "the dates and description of the consultation, treatment, or examination." Plaintiff also objects that this Request seeks information protected by Plaintiff's right to privacy, which prevents production until the Court enters a protective order to protect Plaintiff's privacy and confidentiality interests. Ex. 5.

- Plaintiff has no such written authorizations in his possession, custody, or control. Once the court enters a protective order, Plaintiff will consider not objecting to any subpoenas to third parties it wishes to issue. *Id.*

**II.    Defendants' Efforts to Resolve the Issues Raised without Court Intervention**

Plaintiff has provided virtually no information in this lawsuit, nor produced documents or information responsive to the Facility's discovery requests. Plaintiff's initial disclosures disclose no third-party witnesses with discoverable information, listing only Plaintiff and unspecified "Defendant employees". Plaintiff's Responses and Objections to the Facility Defendant's First Set of Requests for Production of Documents and Interrogatories consist largely of boilerplate objections, with no responsive documents. *See* Ex. 3 and Ex. 5. Indeed, Plaintiff provided substantive information in response to almost none of the Interrogatories, generically referring to his initial disclosures and some undefined and undated future production of documents. *See* Ex. 3. Plaintiff's Responses fail to indicate whether responsive materials have been withheld on the basis of these boilerplate objections, but claim that responsive, non-privileged materials will be produced after the entry of a confidentiality order. *See* Ex. 3 and Ex. 5. This Court entered the confidentiality order on October 17, 2019, yet Plaintiff has produced nothing responsive to the Facility's Interrogatory No. 16 or Requests for Production Nos. 6 and 7 since its entry.

On October 23, 2019, 11 months after the filing of Plaintiff's complaint, the Facility sent correspondence to Plaintiff requesting production of written authorizations permitting release of Leroy Chow's medical records from non-parties, as previously requested in the Facility's First Request for Production of Documents as relevant to Plaintiff's claim. *See* Ex. 6. The Facility also requested dates on which Plaintiff was available to be deposed. *Id.*

Plaintiff produced no materials or authorizations in response, nor provided dates that he is available to be deposed. Instead, Plaintiff responded that ". . . collection of documents responsive to non-objectionable requests is not yet complete and may not be complete for several weeks," and that "Plaintiff will not oppose any subpoenas Defendants wish to issue to third parties regarding Leroy Chow's medical records during the time he was a resident at Seagate." *See* Ex. 7. Plaintiff also refused to schedule his deposition at this time. *Id.* Given Plaintiff's refusal to provide the requested materials by a date certain, Defendants sent a meet and confer letter on December 19, 2019 addressing the deficiencies in Plaintiff's

10517186v.1



P a g e | 4

discovery responses. *See* Ex. 8. In response, Plaintiff promised production of supplemental documents/materials by January 6, 2020.

On January 29, 2020, with Plaintiff's promised production now weeks overdue, the Facility sent correspondence to Plaintiff again requesting production of written authorizations permitting the release of Leroy Chow's relevant medical records from non-parties. *See* Ex. 9. Plaintiff produced no materials or authorizations, but responded that he was "having some technical difficulties with ESI but anticipate[d] making a production soon," and that, "Regarding Mr. Chow's treatment before or after his time at Seagate and your request for an authorization not in his possession, our position has not changed, as we made perfectly clear during our last two meet and confers." *See* Ex. 10.

### III.    Legal Argument

Rule 26(b)(1) of the Federal Rules of Civil Procedure permits discovery of "any nonprivileged matter that is relevant to any party's claim or defense". Given Plaintiff's claim that the Facility caused or contributed to Leroy Chow's physical and emotional injuries, not to mention his televised news report/press release asserting that the Facility's care lead to Leroy Chow's death one year and four months after his residency at the Facility ended, the Facility asked Plaintiff to identify Leroy Chow's medical providers and sought his medical treatment records before, during and after his residency. By placing Leroy Chow's physical and mental condition in controversy, Plaintiff waived the privileges associated with the information and documents relevant to these claims. *Manessis v. N.Y. City DOT*, 02 Civ. 359 (SAS) (DF), 2002 U.S. Dist. LEXIS 17884, at *4-5 (S.D.N.Y. Sep. 23, 2002) ("Where . . . a litigant puts his physical or mental condition into issue in the litigation, he waives his right to privacy in any relevant medical records."); *Sunegova v. Vill of Rye Brook*, 09 Civ. 4956 (KMK) (LMS), 2011 .S. Dist. LEXIS 150399, at *8-10 (S.D.N.Y. Apr. 28, 2011). In particular, the Facility requested: (1) the names and addresses of all physicians, medical or health care providers, hospitals, clinics, or other health care facilities that consulted, examined, or treated Leroy Chow from January 1, 2014 through December 27, 2017, including for each of the conditions allegedly caused or exacerbated by the incidents alleged in the Complaint; (2) copies of all medical reports or records relating to Mr. Chow from the persons and entities so-identified; and (3) written authorizations permitting the Facility to obtain the complete medical records of Mr. Chow from non-party record custodians for the persons and entities so-identified.

Rather than identify medical providers/facilities or provide Leroy Chow's treatment records, Plaintiff interposed baseless and boilerplate objections to the Facility's requests. With regard to the Request for medical treatment records, Plaintiff objected on the grounds that he did not maintain Leroy Chow's "complete medical records of the treatment he received," but speculated that the Facility maintained detailed health records for the same 4-year period. Speculation notwithstanding, Leroy Chow was not a resident of the Facility for three of the four years referenced in Plaintiff's Response, and the Facility possesses no such records or information regarding the periods prior or subsequent to his Facility residency. Further, it is incumbent upon Plaintiff to identify all medical providers and facilities that treated Leroy Chow during this period.

Plaintiff also claims that because he is not in possession of written authorizations for the release of records from persons or entities that treated Leroy Chow, that he cannot produce authorizations. For the purposes of Rule 34, legal ownership or physical possession is not required for the production of



documents under a party's control; all that is required is that a party have the right, authority, or practical ability to obtain the documents at issue. *Asset Value Fund Ltd. P'ship v. Care Grp, Inc.*, No. 98 Civ. 1487 (DLC) (JCF), 1997 U.S. Dist. LEXIS 17968, at *9 (S.D.N.Y. Nov. 12, 1997). Plaintiff controls the release of Leroy Chow's privileged/confidential or HIPAA-protected treatment records by virtue of his position as Administrator of Leroy Chow's Estate. Given Plaintiff's control of the privilege governing the release of Leroy Chow's medical treatment records, this Court should compel Plaintiff to provide the Facility with written authorizations permitting these records' release.

In response to the Facility's efforts to resolve this area of dispute, Plaintiff takes the position that the Facility does not need written authorizations to obtain the release of Leroy Chow's treatment records. While in some circumstances HIPAA permits disclosure of protected health information without a patient's written authorization, HIPAA also incorporates state law more stringent than its own requirements. 45 CFR § 160.203(b); *Pal v. New York Univ.*, 06 Civ. 5892 (BSJ) (FM), 2007 U.S. Dist. LEXIS 32641, at *5-8 (S.D.N.Y. May 2, 2007). C.P.L.R. § 3122(a)(2) codifies one "more stringent" New York State law requirement applicable here:

> A medical provider served with a subpoena duces tecum . . . requesting the production of a patient's medical records pursuant to this rule need not respond or object to the subpoena if the subpoena is not accompanied by a written authorization by the patient. Any subpoena served upon a medical provider requesting the medical records of a patient shall state in conspicuous bold-faced type that the records shall not be provided unless the subpoena is accompanied by a written authorization by the patient, or the court has issued the subpoena or otherwise directed the production of the documents.

Given New York State's requirement that a subpoena be accompanied by a patient's written authorization, Plaintiff should be compelled to produce the authorizations. Written authorizations are also needed to assure non-litigant record custodians unfamiliar with HIPAA's nuances that records will not be impermissibly disclosed; a concern almost certain to result in motion practice compelling non-litigants' compliance with subpoenas facially defective under New York State law. Plaintiff needs to both identify the medical providers and facilities that treated Leroy Chow, so the Facility knows what medical records are relevant, and provide the authorizations for the Facility to obtain these records.

**IV.    Conclusion**

Plaintiff brings a lawsuit asserting Leroy Chow received deficient care at the Facility without any evidence in support. Knowing this, Plaintiff demands sweeping class discovery from Defendants, while delaying the production of documents and information to Defendants that should have been prepared at the start of this lawsuit over one year ago. He has refused to identify any medical providers or facilities that treated Leroy Chow, refused to produce pre- or post-residency medical records for Leroy Chow, and delayed the taking of his deposition. Plaintiff's dilatory conduct has detrimentally impacted the Facility's ability to obtain necessary fact discovery in this matter. Based on the foregoing, the Facility respectfully requests that this Court issue an order compelling Plaintiff to provide the information, documents, and materials responsive to the Facility's Interrogatory No. 16 and Requests for Production of Documents Nos. 6 and 7 by a date certain.



P a g e | **6**

Respectfully submitted,

Wilson Elser Moskowitz Edelman & Dicker LLP

By:  */s/ David M. Ross*
David M. Ross
David.Ross@wilsonelser.com