**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| WALTER CHOW, as Administrator of the Estate of LEROY CHOW, individually and on behalf of all others similarly situated,<br><br>                Plaintiff,<br><br>v.<br><br>SHOREFRONT OPERATING LLC d/b/a SEAGATE REHABILITATION AND NURSING CENTER; SHAINDY BERKO; ROCHEL DAVID; LEAH FRIEDMAN; DEENA LANDA; ESTHER FARKOVITZ; AVI PHILIPSON; BERISH RUBINSTEIN; DAVID RUBINSTEIN; BRUSCHA SINGER; JOEL ZUPNICK; SHOREFRONT REALTY LLC; SENTOSACARE, LLC; and DOES 1-25,<br><br>                Defendants. | Civil Action<br>No. 1:19-cv-03541-FB-JRC |

**MEMORANDUM OF LAW IN SUPPORT OF
<u>PLAINTIFF'S MOTION TO AMEND THE COMPLAINT</u>**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. iii

PRELMINARY STATEMENT ........................................................................................... 1

PROCEDURAL HISTORY ................................................................................................. 4

ARGUMENT ....................................................................................................................... 6

I.   Plaintiff Has Good Cause Under Rule 16
     To Allow Amendment Of The Pleadings And Addition Of Parties. ................................. 6

II.  Motions To Amend Under Rules 15 And 21 Are Freely Granted. ................................... 8

     A.   The Proposed Amendments Are Not Futile. ........................................................... 10

          1.   The Addition of Rita Skolkin
               And Anthony Lanni As Plaintiffs Is Not Futile. ....................................... 10

          2.   The Addition of Ben Landa
               And Bent Philipson As Defendants Is Not Futile. .................................... 13

               a.   Skolkin's And Lanni's Claims
                    Against Landa And Phillipson Are Not Time Barred.................. 14

               b.   Mr. Landa And Mr. Philipson
                    Have Direct And Indirect Interests In The Facility. ................... 14

               c.   Mr. Landa And Mr. Philipson
                    Retain Operational Control Of The Facility. .............................. 16

     B.   Plaintiff's Motion Is Not In Bad Faith. ................................................................... 18

     C.   Plaintiff's Motion Is Not Unduly Delayed. ............................................................ 19

     D.   Defendant Will Not Suffer Undue Prejudice. ......................................................... 20

III. The Proposed Amendments Satisfy Rule 20's Permissive Joinder Standard. .................. 22

     A.   Ms. Skolkin's and Mr. Lanni's Claims Arise
          From The Same Transaction Or Occurrence As Plaintiff Chow's Claim. ........... 22

     B.   Bent Philipson and Ben Landa Are
          Jointly And Severally Liable Based On
          The Same Questions Of Law And Fact As Other Defendants Are Liable. .......... 23

CONCLUSION.................................................................................................................... 24

## <u>TABLE OF AUTHORITIES</u>

Page(s)

<u>Cases</u>

*Alexandre v. Town of Hempstead*,
    275 F.R.D. 94 (E.D.N.Y. 2011)................................................................. 19

*Blaskiewicz v. County of Suffolk*,
    29 F. Supp. 2d 134 (E.D.N.Y. 1998) ....................................................... 10

*Block v. First Blood Assocs.*,
    988 F.2d. 344 (2d Cir. 1993) ..................................................................... 9

*Bryant v. Carlisle Carrier Corp.*,
    No. 13-578, 2014 WL 712592 (E.D.N.Y. 2014) ................................... 20, 21

*Chow v. Shorefront Operating LLC*,
    No. 19-3541, 2020 WL 5752117 (E.D.N.Y. Sept. 25, 2020)...................... 5

*Chow v. Shorefront Operating LLC*,
    No. 19-3541, 2021 WL 2646329 (E.D.N.Y. June 28, 2021)..................... 12

*Clarke v. Fonix Corp.*,
    No. 98-6116, 1999 WL 105031 (S.D.N.Y. Mar. 1, 1999).......................... 9

*Cook v. City of New York*,
    243 F. Supp. 3d 332 (E.D.N.Y. 2017) ................................................. 18, 19

*Enzymotec Ltd. v. NBTY, Inc.*,
    754 F.Supp.2d 527 (E.D.N.Y. 2010) ...................................................... 6, 7

*Fielding v. Tollaksen*,
    510 F.3d 175 (2d Cir. 2007) ...................................................................... 1

*Foman v. Davis*,
    371 U.S. 178 (1962) ............................................................................... 8, 9

*Garcia v. Pancho Villa's of Huntington Village, Inc.*,
    68 F.R.D. 160 (E.D.N.Y. 2010)............................................................... 10

*Golden Trade, S.r.L. v. Jordache*,
    143 F.R.D. 504 (S.D.N.Y. 1992).............................................................. 10

*Grochowski v. Phoenix Constr.*,
    318 F.3d 80 (2d Cir. 2003) ......................................................................... 7

*Holmes v. Grubman*,
    568 F.3d 329 (2d Cir. 2009) ............................................................................. 6

*Joe Hand Promotions, Inc. v. Jones*,
    No. 06-2228, 2006 WL 2882564 (E.D.N.Y. Oct. 6, 2006) ................................. 8, 21

*Luparello v. Incorporated Village of Garden City*,
    290 F. Supp. 2d 341 (E.D.N.Y. 2003) ................................................................. 22

*Mason Tenders District Council of Greater New York v. Phase Construction Services, Inc.*,
    318 F.R.D. 28 (S.D.N.Y. 2016) ........................................................................... 6, 7

*Monaham v. New York City Dept. of Corr.*,
    214 F.3d 275 (2d Cir. 2000) ............................................................................... 8

*Ocean Side Inst. Indus., Inc. v. United Presbyterian Residence*,
    678 N.Y.S.2d 653 (N.Y. App. Div. 1998) ........................................................... 5, 13

*Oscar v. BMW of North America*,
    No. 09-11, 2011 WL 6399505 (S.D.N.Y. Dec. 20, 2011) ................................... 7

*Porter v. MooreGroup Corp.*,
    No. 17-07405, 2020 WL 32434 (E.D.N.Y. Jan. 2, 2020) .............................. *passim*

*Rachman Bag Co. v. Liberty Mut. Ins. Co.*,
    46 F.3d 230 (2d Cir. 1995) ................................................................................. 9

*Reyes v. N. Shore Long Island Jewish Health Sys.*, No.,
    No. 00-6400, 2002 WL 31180961 (E.D.N.Y. Oct. 2, 2002) ............................... 8

*Ryder Energy Distrib. Corp. v. Merrill Lynch Commod., Inc.*,
    748 F.2d 774 (2d Cir.1984) ................................................................................ 10

*Sanossian v. Valley Stream Central High School District*,
    No. 16-4697, 2020 WL 6385602 (E.D.N.Y. Octo. 29, 2020) ............................. 7

*Soroof Trading Dev. Co. v. GE Microgen, Inc.*,
    No. 10-1391, 2012 WL 1681815 (S.D.N.Y. May 11, 2012) ............................... 9

*Sorrell v. Inc. Vill. of Lynnbrook*,
    No. 10-49, 2012 WL 1999642 (E.D.N.Y. June. 4, 2012) ................................... 9

*Sullivan v. West New York Residential, Inc.*,
    No. 01-7847, 2003 WL 21056888 (E.D.N.Y. Mar. 5, 2003) ............................... 10

*Tyree v. Zenk*,
   No. 05-2998, 2009 WL 1456554 (E.D.N.Y. May 22, 2009)....................................................... 1

*United Mine Workers of Am. v. Gibbs*,
   383 U.S. 715 (1966) ........................................................................................................ 9

*Wilson v. Toussie, et al.*, No. 01-4568
   No. 01-4568, 2003 WL 22466219 (E.D.N.Y. 2003) ............................................................ 22

## **Statutes**

10 N.Y.C.R.R. § 415.13 ........................................................................................................ 10

42 U.S.C. § 1395i-3(b)(4)(A)(i) ............................................................................................. 11

42 U.S.C. § 1396r(b)(4)(C)(i)(I) ............................................................................................ 11

New York Public Health Law ("PHL") § 2801-d ................................................................ *passim*

New York Public Health Law ("PHL") § 2808-a ................................................................ *passim*

## **Rules**

Fed. R. Civ. P. 15 .......................................................................................................... 1, 9

Fed. R. Civ. P. 16 ...................................................................................................... 1, 6, 9

Fed. R. Civ. P. 20 ..................................................................................................... *passim*

Fed. R. Civ. P. 21 ........................................................................................................ 1, 9

## PRELMINARY STATEMENT

Plaintiff Walter Chow, as Administrator of the Estate of Leroy Chow, individually and on behalf of all others similarly situated (referred to as "Patients," "Residents," or the "Proposed Class"), by his attorneys, Finkelstein, Blankinship, Frei-Pearson & Garber, LLP, hereby respectfully submits this Memorandum of Law in support of his Motion for Leave to file his second Amended Complaint ("SAC") (attached as Exhibit 1) pursuant to Fed. R. Civ. P. 15, 16, 20, and 21.[1]  A redline of the SAC is attached for the convenience of the Court as Exhibit 2.

This case seeks redress for the horrific and deleterious conditions Defendants have created, and profited from, at the Seagate Rehabilitation and Nursing Center ("Facility") in Brooklyn, New York in violation of New York Public Health Law ("PHL") § 2801-d.  To protect nursing home residents, § 2801-d comes with two powerful protections.  First, the statute does not allow owners and operators to hide behind the corporate form.  Recognizing that nursing home owners often seek to evade liability by hiding behind limited liability corporations and otherwise manipulating New York corporation laws, § 2801-d imposes liability on those individuals with an ownership interest -- whether direct or indirect, of record or beneficial -- and the ability to control the operations of a home, irrespective of how a nursing home and its operations are organized from a corporate perspective.  Second, the statute empowers the Court to issue injunctive orders to remedy violations.

---

[1] Plaintiff respectfully submits this motion for consideration by Magistrate Cho.  Whether a decision on a motion for leave to amend a complaint should be considered "dispositive" or "non-dispositive" (or both) is unsettled in this Circuit.  However, the practice is to refer such motions to the assigned magistrate judge for initial consideration.  *See Fielding v. Tollaksen*, 510 F.3d 175, 178 (2d Cir. 2007) ("[A] district judge may refer non-dispositive motions, such as a motion to amend the complaint, to a magistrate judge for decision without the parties' consent."); *Tyree v. Zenk*, 2009 WL 1456554, at *3 (E.D.N.Y. May 22, 2009) ("District courts in this circuit have suggested that a magistrate judge's denial of a motion to amend a complaint should be treated as dispositive, while a grant of the same motion should be treated as non-dispositive.").

The SAC furthers both those protections.  Ben Landa and Bent Phillipson are among the true owners and operators of the Facility, but they have taken great lengths to obfuscate this fact from regulators and litigants seeking redress for the conditions they are responsible for at the Facility.  Unfortunately, by the time Plaintiff Chow discovered facts sufficient to allege their liability under § 2801-d, the statute of limitations as to his individual claims against Landa and Phillipson had expired, and Judge Bulsara ruled that his claims did not relate back to the original complaint.  Ms. Skolkin's and Mr. Lanni's claims are not so limited.  And Ms. Skolkin, unlike Leroy Chow, is a current resident of the home and thus has standing to seek injunctive relief.

To that end, the SAC seeks to add two named plaintiffs, Rita Skolkin and Anthony Lanni, and to add factual allegations underpinning Ms. Skolkin and Mr. Lanni's claims of understaffing at the Facility.  Both Mr. Lanni and Ms. Skolkin only recently expressed interest in becoming a party to the litigation, and their inclusion is not futile, will result in at worst limited additional discovery, will not change the current operative deadlines, and will not cause undue prejudice.  The parties have already scheduled Ms. Skolkin's deposition for February and can easily schedule Mr. Lanni's deposition as well.

The SAC also seeks to add Bent Philipson and Ben Landa as named defendants, and factual allegations regarding the indirect and direct ownership they have in the Facility rendering them liable under PHL § 2808-a.  In Mr. Landa's January 21, 2022 deposition, he confessed that he and Mr. Philipson are the key players who bear the ultimate responsibility for the Facility's understaffing.  Under oath, Mr. Landa detailed his acquisition and transformation of what was formerly the non-profit Shorefront Jewish Geriatric into the lucrative Facility it is today.  Mr. Landa facilitated the sale of Shorefront Jewish Geriatric to himself and his co-investors (all of whom were friends and family), including Mr. Bent Philipson.  Without any semblance of arms'-

length negotiations, the two divvied the nursing home into two limited liability companies: Shorefront Operations LLC, which ostensibly operates the Facility, and Shorefront Realty LLC, which ostensibly owns the land and the Facility itself.  In an attempt to insulate themselves from liability, Mr. Landa and Mr. Philipson signed on as owners of the real estate property and not as the Facility (although Mr. Phillipson was in fact a direct owner of Shorefront Operating LLC for some of the class period).  But behind the scenes, they retained operational control and funneled money out of the Facility into their pockets through so-called "management fees" at $30,000 per month and through excessive rent payments from the profits of the Facility to Shorefront Realty LLC.  Notably, Philipson's son and Landa's daughter comprise two of the three managing members of Shorefront Operating LLC, and it was Phillipson's son and Landa that authorized the excessive rent payments that siphon profits from the Facility to Landa and Phillipson.  Further, Mr. Landa and Mr. Philipson are the sole members of SentosaCare, a Defendant in this action that provides operational services to the Facility at a rate determined by Landa and Phillipson and their relatives, and they have long been implicated in this litigation.

Thus, both Landa and Phillipson exercise operational control of the Facility; they receive profit from the Facility in the form of realty payments and management fees; they have a direct ownership interest in Shorefront Realty LLC and SentosaCare LLC (both Defendants in this action); Landa's daughter (whose capital contribution to Shorefront Operating LLC was paid for by Landa) and Phillipson's son are two of the three managing members of Shorefront Operating LLC, which pays Landa and Phillipson $360,000 per year (an amount that is more than a third of the expected profits from the Facility); and they have a direct ownership interest in the Facility both as a result of their ownership of the realty entity, but also through their familial connections.

Granting Plaintiff's motion to amend also furthers judicial economy.  If denied the opportunity to add the new plaintiffs and defendants (with their claim for injunctive relief), the new plaintiffs will simply file a new case, identifying it as related to this action. If anything, denying the motion to amend will result in delay as the new case is coordinated with this action.

Plaintiff therefore respectfully requests the Court's permission to file the SAC.

## PROCEDURAL HISTORY

Plaintiff originally filed his action in the Supreme Court in the State of New York, Kings County on November 27, 2018.  *See Walter Chow v. Shorefront Operating LLC d/b/a Seagate Rehabilitation and Nursing Center et al.*, Ind. No. 523769/2018, NYSCEF Doc. No. 1 (Sup. Ct. Kings Cty. Nov. 27, 2018).  Plaintiff alleged claims pursuant to New York Public Health Law ("PHL") § 2801-d individually, as the representative of his brother's estate, and on behalf of a class of similarly situated nursing home residents victimized at the Facility by Defendants' failure to meet their statutory obligations pursuant to New York and federal law.  *Id.*  Plaintiff's Complaint sought statutory damages for the deprivation of rights inflicted upon his brother and the other Residents due to Defendants' systemic failure to meet their statutorily-imposed obligations to provide adequate care by, among other things, adequately staffing the Facility.  Plaintiff also sought injunctive relief to reform the Facility going forward.  *Id.* at ¶ 5.

On June 14, 2019, Defendants filed a notice of removal.  ECF No. 1.  On July 12, 2019, Plaintiff Chow filed an amended complaint as of right.  ECF No. 12.  On September 5, 2019, Judge Bulsara entered a scheduling order which mandated that the deadline for the motion to amend was December 5, 2019.  ECF No. 26.  On November 4, 2019, the parties filed briefings on Defendants' motion to dismiss.  ECF No. 36.  On September 25, 2020, Judge Block denied Defendants' motion to dismiss, including Defendants' motion to dismiss Plaintiff's claim for injunctive relief.  ECF

No. 69.   Notably, Judge Block denied Defendants' motion to dismiss SentosaCare LLC and

Shorefront Operating LLC:

> For purposes of [PHL §§ 2801-d, 2808-a], a 'controlling person' of a residential
> health care facility shall be deemed to mean any person who by reason of a direct
> or indirect *ownership interest* (whether of record or beneficial) has the ability,
> acting either alone or in concert with others with ownership interests, to direct or
> cause the direction of the management or policies of said facility." PHL § 2808-
> a(2) (emphasis added) . . . Plaintiff alleges that (i) "Shorefront Realty owns the
> property occupied by the Facility and receives rent payments ... for the use of the
> property"; (ii) SentosaCare contracts-for and provides "administrative services" to
> the Facility; and (iii) "there is a significant overlap in the ownership" of Shorefront
> Realty, SentosaCare, and the Facility. Compl. ¶¶ 13–14. For purposes of a Rule
> 12(b)(6) motion, those allegations plausibly show Shorefront Realty and
> SentosaCare have "the ability ... in concert with others with ownership interests, to
> direct or cause the direction of the management or policies of said facility." PHL
> § 2808-a(2).

*Chow v. Shorefront Operating LLC*, No. 19-03541, 2020 WL 5752117, at *2 (E.D.N.Y. Sept. 25,

2020) (citing *Ocean Side Inst. Indus., Inc. v. United Presbyterian Residence*, 678 N.Y.S.2d 653

(N.Y. App. Div. 1998) ("[T]he requirement that an individual have an ownership interest in order

to be deemed a 'controlling person' was imposed to insure that liability and responsibility follow

the capability to make a profit." (internal quotation omitted)).

On September 18, 2020, Plaintiff Chow requested leave to file a second amended complaint

to add Ben Landa and Bent Philipson as named defendants.  ECF No. 68.  On January 20, 2020,

Judge Bulsara denied Plaintiff Chow's motion for leave to file an amended complaint.  ECF No.

84.  Judge Bulsara ruled that Plaintiff Chow's addition of Mr. Landa and Mr. Philipson would be

futile *solely* because the 3-year statute of limitations had run since his brother was last in

Defendants' nursing home, and Plaintiff Chow could not show that his claims related back to the

original complaint.  *Id.* at 8.

On October 2, 2020, Defendants filed a motion for reconsideration to ask Judge Block to

reconsider Defendants' motion to dismiss Plaintiff Chow's injunctive relief claim.  ECF No. 73.

5

On October 28, 2020, Defendants filed an answer to Plaintiff's first amended complaint. ECF No. 79. On June 28, 2021, Judge Block granted Defendants' motion for reconsideration and ruled that because "Plaintiff lacks standing to seek injunctive relief, Plaintiff['s] request for injunctive relief is stricken."). ECF No. 88 at 8.

## ARGUMENT

### I.    Plaintiff Has Good Cause Under Rule 16 To Allow Amendment Of The Pleadings And Addition Of Parties.

Plaintiff has good cause to seek this Court's permission to amend the Complaint after the current deadline to do so. Rule 16 provides that scheduling orders, which "must limit the time to join other parties [and] amend the pleadings," "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b). "Generally, a 'finding of 'good cause' depends on the diligence of the moving party.'" *Mason Tenders District Council of Greater New York v. Phase Construction Services, Inc.*, 318 F.R.D. 28, 37 (S.D.N.Y. 2016). "Where delayed discovery prevented a party from discovering facts sufficient to support a cause of action, a party must show that it acted diligently upon learning the new facts." *Id.* at 37 (quoting *Enzymotec Ltd. v. NBTY, Inc.*, 754 F.Supp.2d 527, 537 (E.D.N.Y. 2010)).

"[A] party seeking to amend the complaint after the Rule 16(b) scheduling order deadline has passed must first demonstrate good cause to modify the scheduling order deadline before the court addresses the proposed amendment under the Rule 15(a) standard." *Porter v. MooreGroup Corp.*, No. 17-07405, 2020 WL 32434, at *4 (E.D.N.Y. Jan. 2, 2020). "Where, as here, a scheduling order governs amendments to the complaint, 'the lenient standard under Rule 15(a), which provides leave to amend shall be freely given, must be balanced against the requirement under Rule 16(b) that the Court's scheduling order shall not be modified except upon a showing of good cause.'" *Holmes v. Grubman*, 568 F.3d 329, 334-35 (2d Cir. 2009) (citations omitted)

(quoting *Grochowski v. Phoenix Constr.*, 318 F.3d 80, 86 (2d Cir. 2003) (internal quotation marks omitted)).  Leave to amend should only be denied if the proposed amendment relies on information that the party knew or should have known prior to the deadline.  *See Oscar v. BMW of North America*, No. 09-11, 2011 WL 6399505, at *2 (S.D.N.Y. Dec. 20, 2011).  And "[w]hile diligence is the primary consideration, it is not the only one. The Court in exercising its discretion may consider other factors including prejudice."  *Sanossian v. Valley Stream Central High School District*, No. 16-4697, 2020 WL 6385602, at *5 (E.D.N.Y. 2020).

Here, there was no undue delay both because Plaintiff's counsel was only retained by Ms. Skolkin and Mr. Lanni in December 2021 and because many of the facts newly alleged in the SAC came to light during Mr. Landa's January 21, 2022 deposition.

Judge Ramos of the Southern District in New York addressed a similar issue in *Mason Tenders*, a case on all fours.  There, as here, the plaintiffs moved to amend their complaint more than a year after the deadline to amend because they did not uncover the requisite evidence to amend until after a deposition conducted late in the discovery period.  318 F.R.D. at 37.  The *Mason Tenders* court ruled that "it was proper for plaintiffs to wait until after Dima's deposition to seek leave to amend" because moving to amend before the deposition with relevant testimony "would have been premature at that time."  *Id.* at 38, 37 (relying on *Enzymotec*, 754 F.Supp.2d at 537).  Plaintiff likewise waited until after Mr. Landa's January 21, 2022 deposition to add Mr. Landa and Mr. Philipson as named defendants because moving before would have been premature -- as Judge Bulsara ruled in his January 20, 2021 order.  ECF No. 84.  In waiting to depose before moving to amend, the *Mason Tenders* plaintiffs "diligently sought leave to amend to name LaBarca as a defendant," and had "shown good cause to amend the Complaint to add [new claims for injunctive relief.]"  318 F.R.D. at 38.

7

Further, Plaintiff's counsel did not receive confirmation that Mr. Lanni and Ms. Skolkin would willingly become parties until December of 2021. Plaintiff thus moves to amend based on information that he did not know and could not have known prior to the December 5, 2019 deadline to amend. Nor could Plaintiff have moved to amend to add Mr. Landa and Mr. Philipson as defendants to the complaint prior to Ms. Skolkin's and Mr. Lanni's addition to the complaint because Judge Bulsara ruled that Mr. Chow's claims against Mr. Landa and Mr. Philipson are barred by the statute of limitations. Moreover, as reflected in paragraphs 34 through 46 of the SAC, much of the basis for Plaintiff's amended pleading that Landa and Philipson are proper defendants was only discovered during the January 21, 2022 deposition of Mr. Landa. Plaintiff thus acted diligently in bringing this motion to amend.

## II.     Motions To Amend Under Rules 15 And 21 Are Freely Granted.

Motions to amend are to be "liberally granted absent a good reason to the contrary." *Porter*, 2020 WL 32434, at *4. Rule 15 "states that 'leave shall be freely given when justice so requires.' . . . In light of this provision, the rule has been liberally construed." *Joe Hand Promotions, Inc. v. Jones*, No. 06-2228, 2006 WL 2882564, at *2 (Block, J.) (E.D.N.Y. 2006) (affirming report and recommendation to allow amendment of complaint). *See also Reyes v. N. Shore Long Island Jewish Health Sys.*, No. 00-6400, 2002 WL 31180961, at *3 (Block, J.) (E.D.N.Y. Oct. 2, 2002) (noting that leave to amend "shall be freely given when justice so requires"); *Monaham v. New York City Dept. of Corr.*, 214 F.3d 275, 283 (2d Cir. 2000) (noting that "mere technicalities" should not prevent cases from being decided on the merits and that "pleadings are to serve the limited role of providing the opposing party with notice of the claim or defense to be litigated"); *Foman v. Davis*, 371 U.S. 178, 181 (1962) ("It is . . . entirely contrary to the spirit of the Federal Rules of Civil Procedure for decisions on the merits to be avoided on the basis of such mere technicalities.").

"Mere delay . . . absent a showing of bad faith or undue prejudice, does not provide a basis for a district court to deny the right to amend."  *Block v. First Blood Assocs.*, 988 F.2d. 344, 350 (2d Cir. 1993) (internal quotation marks omitted); *accord Rachman Bag Co. v. Liberty Mut. Ins. Co.*, 46 F.3d 230, 235 (2d Cir. 1995) ("The Supreme Court has emphasized that amendment should normally be permitted, and has stated that refusal to grant leave without justification is 'inconsistent with the spirit of the Federal Rules.'") (quoting *Foman*, 371 U.S. at 182). Accordingly, "[i]f no prejudice is found, then leave normally will be granted."  6 Charles Alan Wright & Arthur R. Miller, Fed. Practice and Procedure § 1484 (3d ed.).

Plaintiff also moves under Rule 21.  This rule provides "the court may at any time, on just terms, add or drop a party."  Fed. R. Civ. P. 21.  The same liberal standard favoring amendment under Rule 15 applies to the joinder of parties.  *See Sorrell v. Inc. Vill. of Lynnbrook*, No. 10-49, 2012 WL 1999642, at *3 (E.D.N.Y. 2012) ("Although Rule 21, not Rule 15(a) normally governs the addition of new parties to an action, the same standard of liberality applies under either Rule.") (quoting *Clarke v. Fonix Corp.*, No. 98-6116, 1999 WL 105031, at *5 (S.D.N.Y. Mar. 1, 1999), *aff'd*, 199 F.3d 1321 (2d Cir. 1999)); *Soroof Trading Dev. Co. v. GE Microgen, Inc.*, No. 10-1391, 2012 WL 1681815, at *3 (S.D.N.Y. May 11, 2012) ("[T]he showing necessary under Rule 21 is the same as that required under Rule 15(a)(2)") (internal quotation marks omitted); *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724 (1966) ("Under the Rules, the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged.").

Courts consider the following factors when considering motions to amend under Rules 15 and 21: futility, bad faith, delay, and undue prejudice.  *Porter*, 2020 WL 32434, at *4.

A.      **The Proposed Amendments Are Not Futile.**

"An amendment is futile if it cannot survive a Rule 12(b)(6) motion to dismiss." *Porter*, 2020 WL 32434, at *5.  In determining whether amendment is futile, "[t]he issue is not whether plaintiff will ultimately prevail but whether he is entitled to offer evidence to support the claims asserted." *Garcia v. Pancho Villa's of Huntington Village, Inc.*, 68 F.R.D. 160, 164 (E.D.N.Y. 2010); *Sullivan v. West New York Residential, Inc.*, No. 01-7847, 2003 WL 21056888, at *2 (E.D.N.Y. Mar. 5, 2003) ("[A]mendment is futile only if movants cannot demonstrate 'at least colorable grounds for relief.'" (quoting *Ryder Energy Distrib. Corp. v. Merrill Lynch Commod., Inc.*, 748 F.2d 774, 783 (2d Cir.1984)).  In making this determination, the court should not consider the merits of a claim or defense unless the amendment is "clearly frivolous or legally insufficient on its face." *Blaskiewicz v. County of Suffolk*, 29 F. Supp. 2d 134, 137 (E.D.N.Y. 1998).  "If the [movant] has at least colorable grounds for relief, justice . . . require[s]' that the court grant leave to amend a complaint." *Blaskiewicz*, 29 F. Supp. 2d at 138 (quoting *Golden Trade, S.r.L. v. Jordache*, 143 F.R.D. 504, 506 (S.D.N.Y. 1992)) (additional citation omitted) (alteration in original).  The party opposing amendment bears the burden of demonstrating that leave to amend would be prejudicial or futile. *Blaskiewicz*, 29 F. Supp. 2d at 137.

1.      **The Addition of Rita Skolkin And Anthony Lanni As Plaintiffs Is Not Futile.**

Ms. Skolkin's and Mr. Lanni's allegations establish a *prima facie* case of deprivation and injury under PHL § 2801-d.  *See* PHL § 2801-d ("Any residential health care facility that deprives any patient of said facility of any right or benefit . . . shall be liable to said patient for injuries suffered as a result of said deprivation . . . .").

Both federal and New York law require that Defendants provide adequate staffing to care for residents' mental and physical well-being.  *See* 10 N.Y.C.R.R. § 415.13 (mandating that a

nursing facility "shall provide sufficient nursing staff to provide nursing and related services to attain or maintain the highest practicable physical, mental, and psychosocial well-being of each resident"); 42 U.S.C. § 1396r(b)(4)(C)(i)(I) (mandating that a nursing facility "must provide 24-hour licensed nursing services which are sufficient to meet the nursing needs of its residents"), 42 U.S.C. 1395i-3(b)(4)(A)(i) (mandating that a nursing facility must provide "nursing services and specialized rehabilitative services to attain or maintain the highest practicable physical, mental, and psychosocial well-being of each resident").  Ms. Skolkin is a current resident of the Facility (SAC at ¶ 14) and she more than plausibly alleges that the home is understaffed and that she suffered injury as a result.  Ms. Skolkin "has repeatedly fallen and suffered extensive contusions and bruising in the Facility as a result of the Facility's understaffing."  SAC at ¶ 58.  As a result of the Facility's understaffing, "[t]he Facility staff rarely administers Plaintiff Skolkin's medication on time.  This is detrimental to Plaintiff Skolkin's health."  SAC at ¶ 59.  "The Facility staff fail to maintain adequate supply of Plaintiff Skolkin's medication.  Oftentimes, the Facility staff cannot provide Plaintiff Skolkin her medication because the Facility failed to order the medication from its medical supplier."  SAC at ¶ 61.  Taken as true, these facts clearly establish a violation of PHL § 2801-d, where the Facility has deprived Ms. Skolkin of her right to adequate staffing hours.  Ms. Skolkin's facts survive the applicable standard on a motion to dismiss and thus are not futile.  "An amendment is futile if it cannot survive a Rule 12(b)(6) motion to dismiss."  *Porter*, 2020 WL 32434, at *5.

Mr. Lanni, likewise, pleads facts sufficient to establish deprivation and injury under PHL § 2801-d.  Mr. Lanni pleads that he "repeatedly found his father sitting in a soiled diaper for hours at a time due to the Facility staff's failure to properly toilet his father or to change the diaper in a timely manner," that he "attempted to track down staff to change his father's diaper but often could

not find any available staff to provide care," and that his father "developed rashes as a result of the prolonged periods of sitting in his own waste in soiled diapers."  SAC at ¶ 68.  Mr. Lanni further pleads:

> Near the end of Vincenzo Lanni's stay, Plaintiff Lanni found his father in the Facility extremely ill and in desperate need of medical attention, with extremely swollen feet and exhibition of incoherence.  But the Facility staff did not act upon the medical emergency.  Facility staff did nothing to ensure that Vincenzo Lanni was transferred to hospital care in a timely fashion.  Plaintiff Lanni called 911 himself, but the prolonged delay caused by Facility understaffing was detrimental to Vincenzo's treatment and he suffered during that delay.  A hospital doctor informed Plaintiff Lanni that had Vincenzo not gone to the hospital, he would have died.

SAC at ¶ 67.  These facts suffice to establish a *prima facie* case of deprivation and injury.

Ms. Skolkin also has standing to pursue her injunctive relief claim.  Judge Block dismissed Plaintiff Chow's injunctive relief claim because "Leroy Chow's death means his past maltreatment at the Facility is 'unaccompanied by any present adverse effects' and defeats any argument that Chow might 'reasonably expect[] to be again subjected to the . . . conduct."  *Chow v. Shorefront Operating LLC*, No 19-3541, 2021 WL 2646329, at *3 (E.D.N.Y. 2021).  Ms. Skolkin is a current resident of the home, and suffers "present adverse effects" and reasonably expects to be again subjected to the conduct.  *See* SAC at ¶ 58 ("Plaintiff Skolkin has repeatedly fallen and suffered extensive contusions and bruising in the Facility as a result of the Facility's understaffing. . . . Consequent to the falls, Plaintiff Skolkin cannot shower herself and requires assistance from Facility staff.  But there is not enough staff to assist Plaintiff Skolkin."); *id.* at ¶ 59 ("The Facility staff rarely administers Plaintiff Skolkin's medication on time.  This is detrimental to Plaintiff Skolkin's health."); *id.* at ¶ 60 ("The Facility staff sometimes neglect to provide Plaintiff Skolkin her medication at all.  This neglect forces Plaintiff Skolkin, at 85-years-old, to track down a staff member and beg for her medication."); *id.* at ¶ 61 ("The Facility staff fail to maintain adequate supply of Plaintiff Skolkin's medication.  Oftentimes, the Facility staff cannot provide Plaintiff

Skolkin her medication because the Facility failed to order the medication from its medical supplier."); *id.* at ¶ 62 ("The Facility staff sometimes fail to administer the correct dosage of her medication to Plaintiff Skolkin."); *id.* at ¶ 63 ("When Plaintiff Skolkin asks the Facility staff for assistance, sometimes the staff tell her they are too busy to help.").

### 2. The Addition of Ben Landa And Bent Philipson As Defendants Is Not Futile.

The SAC contains facts that more than plausibly show that Landa and Philipson are both jointly and severally liable pursuant to PHL § 2808-a. *See* SAC at ¶ 21 ("Defendant Bent Philipson and Defendant Ben Landa are the two principals of SentosaCare LLC. Defendant Philipson and Defendant Landa are personally liable under PHL § 2808-a. Both Defendant Philipson and Defendant Landa also have a direct or indirect ownership interest in the Facility.").

PHL § 2808-a imposes joint and several liability for claims pursuant to PHL 2801-d -- with and to the same extent as the residential health care facility -- on any person who, by reason of a "*direct or indirect* ownership interest (*whether of record or beneficial*) has the ability, acting either alone or in concert with others with ownership interests, to direct or cause the direction of the management of policies of [the] facility." PHL 2808-a(2) (emphasis added). The statute does not define "ownership interest" but "[l]egislative history reveals that the requirement that an individual have an ownership interest in order to be deemed a 'controlling person' was imposed to '[ensure] that liability and responsibility follow the capability to make a profit.'" *Ocean Side Institutional Industries v. United Presbyterian Residence*, 678 N.Y.S.2d 653, 654 (N.Y. App. Div. Oct. 13, 1998) (quoting Mem. of the State Executive Department, 1976 McKinney's Session Laws of N.Y., 2342).

a.     **Skolkin's And Lanni's Claims Against
Landa And Phillipson Are Not Time Barred.**

Judge Bulsara denied Plaintiff Chow's motion to add Philipson and Landa because "any new claims against Philipson and Landa are timebarred unless Chow establishes they relate back to November 27, 2018, when the action was first filed." ECF No. 84 at 6. Here, Ms. Skolkin and Mr. Lanni are not timebarred. Ms. Skolkin is a current resident. Mr. Lanni's father was a resident of the Facility most recently in January of 2020. The three-year statute of limitations forecloses neither Ms. Skolkin's claims, nor Mr. Lanni's claims under PHL § 2801-d or PHL § 2808-a. The addition of Mr. Landa and Mr. Philipson is thus not futile.

Plaintiff's newly-uncovered testimony allows Plaintiff to plausibly allege in the SAC that Mr. Landa and Mr. Philipson are personally liable under PHL § 2801-d. Mr. Landa's testimony shows 1) that Mr. Landa and Mr. Philipson were the architects behind the acquisition and the profitization of the Facility, establishing their direct and indirect interest in the Facility, and 2) that Mr. Landa and Mr. Philipson retain operational control of the Facility.

b.     **Mr. Landa And Mr. Philipson Have
Direct And Indirect Interests In The Facility.**

Mr. Landa and Mr. Philipson orchestrated the purchase of the non-profit Shorefront Jewish Geriatric Center and transformed it into the profit-seeking Seagate Rehabilitation and Nursing Center. *See* SAC at ¶¶ 34-46. Mr. Landa planned the purchase of the Facility with a combination of financing and cash equity. *Id.* at ¶ 36. Mr. Landa gathered investors, all of whom were either family, friends, or existing business associates. *Id.* These investors, now the Defendants, elected to split up the Facility and the real property (including not just the land but the building itself) into separate entities, valuing amongst themselves the real estate at $18,000,000 and the Facility business at $30,000,000. *Id.* at ¶ 37. The Facility -- also known as Shorefront Operations LLC -- has three managing members, one of whom is Avi Philipson, the son of Bent Philipson, and another

is Esther Farkovits, the daughter of Mr. Landa and a resident of Israel.  *Id.* at ¶ 38.  As a result of the lease approved by Ben Landa and his long-time business partner's son, Avi Philipson, Mr. Landa and Mr. Bent Philipson funneled substantial money out of the Facility into the real estate business.  *Id.* at ¶ 39.  Both Mr. Landa and Mr. Phillipson are owners of Shorefront Realty LLC, and they each receive hundreds of thousands of dollars per year from profits funneled from Shorefront Operating LLC.  *See* Rough Transcript of Deposition of Ben Landa ("Landa Rough Tr.") (Exhibit 3) 84:22-25 ("[Q:] And so that means that the rent is whatever the interest and principal payments are on the mortgage plus 2.45 million, correct?  A: Yes."); *id.* at 88:10-12 ("Q: So you get 26 percent of whatever that rent payment is every year?  A: Correct.").  They are also both owners of SentosaCare LLC.  *Id.* at 34:16-18 ("[Q:] The only members in SentosaCare were you and Mr. Philipson, correct?  A: Correct.").

Mr. Landa and Mr. Philipson also each receive monthly $15,000 checks directly from the Facility for "management fees."  Landa Rough Tr. 148:7-17 ("Q: . . . [I]t looks like you received a payment of $15,000; is that correct?  A: Correct.  Q: And you got a payment in October and November and December and January?  A: Correct.  Q: So you got $15,000 a month in management fees from Seagate, the facility, correct? . . . A: Correct."); *id*. at 151:16-18 ("Q: And [Mr. Philipson] also got $15,000 every month from Seagate, correct?  A: Yes.").

According to the SentosaCare operating agreement, Mr. Bent Philipson is a direct 1% owner of the Facility.  SAC at ¶ 42.  Mr. Landa confirmed that Bent Philipson was an owner of the Facility and exercised control over operations.  *Id.*  Mr. Landa also testified that Mr. Philipson was indeed an owner of the Facility.  *See* Landa Rough Tr. 152:8-9 ("Mr. Philipson he was a one percent owner.  He had a say over there too."); *id.* at 12:8-15 ("Q: So Mr. Philipson was an owner of Seagate Rehab and Nursing Center, the facility itself, correct?  . . .  A: At some point.").

Both Mr. Landa and Mr. Phillipson paid for the capital contributions for their adult children to be owners of Shorefront Operating LLC.   Landa Rough Tr. 60:1-4 ("Q: . . . How did Ms. Farkovits come to be involved in this transaction?   A: She is my daughter so I gifted her ten percent.");  *id.* at 58:20-23 ("Q: How did Avi Philipson come to be a ten percent owner of Shorefront Operating?   A: You have to ask Mr. Philipson.   He decided to give ten percent to his son.").

Plaintiff thus plausibly alleges that Mr. Landa and Mr. Philipson have direct and indirect interests in the Facility.

> **c.   Mr. Landa And Mr. Philipson
> Retain Operational Control Of The Facility.**

As Mr. Landa and others explained in their depositions, Mr. Landa and Mr. Philipson have operational control over the Facility.   Mr. Landa instructs the Facility on labor relation issues, the hiring of Facility administrative staff (including the hiring of Manny Kaufman, the head administrator at the Facility), provides recommendations on how to affect CMS star ratings (which reflect the level of staffing at a nursing home), and reimbursement issues.   Landa Rough Tr. 153:8-25 ("Look, I have helped them in reimbursement issues . . . . I have tried to give them recommendations on how to improve star ratings.");  *id.* at 150:21 ("I helped facilitate for them Manny Kaufman.").   Mr. Philipson also exercises operational control.   *Id.* at 24:10-11 ("A: Mr. Philipson who is one of the owners of the operations made that decision.");  *id.* at 25:6-11 ("A: So Mr. Philipson decided to use Milenia Care because he was one of the owners of the operating facility and this other person . . . .").

Mr. Landa testified that the Facility's regional administrator, Mr. Eli Grinspan, reported directly to him and Mr. Philipson.   *Id.* at 30:23-31:2 ("Q: And who was [Mr. Grinspan's] direct employer during that time?   A: He reported to Mr. Philipson at Seagate and he reported to me in

Spring Creek, Eastchester and Golden Gate.").  The sworn testimony of Eli Grinspan, former regional administrator of the Facility and the designated 30(b)(6) deponent on behalf of Shorefront Operating, establishes that Landa and Philipson have, at the least, an indirect and/or beneficial ownership in the Facility and the ability to direct its operations.  During his deposition, Mr. Grinspan testified that Landa and Philipson were owners of Shorefront Operating and exercised ultimate authority over its operation of the Facility.  *See* Transcript of the Deposition of Eli Grinspan ("Grinspan Tr.") (Exhibit 4) at 44:16-22 ("Q: So the only owner of the facility that you ever talked to with respect to Seagate was Mr. Philipson? . . . A: No.  Q: Who else did you talk to? A: Ben Landa."); *id.* at 52:4-14 ("Q: . . . Mr. Philipson and Mr. Landa are both owners of SentosaCare and owners of Shorefront Operating?  A: Yes.); *id.* at 59:5-60:8 (testifying that Philipson and Landa had ultimate authority to direct operations of the Facility, including its staffing).[2]

Mr. Grinspan repeatedly testified that he reported to Mr. Landa and Mr. Philipson and that they made controlling business decisions at the Facility; indeed, he understood them to be the Facility's "owners" and his "bosses":

> Both Mr. Landa and Mr. Philipson were people I reported to. Mr. Philipson assigned me to Seagate to be the regional manager. That is all the information I know. As far as I'm concerned, they were my bosses and they were the owners.

Grinspan Tr. 55:24-56:4.

On top of that, Manny Kaufman, the current administrator of the Facility, admitted in his deposition that he in turn reports to and takes direction from Mr. Grinspan.  *See* Transcript of

---

[2] The SentosaCare operating agreement states Mr. Philipson is a 1% owner of SentosaCare.  Landa Rough Tr. 152:8-9 (A: Mr. Philipson he was a one percent owner.  He had a say over there too."); *id.* at 89:19-23 ("Q: In here you see where Bent Philipson has a membership percentage and that's reflective what you were saying earlier that at least at one point he was owner of the operating LLC, correct?  A: Correct.").

Deposition of Manny Kaufman (Exhibit 5) 13:18-22 ("Q: Okay.  And Mr. Grinspan sometimes gave you specific direction with respect to running the nursing home; is that correct?  . . .  A: Yes."); *id.* at 15:5-6 ("Q: Okay. Who hired you?  A: Mr. Grinspan."); *id.* at 154:19-155:4 ("Q: Okay. Now the first one is an e-mail to yourself, and the second is e-mail to Mr. Grinspan.  Now I assume that -- I assume that it wasn't in your habit to lie to either yourself or Mr. Grinspan in e-mails that you sent him, correct? A: Correct.  Q: And in fact you would never lie to your -- your boss; you would always be completely truthful in e-mails that you sent him?  A: I try to be."); *id.* at 158:11-17 ("Q: I asked, is it fair to say that you were e-mailing with Mr. Grinspan regarding the staff and the care that they provided to residents?  Is that fair to say?  A: That was part . . . of the concern.").  The chain of command, thus, extends from Mr. Landa and Mr. Philipson, to Mr. Grinspan, to Mr. Kaufman, who now heads operations at Seagate.

Mr. Landa and Mr. Phillipson are direct owners of Shorefront Realty LLC, and Phillipson was a direct owner of Shorefront Operating LLC for at least some time; they receive hundreds of thousands of dollars every year from collusive "rent" payments from Shorefront Operating LLC pursuant to a lease approved by Landa and Phillipson's son Avi; they each receive $180,000 per year from "management fees" paid by the Facility and its managing members, two of whom are Landa and Phillipson's progeny; and they hire and direct the administrators who run the Facility. These facts are far more robust than those Judge Block held were sufficient to plausibly allege that SentosaCare LLC and Shorefront Operating LLC were proper Defendants under PHL § 2801-d, and they more than plausibly show that Landa and Phillipson are proper individual Defendants.

### B.    Plaintiff's Motion Is Not In Bad Faith.

To show bad faith, a party opposing amendment must present evidence beyond conclusory statements.  *See Cook v. City of New York*, 243 F. Supp. 3d 332, 354 (E.D.N.Y. 2017) ("[A]llegations that plaintiffs acted in bad faith in waiting to file the motion to amend are

conclusory and are insufficient to prove bad faith absent other evidence of a dilatory motive."). *See also Alexandre v. Town of Hempstead*, 275 F.R.D. 94, 98 (E.D.N.Y. 2011) ("The alleged events [in the amended complaint] are not a surprise. Nor does the Court find that there is any evidence of the plaintiffs' bad faith in delaying seeking the amendment.").

*Cook v. City of New York* is instructive here. Judge Pollak ruled, "defendants' allegations that plaintiffs acted in bad faith in waiting to file the motion to amend are conclusory and are insufficient to prove bad faith absent other evidence of a dilatory motive" and that "plaintiffs' delay in seeking to amend the Complaint to add the [new] defendants stems from the prolonged period of discovery required to obtain and review the [new] records." *Cook*, 243 F. Supp. 3d at 354. Likewise, any accusations that Plaintiff Chow moves in bad faith to amend are conclusory and insufficient to show bad faith, especially because Plaintiff's delay in seeking to amend to add Mr. Landa and Mr. Philipson stem from the prolonged period required to depose Mr. Landa. Bent Philipson and Ben Landa have been on notice of Plaintiff's intention to name them as defendants given that Plaintiff previously attempted to do so. There is simply no basis to accuse Plaintiff Chow of dilatory motive or bad faith otherwise.

Plaintiff Chow also moves to amend in good faith based on his counsels' recent retention in December 2021 by Ms. Skolkin and Mr. Lanni. The proposed amendment relies on the same nucleus of facts set forth in the operative complaint (ECF No. 12) and the SAC supplements Plaintiff Chow's claims with the facts of Ms. Skolkin and Vincenzo Lanni's deprivations and injury. Accordingly, Defendants cannot show any bad faith in Plaintiff's motion to amend.

### C.   Plaintiff's Motion Is Not Unduly Delayed.

Plaintiff moves without undue delay. Mere delay, absent "a showing of bad faith or undue prejudice," does not provide a basis for a court to deny the right to amend. *Cook*, 243 F. Supp. at 353. Where leave to amend is sought in light of information the discovery of which was delayed

through no fault of the movant, a delay of even several months is reasonable.  *See, e.g.*, *Porter*, 2020 WL 32434, at *7 (concluding that a delay of two months is reasonable); *Bryant v. Carlisle Carrier Corp.*, No. 13-578, 2014 WL 712592, at *2 (E.D.N.Y. 2014) ("Although some additional discovery will be required, the issue presented in the counterclaim is identical to the issue at the center of plaintiffs' claims . . . any added discovery should not require plaintiffs to expend significant additional resources.").

*Bryant* is instructive.  The *Bryant* court granted the defendant's motion to amend where the defendants moved to amend two months after they discovered relevant information in a deposition.  *Id.* at *2 (granting the defendants' motion to amend and noting that "[t]he delay of just over two months from the completion of Francis's deposition to the filing of defendants' request for a premotion conference relating to the motion to amend does not demonstrate a lack of diligence on the part of the defendants").  Plaintiff Chow moves *one week* after he uncovered relevant testimony from Mr. Landa in deposition.  There is plainly no undue delay.

Plaintiff has not unduly delayed seeking leave to amend his complaint to join the new parties.  Plaintiff seeks leave within a month of his counsel being retained by Ms. Skolkin and Mr. Lanni.  Moreover, their addition need not delay this litigation.  Other than limited discovery concerning Ms. Skolkin and Mr. Lanni's father, no additional discovery is needed, and there is no reason the deadlines for fact discovery need change.  Even if there is a short delay, leave to amend should still be granted.  *See, e.g.*, *Porter*, 2020 WL 32434, at *7 (concluding that a delay of two months is reasonable).  Plaintiff's motion is not unduly delayed.

### D.    Defendant Will Not Suffer Undue Prejudice.

The proposed amendment imposes no undue prejudice.  In evaluating prejudice, courts consider whether the amendment would "(i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial" and "(ii) significantly delay the resolution of

the dispute." *Porter*, 2020 WL 32434, at *5 (quoting *Block*, 988 F.2d). *See also Joe Hand Promotions*, 2006 WL 2882563, at *2 (Block, J.) ("Mere delay, however, absent a showing of bad faith or undue prejudice, does not provide a basis for a district court right to amend."). Undue prejudice arises when an amendment is made "on the eve of trial[.]" *See Bryant*, 2014 WL 712592, at *2 (ruling no undue prejudice as "no trial date has been set and the parties have still not completed expert discovery."). "Any prejudice which the non-movant demonstrates must be balanced against the court's interest in litigating all claims in a single action and any prejudice to the movant which would result from a denial of the motion." *Porter*, 2020 WL 32434, at *5.

Plaintiff's proposed amendments do not require Defendants to expend significant additional resources to conduct discovery and prepare for trial. Ms. Skolkin and Mr. Lanni's factual allegations stem from the same nucleus of facts as Plaintiff Chow's allegations. The resources Defendant has already invested in defending itself suffice to defend itself against the claims of Ms. Skolkin and Mr. Lanni -- nearly identical to those of Plaintiff Chow.

In addition, the amendment does not significantly delay the resolution of the dispute. This case is not on the eve of trial; a trial date has not even been set. Indeed, a delay of a few months is not material. *See Porter*, 2020 WL 32434, at *7. Accordingly, the insignificant possible delay here counsels in favor of leave to amend.

Moreover, granting leave to amend promotes judicial economy. Leave to amend allows the parties to adjudicate the claims on the merits in a single suit, where significant discovery has already taken place. Should the Court deny leave to amend, Ms. Skolkin and Mr. Lanni will file a new lawsuit, which would require additional judicial resources.

III.   **The Proposed Amendments Satisfy Rule 20's Permissive Joinder Standard.**

Plaintiff easily meets the lenient joinder standard, which applies to motions to add parties under Rule 20(a).  Rule 20(a)(2) provides that "[p]ersons . . . may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2).  The phrase "same transaction or occurrence" includes all "logically related claims by or against different parties to be tried in a single proceeding."  *Luparello v. Incorporated Village of Garden City*, 290 F. Supp. 2d 341, 342 (E.D.N.Y. 2003) (quoting *Wilson v. Toussie, et al.*, No. 01-4568, 2003 WL 22466219, at *5 (E.D.N.Y. 2003)).  "Rule 20(a) should be liberally interpreted to 'enable the court to promote judicial economy by permitting all reasonably related claims for relief by or against different parties to be tried in a single proceeding.'"  *Luparello*, 290 F. Supp. 2d at 342.

Rule 20 permits the filing of the SAC for two reasons: (1) Ms. Skolkin and Mr. Lanni's claims arise from the same transaction or occurrence of the facts described in the operating complaint, and (2) the joinder of Bent Philipson and Ben Landa is warranted because they are jointly and severally liable for Ms. Skolkin and Mr. Lanni's claims under the same law and facts from which the other Defendants' liability arises.

A.   **Ms. Skolkin's And Mr. Lanni's Claims Arise From
The Same Transaction Or Occurrence As Plaintiff Chow's Claim.**

Ms. Skolkin and Mr. Lanni allege the same facts as does Plaintiff Chow.  Where claims are "logically related claims" which should be "tried in a single proceeding[,]" joinder under Rule 20 is proper.  *Luparello*, 290 F. Supp. 2d at 342.  Plaintiff Chow asserted that "Conditions at the Facility have been and continue to be unsafe" as "Defendants failed and continue to fail to provide

sufficient nursing staff to provide the nursing and related services necessary to attain and maintain the highest practicable physical and psycho-social well-being of the Patients." ECF No. 12, at ¶¶ 27-29. Ms. Skolkin and Mr. Lanni allege the same. SAC at ¶¶ 48-49 (same). Plaintiff Chow alleged that his brother suffered a deprivation of his right to adequate staffing and incurred injury as a result. ECF No. 12 at ¶¶ 33-39. Mr. Lanni alleges the same for his father. SAC at ¶¶ 66-71. Ms. Skolkin alleges the same for herself. SAC at ¶¶ 58-65. Ms. Skolkin and Mr. Lanni assert claims from the same "transaction or occurrence" as did Plaintiff Chow. These claims are all nearly identical and should plainly be tried in a single proceeding. Rule 20 joinder of Ms. Skolkin and Mr. Lanni is proper.

### B. Bent Philipson And Ben Landa Are Jointly And Severally Liable Based On The Same Questions Of Law And Fact As Other Defendants Are Liable.

Mr. Philipson and Mr. Landa are liable under the same common questions of fact and law as the currently-named individual defendants. Ms. Skolkin and Mr. Lanni allege facts that plausibly show that Landa and Philipson are both jointly and severally liable pursuant to PHL § 2808-a, which imposes liability on those who have a "direct or indirect ownership interest" in the health facility. The currently-named individual defendants are all named defendants under PHL § 2808-a because all have a "direct or indirect ownership interest" in the Facility. *See* ECF No. 12 at ¶ 11 ("The Individual Defendants each hold membership interests in Shorefront Operating LLC. At all relevant times, the Individual Defendants each had a direct interest in the Facility as well as the ability, acting either alone or in concert with others with ownership interests in the operation of the Facility, to direct or cause the direction of management or policies of the Facility.").

Ms. Skolkin and Mr. Lanni plead these facts in the SAC. *See* SAC at ¶¶ 34-46. Rule 20 allows joinder of defendants where "any right to relief is asserted against them[.]" Fed. R. Civ. P.

20.  Ms. Skolkin and Mr. Lanni easily plead a right to relief, under PHL § 2808-a, against Mr. Philipson and Mr. Landa.  Rule 20 joinder of Mr. Philipson and Mr. Landa is proper.

<b><u>CONCLUSION</u></b>

For the foregoing reasons, Plaintiff respectfully requests that the Court grant Plaintiff leave to file an amended complaint to add Ms. Skolkin and Mr. Lanni as plaintiffs and to name Mr. Philipson and Mr. Landa as additional defendants liable pursuant to PHL § 2808-a.

Dated: White Plains, New York
　　　 January 28, 2022

Respectfully Submitted,

**FINKELSTEIN, BLANKINSHIP,
FREI-PEARSON & GARBER, LLP**

By: */s/D. Greg Blankinship*
D. Greg Blankinship
John D. Sardesai-Grant
Amanda Chan
One North Broadway, Suite 900
White Plains, New York 10601
Tel: (914) 298-3281
gblankinship@fbfglaw.com
jsardesaigrant@fbfglaw.com
achan@fbfglaw.com

*Attorneys for Plaintiff
and the Putative Class*