UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------x
WALTER CHOW, as Administrator of
the Estate of LEROY CHOW,
individually and on behalf of all others
similarly situated,

                Plaintiff,

    -against-

SHOREFRONT OPERATING LLC
d/b/a SEAGATE REHABILITATION
AND NURSING CENTER; SHAINDY
BERKO; ROCHEL DAVID; LEAH
FRIEDMAN; DEENA LANDA;
ESTHER FARKOVITZ; AVI
PHILIPSON; BERISH RUBINSTEIN;
DAVID RUBINSTEIN; BRUSCHA
SINGER; JOEL ZUPNICK;
SHOREFRONT REALTY LLC;
SENTOSACARE, LLC; BENT
PHILIPSON; and DOES 1-25,

                Defendants.
------------------------------------------------x

**MEMORANDUM AND ORDER**
Case No. 19-CV-3541-FB-JRC

*Appearances:*
For the Plaintiff:
D. GREG BLANKINSHIP
Finkelstein, Blankinship, Frei-Pearson & Garber, LLP
One North Broadway, Suite 900
White Plains, New York 10601

For Defendants:
LORI R. SEMLIES
Wilson, Elser, Moskowitz, Edelman & Dicker LLP
1133 Westchester Avenue
White Plains, New York 10604

**BLOCK, Senior District Judge:**

    The plaintiff in this removed action, the administrator of the estate of a

former resident of a nursing home, alleges that owners and operators of the facility violated section 2801-d of New York's Public Health Law. Although the cause of action is created by state law, jurisdiction is premised on the existence of a federal question as defined in *Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing*, 545 U.S. 308, 314 (2005) ("[T]he question is, does a state-law claim necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities.").[1] The state-law claim here raises an "actually disputed and substantial" federal issue because § 2801-d creates a private right of action for the deprivation of "any right or benefit created or established for the well-being of the patient by the terms of any contract, by any state statute, code, rule or regulation or by any applicable federal statute, code, rule or regulation." The plaintiff invokes federal statutes relating to staffing requirements and the defendants deny having violated those regulations.

---

[1] Jurisdiction is also premised on the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), which extends jurisdiction in certain class actions to, inter alia, cases in which "any member of a class of plaintiffs is a citizen of a State and any defendant is a foreign state or citizen or subject of a foreign state." *Id.* § 1332(d)(2)(C). Having found federal question jurisdiction under *Gamble*, however, the Court need not address whether minimal diversity exists or, if so, whether the Court would be required to decline jurisdiction under 28 U.S.C. § 1332(d)(4).

Pursuant to Federal Rule of Civil Procedure 23, the plaintiff moves to certify a class. For the following reasons, the motion is denied.

I

"Rule 23 does not set forth a mere pleading standard." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Rather, "certification is proper only if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied." *Id.* at 350-51 (internal quotation marks omitted). "Frequently that 'rigorous analysis' will entail some overlap with the merits of the plaintiff's underlying claim." *Id.* at 351. The following factual background is presented with those standards in mind.

Shorefront Operating LLC operates the Seagate Rehabilitation and Nursing Center ("Seagate"), a 360-bed skilled nursing facility ("SNF") in Coney Island, Brooklyn. Shorefront Realty LLC owns the property from which Seagate operates. SentosaCare, LLC, provides administrative services to the facility.

Leroy Chow was a resident at Seagate from February 2015 to August 2016. He passed away in December 2017. The complaint alleges that during his stay Chow received insufficient care regarding medication, diet, hydration, hygiene, toileting, grooming, and bed turning. It further alleges that all of those deficiencies were due to "inadequate nurse staffing levels," Second Am. Compl. ¶ 48, and that

3

Chow suffered personal injuries, pain and suffering, and economic loss as a result.

The administrator of Chow's estate filed a state-court suit against Shorefront Realty LLC Shorefront Operating LLC, SentosaCare, LLC, and the owners/principals of the latter two entities. As noted, he asserted a single cause of action under New York Public Health Law §2801-d, seeking monetary damages, as well as injunctive and declaratory relief. The defendants removed and moved to dismiss. The Court denied the motion, *see Chow v. Shorefront Operating LLC*, 2020 WL 5752117 (E.D.N.Y. Sept. 25, 2020), but later struck Chow's demand for declaratory and injunctive relief because his unfortunate death and status as a former resident "defeats any argument that Chow might reasonably expect to again be subjected to the conduct alleged in the complaint." *Chow v. Shorefront Operating LLC*, 2021 WL 2646329, at *3 (E.D.N.Y. June 28, 2021) (alterations and internal quotation marks omitted).

In addition to asserting Chow's claim, the plaintiff seeks to represent a class consisting of "[a]ll persons who reside, or resided, at the Facility from November 27, 2015, to the present." Second Am. Compl. ¶ 56.[2] The proposed class excludes

---

[2] The plaintiff's motion for class certification designates himself and Rita Skolkin, another Seagate resident, as class representatives. Skolkin's motion to be added as a plaintiff was subsequently denied, and she has now asserted her claims in a separate action. *See Skolkin v. Shorefront Operating LLC*, No. 22-CV-7664 (E.D.N.Y. filed Dec. 16, 2022).

certain individuals (such as employees of the defendants) and any "claims for personal injury and wrongful death." *Id.* ¶ 58.

## II

As the plaintiff points out, § 2801-d expressly contemplates class actions. *See id.* § 2801-d(4). The statute recognizes, however, that such action must be "pursuant to article nine of the civil practice law and rules," *id.*, which is identical to Rule 23 in all pertinent respects.[3]

"Rule [23] imposes stringent requirements for certification that in practice exclude most claims." *Am. Exp. Co. v. Italian Colors Rest.*, 570 U.S. 228, 234 (2013). The Supreme Court's decision in *Dukes* concisely explains why:

> The class action is an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only. In order to justify a departure from that rule, a class representative must be part of the class and possess the same interest and suffer the same injury as the class members. Rule 23(a) ensures that the named plaintiffs are appropriate representatives of the class whose claims they wish to litigate. The Rule's four requirements—numerosity, commonality, typicality, and adequate representation—effectively limit the class claims to those fairly encompassed by the named plaintiff's claims.

564 U.S. at 348-49 (citations and internal quotation marks omitted).

---

[3]Even if there were any conflict, Rule 23 governs the standards for maintaining a class action in federal court. *See Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 408 (2010).

5

"To maintain a class action, plaintiffs must [first] demonstrate that '(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.'" *Elisa W. v. City of New York*, ___ F.4th ___, 2023 WL 6066476, at *3 (2d Cir. Sept. 19, 2023) (quoting Fed. R. Civ. P. 23(a)). "Second, the proposed class must satisfy at least one of the three requirements listed in Rule 23(b)." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 345 (2011). The relevant requirement here is found in Rule 23(b)(3), which provides that the district court must "find[] that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."[4]

---

[4]Chow also invokes Rule 23(b)(2), which provides that a class action is appropriate if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." The Court's order striking the plaintiff's demand for such relief makes that subsection inapplicable. *Cf. Dukes*, 564 U.S. at 364 (noting that "those plaintiffs no longer employed by Wal-Mart lack standing to seek injunctive or declaratory relief against its employment practices").

6

### A. Rule 23(a)(1): Numerosity

A proposed class of more than 40 members presumptively satisfies the numerosity requirement. *See Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995). It is undisputed that Seagate could accommodate 360 residents and operated at over 90% of that capacity during Chow's time there. Accordingly, the defendants do not argue that the proposed class is not sufficiently numerous.

### B. Rule 23(a)(2) and (3): Commonality/Typicality

Rule 23(a)(2) requires a plaintiff to show that "there are questions of law or fact common to the class." Rule 23(a)(3) requires a plaintiff to show that his or her claims "are typical of the claims ... of the class." The commonality and typicality requirements "tend to merge" into a single inquiry: "[W]hether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Dukes*, 564 U.S. at 349 n.5 (internal quotation marks omitted).

The commonality/typicality test has traditionally been described as "easily satisfied" by a single common issue. 5 James Wm. Moore et al., Moore's Federal Practice § 23.23[2] (3d ed. 1997); *see also* 1 Alba Conte & Herbert B. Newberg, Newberg on Class Actions § 3.10 (4th ed. 2002) ("[T]here need only be a single

7

issue common to all members of the class. Therefore, this requirement is easily met in most cases." (footnotes omitted)). That said, not just any issue will suffice. "[A]ny competently crafted class complaint literally raises common questions." *Dukes*, 564 U.S. at 349 (citation and internal quotation marks omitted). To obtain class certification, the plaintiff must demonstrate that "the class members have suffered the same injury." *Id.* (internal quotation marks omitted). "This does not mean merely that they have all suffered a violation of the same provision of law." *Id.* at 350. Rather, the class claims "must depend upon a common contention . . . of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.*

In sum, the key inquiry is whether the questions are likely to "generate common *answers* apt to drive the resolution of the litigation." *Id.* (internal quotation marks omitted; emphasis in original). "Dissimilarities within the proposed class are what have the potential to impede the generation of common answers." *Id.*

While the elements of the cause of action are not the only source of possible common questions, they are at least a helpful starting point. To prevail under § 2801-d, a plaintiff must first prove the deprivation of one or more of his or her

8

"rights or benefits" under state or federal law.  N.Y. Pattern Jury Instr.—Civil 2:151D.  In that regard, the plaintiff cites a federal requirement that a nursing facility must provide "24-hour licensed nursing services which are sufficient to meet the nursing needs of its residents," 42 U.S.C. § 1396r(b)(4)(C)(i)(I), and a federal/state requirement that a skilled nursing facility must provide sufficient nursing services "to attain or maintain the highest practicable physical, mental, and psychosocial well-being of each resident," *id.* § 1395i-3(b)(4)(A)(i); 10 N.Y.C.C.R.R. § 415.13

Second, the plaintiff must prove an injury "as a result" of the deprivation.  N.Y. Pattern Jury Instr.—Civil 2:151D.  "Injury" may include physical harm, emotional harm, death, or financial loss.  *See* N.Y. Pub. Health L. § 2801-d(1).  A prevailing plaintiff is entitled to actual compensatory damages "in no event less than twenty-five percent of the daily per-patient rate established [by statute] for the residential health care facility."  *Id.* § 2801-d(2).  Fault is irrelevant except that "willful" or "reckless" deprivations may result in punitive damages.  *Id.*

At the outset, the Court must correct the plaintiff's apparent misimpression that statutory damages flow automatically from a deprivation—that is, that a deprivation is itself a compensable injury.  On the contrary, the statute and pattern jury instruction clearly explain that a plaintiff must prove *both* a deprivation *and* a

9

separate injury. Were it otherwise, plaintiffs would lack the concrete "injury-in-fact" necessary to bring § 2801-d claims in federal court. *See TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2205 (2021) ("Article III standing requires a concrete injury even in the context of a statutory violation." (internal quotation marks omitted)).[5]

Based on the elements of a § 2801(d) claim, the plaintiff proposes the following two questions: "Common to every member of the proposed class is whether Defendants provided sufficient nursing staff to care for Seagate's residents." Pl.s' Mem. of Law 14. "Also common to all class members is whether they were injured by Defendants' failure to adequately staff Seagate." *Id.* at 16.

Both of those questions reflect an all-too-frequent misunderstanding of the commonality requirement. To warrant class certification, *the named plaintiff's* claim must raise an issue common to other members of the class. Neither the treatment of "residents" nor the effect on "all class members" is necessarily relevant to that claim. Rather, the plaintiff will have to establish that the defendants deprived *Chow* of a right to nursing staff sufficient to meet his needs,

---

[5] The plaintiff points out that *TransUnion* expressly left open the question "whether every class member must demonstrate standing *before* a court certifies a class." 141 S. Ct. at 2208 n.4. But the plaintiff's argument that he need only establish a statutory or regulatory violation goes to *his own* standing to sue.

and that *Chow* suffered an injury as a result. Those issues are "common" for purposes of Rule 23 only if a "determination of [their] truth or falsity will resolve an issue that is central to the validity of each one of the [class member's] claims in one stroke." *Id.*

Which is obviously not to say individual claims based on systemic treatment can never be relevant. An employee's claim that she was improperly classified as exempt from wage and hours laws might well raise a common issue if there is "evidence tending to show that the plaintiffs' jobs were similar in ways material to the establishment of the exemption criteria." *Myers v. Hertz Corp.*, 624 F.3d 537, 549 (2d Cir. 2010); *see also Avila v. Ardian Corp.*, 2022 WL 3370024, at *3 (E.D.N.Y. Aug. 16, 2022) ("[T]he facts of this case suggest common questions because there is evidence that Avila's claims arise out of generally applicable pay policies."). And as a very recent Second Circuit case attests, even departures from a uniform policy can generate common issues in an appropriate case:

> We have explained in the foster care context that city agencies "may be held liable under § 1983 if . . . its top supervisory personnel, exhibited deliberate indifference to a known injury, a known risk, or a specific duty, and their failure to perform the duty or act to ameliorate the risk or injury was a proximate cause of plaintiff's deprivation of rights under the Constitution." Thus, whether an agency has a practice of departing from its stated policy in a manner that exhibits deliberate indifference to a known risk or specific duty may be a common question that can be answered on a class-wide basis.

11

*Elisa W.*, ___ F.4th at ___, 2023 WL 6066476, at *5.  By contrast, the policy at issue in *Dukes*—delegating promotion decisions to store managers—shed no light on the motivation behind individual promotions.  *See* 564 U.S. at 356 ("In a company of Wal-Mart's size and geographic scope, it is quite unbelievable that all managers would exercise their discretion in a common way without some common direction.").

In short, whether widespread conduct giving rise to an individual claim satisfies the commonality requirement is very much a case-specific inquiry.  In this case, the allegedly pervasive practice of understaffing Seagate does not.

The plaintiff's staffing expert, Dr. Elizabeth Halifax, opined that Seagate's staffing was inadequate.  To reach that conclusion, she calculated hypothetical "adequate and appropriate staffing levels" and compared them to "the actual staffing levels at the facility."  Decl. of D. Greg Blankinship (Sept. 23, 2022), Ex. 1, at 9.  The defendants take issue with the expert's methodology and metrics in many respects, but the dispositive issue for purposes of commonality is that her calculations were facility-wide.  To determine appropriate staffing levels, she calculated "the aggregate acuity level of the facility's residents."  *Id.*[6]  She

---

[6] "Acuity is defined as the intensity (time and skill) of nursing care that is required by a resident."  Blankenship Decl., Ex. 1, at 9.

12

calculated actual staffing levels based on "how many hours . . . total nursing staff were providing resident care on any given day." *Id.* at 16.

As a result of her methodology, Dr. Halifax concluded only that *overall* staffing levels at Seagate were inadequate. Although she broke her findings down by acuity level, date, and level of nursing skill, she did not break them down by resident. Her data could presumably be easily divided by the number of residents, but even that would yield only an *average* shortfall per resident, not the shortfall for any particular resident. Indeed, Dr. Halifax specifically acknowledged that her staffing assessment could be, and were, done "without individual inquiry." *Id.* at 9.

By contrast, the plaintiff will have to establish that Chow was deprived of *his* right to adequate nursing services. That will necessarily require an individualized inquiry into *his* needs. Regardless of whether or not Dr. Halifax's findings can help the plaintiff satisfy that burden, resolution of the claim will have no bearing on what the needs of any other class member were, or on whether those needs were met.

The question of injury is just as individualized: Inadequate staffing could lead to anything from a bedsore to death, and the constellation of injuries Chow allegedly suffered are self-evidently unique to him. The plaintiff attempts to

13

assuage this difficulty by disavowing any classwide claims for personal injury or wrongful death, and clarifying in reply that the only classwide monetary relief he seeks is for the financial injury suffered because "Seagate did not provide the nursing service for which Defendants were paid." Pl.'s Reply Mem. of Law 1.[7] The Court has already explained that it cannot simply assume that a particular statutory or regulatory violation led every resident of the facility to suffer the statutory minimum damages, and that holding applies with equal force to financial harm. The plaintiff asserts that the defendants were paid "either through private insurance, Medicaid, or [the residents'] own personal funds," *id.*, but he does not explain what financial harm Chow or any other resident suffered. Without that, it is impossible for the Court to determine whether Chow's financial loss was common to or typical of other class members.

C.   **Rule 23(a)(4): Adequacy**

The Court addresses the final requirement of adequacy solely for the sake of completeness. Rule 23(a)(4) is satisfied if "(1) plaintiff's interests are [not]

---

[7]The defendants briefly argue that the restriction to financial harm makes Chow's claim atypical—and, indeed, removes him from the class completely—because the plaintiff was appointed administrator based on the representation that the sole asset in Chow' estate was a "claim for money damages for personal injuries." Defs'. Mem. of Law 3 (internal quotation marks omitted). The Court declines to treat the plaintiff's description of the claim in Surrogate's Court as a binding limitation on his right to seek any available form of relief on that claim.

14

antagonistic to the interests of other members of the class and (2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation." *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 60 (2d Cir. 2000).  There is no serious dispute that the plaintiff's counsel have the necessary experience and resources to pursue the litigation, and no apparent conflict of interest that might lead the plaintiff to put his interests before those of the class.

### D.     Predominance

The plaintiff must also satisfy Rule 23(b)(3), which requires the Court to find "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." That inquiry seeks to identify cases "in which a class action would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 615 (1997) (citation, internal quotation marks and alteration omitted). And while similar to the commonality requirement, the predominance requirement is "more demanding" because it requires that the common issues be "more substantial than the issues subject only to individualized proof." *Moore v. PaineWebber, Inc.*, 306

F.3d 1247, 1252 (2d Cir. 2002).[8]

The Court has concluded that the allegedly ubiquitous practice of understaffing at Seagate does not present any common/typical issues. But even if the existence of the practice, as described in facility-wide terms by Dr. Halifax, was likely to "generate common answers apt to drive the resolution of the litigation," *Dukes*, 564 U.S. at 350 (internal quotation marks and emphasis omitted), it would be dwarfed by individual issues concerning the level of staffing that each class member was entitled to, whether that level was provided (such that there was a deprivation), and the financial harm—if any—that each class member suffered. As a result, the class-action mechanism is not a superior means of adjudicating this case.

### III

If this case involved a regulation that required a specific staffing ratio—for example, one registered nurse for every three residents—the Court could see how it

---

[8] *Dukes* holds that the common issue(s) must be "central" to the class members' claims. 564 U.S. at 350. In her dissenting opinion, Justice Ginsburg objected that the majority "imports into the Rule 23(a) determination concerns properly addressed in a Rule 23(b)(3) assessment." *Id.* at 368 (Ginsburg, J., dissenting). In this case, the dispute between the majority and the dissent is little more than semantics. Whether termed a question of "centrality" under Rule 23(a), or of "predominance" under Rule 23(b)(3), the Court must weigh common issues against individualized ones.

would present an issue common to all Seagate residents: If the plaintiff established a violation of such a regulation for Chow, he would thereby establish a violation of that regulation for every resident (at least during the same time period). But the actual regulations mandate only staffing sufficient to meet each individual resident's needs. That is a necessarily individualized inquiry that would require, in essence, a mini-trial on each class member's claim. For these reasons, the Court concludes that the plaintiff has failed to satisfy the commonality and typicality requirements of Rule 23(a) and, in the alternative, the predominance requirement of Rule 23(b)(3). Accordingly, the motion to certify a class is denied. This decision has no bearing on the plaintiff's individual claim.

**SO ORDERED.**

      /S/ Frederic Block_____
FREDERIC BLOCK
Senior United States District Judge

Brooklyn, New York
September 26, 2023

17