UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| WALTER CHOW, as Administrator of the Estate of LEROY CHOW, individually and on behalf of all others similarly situated,<br><br>Petitioner,<br><br>-against-<br><br>SHOREFRONT OPERATING LLC D/B/A SEAGATE REHABILITATION AND NURSING CENTER; SHAINDY BERKO; ROCHEL DAVID; LEAH FRIEDMAN; DEENA LANDA; ESTHER FARKOVITZ; AVI PHILIPSON; BERISH RUBINSTEIN; DAVID RUBINSTEIN; BRUSCHA SINGER; JOEL ZUPNICK; SHOREFRONT REALTY LLC; SENTOSACARE, LLC; BENT PHILIPSON; and DOES 1-25,<br><br>Defendants. | **MEMORANDUM AND ORDER**<br>Case No. 19-CV-3541 |

*For the Plaintiff:*
D. GREG BLANKINSHIP
Finkelstein, Blankinship, Frei-Pearson
& Garber, LLP
One North Broadway, Suite 900
White Plains, New York 10601

*For the Defendant:*
LORI R. SEMLIES
Wilson, Elser, Moskowitz, Edelman &
Dicker LLP
1133 Westchester Avenue
White Plains, New York 10604

**BLOCK, Senior District Judge:**

This class action concerns the allegations of Walter Chow ("Chow" or

"Plaintiff") that the owners and operators of Seagate Rehabilitation and Nursing

1

Center ("Seagate" or "Defendants"), provided insufficient staffing to residents in violation of § 2801-d of New York's Public Health Law. Plaintiff alleges that these violations injured Seagate residents, who did not receive the requisite level of care. Defendants now move for reconsideration of the Court's recent memorandum and order certifying Plaintiff's proposed class ("Class Certification Order"). ECF No. 152.

The Class Certification Order entailed reconsideration of the Court's initial determination to deny certification ("Initial Class Certification Decision"). ECF No. 138. The basis for the Court's previous reconsideration lay in an intervening change in controlling state law—namely the New York Appellate Division's decision in *Jenack v. Goshen Operations, LLC*, 222 A.D.3d 36 (App. Div. 2d Dep't 2023), which addressed the causation element of § 2801-d in a similar class action context.

Defendants' current motion asks the Court to again reconsider the question of certification. They argue that *Jenack* "lacks sufficient precedential value," that the Class Certification Order did not sufficiently analyze the Rule 23 factors, and that Plaintiff has failed to demonstrate the requisite injury. For the following reasons, these arguments fail, and the Court sustains its certification of the class.

## I.

A motion for reconsideration "is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a second bite at the apple." *Analytical Survs., Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012) (citation modified). "The standard for granting [a motion for reconsideration] is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995).

## II.

Defendants' first proffered ground for reconsideration—that *Jenack* lacks sufficient precedential weight—must be rejected. Defendants correctly observe that *Jenack* is an intermediate appellate decision—not one by the New York Court of Appeals. But as the Court previously explained in its Class Certification Order, it "is bound to apply the law interpreted by a state's intermediate appellate court unless there is persuasive evidence that the state's highest court would reach a different conclusion." *V.S. v. Muhammad*, 595 F.3d 426, 432 (2d Cir. 2010). Defendants argue that the Court should disregard *Jenack* because it is authorized to disregard intermediate appellate authority when it "'is convinced by other

3

persuasive data that the highest court of the state would decide otherwise.'" Defs.'
Brief at 2, ECF No. 162 (quoting *DiBella v. Hopkins*, 403 F.3d 102, 111 (2d Cir.
2005)).

However, Defendants never adduced any data, let alone persuasive data, in
the original briefing opposing class certification, *see* ECF No. 150-36 at 11–16,
and they do not proffer any "other persuasive data" now.  In support of this motion
for reconsideration, the only "data" Defendants proffer is the relative recency of
the *Jenack* decision.

 Defendants speculate that because of its recency, there is "a high likelihood"
that in the future the New York Court of Appeals will address the issue. Defs.'
Brief at 2. This is not a compelling reason for the Court to disregard an
intermediate appellate decision. All intermediate appellate decisions have, of
course, some probability of future higher court review. This amounts to an
argument that the Court is not bound by intermediate appellate decisions, contrary
to what the Second Circuit has held in *Muhammad*.

Defendants' second reconsideration argument is that the Class Certification
Order "is devoid of any 'rigorous analysis' showing that the plaintiff met his
burden to establish all the required Rule 23(a) and (b) factors are satisfied." Defs.'
Brief at 3. Defendants observe that, "[i]n contrast to the original [Initial Class

4

Certification Decision]," the Class Certification Order does not provide a detailed analysis of each of the factors required for certification set forth in Rule 23. *Id.*

But that is simply because in its latter order the Court incorporated by reference the detailed analysis contained in the earlier Initial Class Certification Decision. That prior decision evaluated each of the requisite Rule 23 factors at length. *See* Initial Class Certification Decision at 5–16. The Court then explained that—prior to *Jenack*—Plaintiff had satisfied all these factors except those of commonality and predominance. *See id.* at 14, 16.

For reasons set forth in the Class Certification Order, *Jenack* obliged the Court to reconsider its analysis of the commonality and predominance factors. *See* Class Certification Order at 5–7. Having thus found these factors satisfied, the Court sufficiently explained that Plaintiff had met each of the Rule 23 requirements, without regurgitating its earlier analysis of the other factors. *See id.* at 7 ("Because the Court previously found the other prerequisites to certification satisfied, the Court now certified the proposed class." (citation modified)).

Defendants lastly contend that the Supreme Court's decision in *TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021) compels denial of class certification. *See* Defs.' Brief at 4–5. In *TransUnion*, the Supreme Court explained that for purposes of standing, there is "an important difference between (i) a plaintiff's statutory cause of action . . . and (ii) a plaintiff's suffering concrete harm because of the

5

defendant's violation[.]" 594 U.S. at 426–27. The Supreme Court did not provide a precise standard for determining what counts as "concrete," but explained that "[c]entral to assessing concreteness is whether the asserted harm has a 'close relationship' to a harm traditionally recognized as providing a basis for a lawsuit in American courts—such as physical harm, monetary harm, or various intangible harms[.]" *Id.* at 417 (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 340–41 (2016)).

Defendants argue that Plaintiff has failed to adequately allege such a concrete harm, stating that he "has never identified a single date, time and place of inadequate staffing for his brother leading to injury." Defs.' Reply Brief at 5, ECF No. 164. But Plaintiff has identified such a time. For instance, the expert report attached to his class certification motion identifies a period of harmfully low staffing levels running from October 2015 through September 2019. ECF No. 131-1 at 27. This is buttressed by several affirmations attesting in detail to extensive physical injuries allegedly flowing from these insufficient staffing levels. *See id.* at 33–34.

Defendants take issue with this report, arguing that it is contradicted by their own experts' opinions and witness declarations. *See* Defs.' Brief at 4. As to the merits issues of whether Seagate was in fact short-staffed and whether residents were in fact harmed, Defendants may well be correct. But this possibility does not

6

mean Plaintiff has not alleged a sufficiently concrete injury as *TransUnion* requires.

The Defendants additionally argue that by certifying a class running from November 27, 2015, to the present, the Class Certification Decision has unleashed "an enormity of associated discovery and class-related costs," because discovery was previously limited to the period of Chow's residency. Defs.' Letter Brief at 5. However, the potential expense—to which Defendants broadly allude—of litigating a case is not a basis to deny class certification. *See In re LILCO Secs. Litig.*, 111 F.R.D. 663, 669 (E.D.N.Y. 1986) ("[C]lass certification should not be denied merely because the class period is lengthy.").

Nevertheless, Defendants' argument draws to the Court's attention the fact— unraised by either party in briefing either this or the prior certification motion— that the expert report and accompanying witness statements Plaintiff supplied as the primary evidentiary basis for certification do not cover the entire proposed class period. *See* Expert Report of Elizabeth Halifax ("Halifax Report"), ECF No. 150-7. The evidence Plaintiff has proffered in support of class certification discovery and undergirding its expert report is confined to the period from October 1, 2015, through September 30, 2019. *See id.* at 17 n.23.

Plaintiff's expert asserts that her analysis could conceivably be extended beyond September 2019—perhaps leading her to conclude that the alleged injury

to Class Members continued beyond that date—were Defendants to produce additional data. *See id.* However, discovery in this case—long since closed—has already proceeded in a single phase as to both class certification and class merits, *see* Order of Magistrate Judge Bulsara, ECF No. 39, and the facts unearthed—as presented by Plaintiff—don't support a class period running all the way to the present.

Thus, the previously certified class period—like other open-ended class periods—raises the "issue . . . that the record will necessarily lack evidence that the requirements of Rule 23 are met with regard to the portion of the class period that stretches beyond the close of discovery." *Rodriguez v. It's Just Lunch Int'l*, No. 07-CV-9227, 2018 WL 3733944, at *6 (S.D.N.Y. Aug. 6, 2018). The Court will thus exercise its discretion under Rule 23(c)(1)(C) to modify the class period to close on September 30, 2019. *See, e.g.*, *Hart v. Rick's Cabaret Int'l, Inc.*, 967 F. Supp. 2d 901, 949 (S.D.N.Y. 2013) (amending class period to end at close of discovery); *Ansoumana v. Gristede's Operating Corp.*, 201 F.R.D. 81, 85 n.2 (S.D.N.Y. 2001) (exercising discretion to fix class end date at date of decision in lieu of open-ended class).

### III.

Accordingly, Defendants' request that the Court reconsider the Class Certification Order and deny class certification is denied. However, the Court, on

its own initiative, amends the prior Class Certification Order solely with respect to the class period, which is to run from November 27, 2015, through September 30, 2019.

**SO ORDERED.**

                                          _/S/ Frederic Block_____
                                          FREDERIC BLOCK
                                          Senior United States District Judge

Brooklyn, New York
August 11, 2024